**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRYCE MARTINEZ, | |
| Plaintiff, | Case No. 2:25-cv-00377 |
| v. | Hon. Mia Roberts Perez |
| THE KRAFT HEINZ COMPANY; THE KRAFT HEINZ FOODS COMPANY; MONDELEZ INTERNATIONAL, INC.; POST HOLDINGS, INC.; THE COCA-COLA COMPANY; PEPSICO, INC.; GENERAL MILLS, INC.; NESTLE USA, INC.; KELLANOVA; WK KELLOGG CO.; MARS INCORPORATED, INC.; CONAGRA BRANDS, INC., | |
| Defendants. | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS**

**Table of Contents**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 4

LEGAL STANDARD .......................................................................................................... 7

ARGUMENT ..................................................................................................................... 8

   I.    The Complaint places Defendants on notice of Plaintiff's claims. .................................... 8

      A.   Each Defendant is on notice of the allegations against it. ................................................ 8

      B.   Plaintiff identifies the products that caused his injuries. ............................................... 10

   II.   Plaintiff has sufficiently pled causation. ......................................................................... 12

      A.   Plaintiff has sufficiently pled general causation. ......................................................... 13

      B.   Plaintiff has sufficiently pled specific causation. ........................................................ 16

      C.   Plaintiff has sufficiently pled warnings causation and justifiable reliance. ................. 20

   III.  Plaintiff's claims are not preempted. .............................................................................. 22

      A.   The NLEA does not preempt Plaintiff's claims. .......................................................... 22

      B.   Neither the FMIA nor the PPIA preempt Plaintiff's claims. ........................................ 23

   IV.  Plaintiff's claims do not violate the First Amendment. ................................................... 29

   V.   Plaintiff has sufficiently pled each cause of action. ........................................................ 31

      A.   Plaintiff has sufficiently pled his negligence claim (Count I). .................................... 31

      B.   Plaintiff has sufficiently pled his failure to warn claim (Count II). ............................. 34

      C.   Plaintiff has sufficiently pled his implied warranty claim (Count III). ........................ 36

      D.   Plaintiff has sufficiently pled his fraud and deception-based claims (Counts V-VIII). 38

      E.   Plaintiff has sufficiently pled his unjust enrichment claim (Count IX). ...................... 43

      F.   Plaintiff has sufficiently pled his conspiracy and concerted action claims (Counts X-XI). .............................................................................................................................. 44

   VI.  The individual Defendant's recycled arguments lack merit. ............................................ 48

CONCLUSION ................................................................................................................. 50

**Table of Authorities**

## CASES

*Aetna v. Insys Therapeutics,* 324 F. Supp. 3d 541 (E.D. Pa. 2018) ........................................ 44, 45

*Ahmed v. Wells Fargo*, 432 F. Supp. 3d 556 (E.D. Pa. 2020) ....................................................... 21

*Allstate v. Omegaflex,* 2018 WL 924986 (E.D. Pa. Feb. 15, 2018) ..............................................11

*Am. Beverage Ass'n v. S.F.,* 916 F.3d 749 (9th Cir. 2019) ........................................................... 31

*Am. Meat Inst. v. Ball,* 424 F. Supp. 758 (W.D. Mich. 1976) ...................................................... 23

*Anderson v. Battersby*, 2024 WL 3498352 (M.D. Pa. July 22, 2024)............................................ 39

*Andrade-Heymsfield v. NextFoods*, 2022 WL 1772262 (S.D. Cal. Apr. 27, 2022) ..................... 37

*Animal Legal Def. Fund Boston v. Provimi Veal,* 626 F. Supp. 278 (D. Mass. 1986) ................. 29

*Animal Legal Def. Fund v. Hormel,* 258 A.3d 174 (D.C. App. 2021) ........................................... 23

*Armour v. Ball,* 468 F.2d 76 (6th Cir. 1972) ................................................................................ 26

*Armour v. Freeman,* 304 F.2d 404 (D.C. Cir. 1962) .................................................................... 26

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................... 8

*Ass'n des Éleveurs de Canards v. Becerra,* 870 F.3d 1140 (9th Cir. 2017) ................................ 28

*Atl. Richfield v. Cnty. of Montgomery,* 294 A.3d 1274 (Pa. Commw. 2023) ...............................11

*B & R Supermarket v. Visa*, 2024 WL 4334075 (E.D.N.Y. Sept. 27, 2024). ............................... 47

*Bailey v. Janssen Pharm.*, 288 F. App'x 597 (11th Cir. 2008)..................................................... 32

*Bartol v. Barrowclough*, 251 F. Supp. 3d 855 (E.D. Pa. 2017)................................................... 10

*Barton v. Lowe's*, 124 A.3d 349 (Pa. Super. 2015) ...................................................................... 37

*Bates v. Dow Agrosciences*, 544 U.S. 431 (2005)................................................................... 22, 24

*Becerra v. Coca-Cola*, 2018 WL 1070823 (N.D. Cal. Feb. 27, 2018) ......................................... 14

*Bednarski v. Hideout Homes & Realty*, 709 F. Supp. 90 (M.D. Pa. 1988) .................................. 36

*Bell Atl. v. Twombly*, 550 U.S. 544 (2007)............................................................................... 8, 19

*Betz v. Pneumo Abex*, 44 A.3d 27 (Pa. 2012) .............................................................................. 17

*Bieda v. CNH Indus.,* 518 F. Supp. 3d 863 (W.D. Pa. 2021)....................................................... 36

*Blumas v. Costco*, 1999 WL 35809869 (D.N.M. Feb. 18, 1999).................................................. 29

*Bond v. Solvay Specialty Polymers*, 583 F. Supp. 3d 643 (D.N.J. 2022) ............................... 12, 16

*Bonner v. ISP Technologies,* 259 F.3d 924 (8th Cir. 2001) ......................................................... 17

*Bors v. Johnson & Johnson*, 208 F. Supp. 3d 648 (E.D. Pa. 2016).................................. 21, 39, 47

*Bowersfield v. Suzuki Motor,* 111 F. Supp. 2d 612 (E.D. Pa. 2000)....................................... 35, 36

*Brower v. Campbell,* 243 F. Supp. 3d 1124 (S.D. Cal. 2017) ...................................................... 25

*Brown v. Nicklow*, 2023 WL 1766272 (M.D. Pa. Feb. 3, 2023) ................................................... 8

*Bruner v. Anheuser-Busch*, 153 F. Supp. 2d 1358 (S.D. Fla. 2001)............................................ 20

*Burnside v. Abbott Labs*, 505 A.2d 973 (Pa. Super. 1985)........................................................... 48

*Burris v. Main Line Health*, 2017 WL 2506446 (E.D. Pa. June 9, 2017) .................................... 45

*Cal. of Com. v. Council for Educ. & Rsch. on Toxics,* 29 F.4th 468 (9th Cir. 2022) .................. 31

*Candelaria v. Conopco*, 2023 WL 2266047 (E.D.N.Y. Feb. 28, 2023) .................................. 17, 18

*Carvalho-Grevious v. Del. State U.*, 851 F.3d 249 (3d Cir. 2017)......................................... 13, 17

*Cavel Int'l v. Madigan*, 500 F.3d 551 (7th Cir. 2007) ................................................................ 28

*Ceara v. Deacon*, 916 F.3d 208 (2d Cir. 2019) ........................................................................... 49

*Cesare v. Champion Petfoods*, 429 F. Supp. 3d 55 (W.D. Pa. 2019) ........................................... 44

*Chems. Antitrust Litig.*, 504 F. Supp. 2d 777 (N.D. Cal. 2007) .................................................. 42

*City of Phila. v. Lead Indus. Ass'n*, 994 F.2d 112 (3d Cir. 1993) ............................................... 11

*Climbing Kites v. Iowa*, 739 F. Supp. 3d 742 (S.D. Iowa 2024) ................................................

*Coene v. 3M*, 2011 WL 3555788 (W.D.N.Y. Aug. 11, 2011) ...................................................... 10

*Cohen v. ConAgra*, 16 F.4th 1283 (9th Cir. 2021) ...................................................................... 27

*Com. v. TAP Pharm. Prods.*, 885 A.2d 1127 (Pa. Commw. Ct. 2005) .......................................... 45

*Confer v. Pall*, 2010 WL 11710657 (E.D. Pa. Mar. 2, 2010) ..................................................... 36

*Connelly v. Lane Const.*, 809 F.3d 780 (3d Cir. 2016) ................................................................ 12

*Conquest v. WMC Mortg.*, 247 F. Supp. 3d 618 (E.D. Pa. 2017) ................................................ 40

*Cook v. MillerCoors*, 872 F. Supp. 2d 1346 (M.D. Fla. 2012) .................................................... 20

*Cook v. Santander Consumer*, 2024 WL 5046037 (W.D. Pa. Sept. 23, 2024) .............................. 21

*Corbin v. Bucks Cnty.*, 703 F. Supp. 3d 527 (E.D. Pa. 2023) ...................................................... 9

*Corrigan v. Methodist Hosp.*, 853 F. Supp. 832 (E.D. Pa. 1994) ................................................ 46

*Crockett v. Luitpold Pharms.*, 2020 WL 433367 (E.D. Pa. Jan. 28, 2020) ................................... 33

*CTIA v. Berkeley,* 928 F.3d 832, 848 (9th Cir. 2019) ................................................................. 31

*Cummins v. Firestone,* 495 A.2d 963 (Pa. Super. 1985) ............................................................. 11

*Datskow v. Teledyne,* 899 F.2d 1298 (2d Cir. 1990) .................................................................. 49

*Dauphin Deposit Bank & Trust v. Toyota*, 596 A.2d 845 (Pa. Super. 1991) ................................ 35

*Davis v. Volkswagen*, 2019 WL 3252054 (Pa. Super. July 19, 2019) .......................................... 18

*De Joseph v. Zambelli*, 139 A.2d 644 (Pa. 1958) ............................................................. 38, 40, 41

*DiCair v. Gilead Scis.*, 2022 WL 2703611 (E.D. Pa. July 12, 2022) ........................................... 34

*Dicio v. Wells Fargo*, 2015 WL 8276585 (W.D. Pa. Nov. 4, 2015), *report and recommendation*
    *adopted*, 2015 WL 8207486 (W.D. Pa. Dec. 7, 2015) ........................................................ 18

*Dilworth v. Metro. Life Ins.*, 418 F.3d 345 (3d Cir. 2005) ......................................................... 21

*Doe v. City of Phila.*, 2024 WL 2218897 (E.D. Pa. May 15, 2024) .......................................... 8, 10

*Douglas v. Atrium Med.*, 2023 WL 8643638 (M.D. Pa. Dec. 11, 2023) ................................. 32, 33

*Drayton v. Pilgrim's Pride,* 2004 WL 765123 (E.D. Pa. Mar. 31, 2004) ..................................... 23

*Dukich v. IKEA*, 2021 WL 1534520 (E.D. Pa. Apr. 19, 2021) .............................................. 21, 43

*Duquesne Light v. Westinghouse,* 66 F.3d 604 (3d Cir. 1995) .................................................... 42

*DuRocher v. Riddell*, 97 F. Supp. 3d 1006 (S.D. Ind. 2015) ....................................................... 10

*E.E.O.C. v. Def. Ass'n of Phila.*, 408 F. Supp. 3d 621 (E.D. Pa. 2019) ...................................... 14

*Empacadora de Carnes v. Curry,* 476 F.3d 326 (5th Cir. 2007) .................................................. 28

*English v. Eisai,* 2022 WL 780667 (M.D. Pa. Mar. 14, 2022) ..................................................... 33

*Falk v. Gen. Motors*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007) ..................................................... 39

*Fed. of Homemakers v. Butz,* 466 F.2d 462 (D.C. Cir. 1972) ..................................................... 26

*Feeney v. Disston Manor*, 849 A.2d 590 (Pa. Super. 2004) ....................................................... 17

*Feldman v. Mercedes-Benz*, 2012 WL 6596830 (D.N.J. Dec. 18, 2012) ...................................... 39

*Fike v. Global Pharma*, 741 F. Supp. 3d 265 (E.D. Pa. 2024) ................................................. 8, 9, 10

*Fleck v. KDI Sylvan Pools*, 981 F.2d 107 (3d Cir. 1992) ...................................................... 34, 35, 36

*Foge, McKeever v. Zoetis*, 605 F. Supp. 3d 682 (W.D. Pa. 2022) ............................................ 33, 34

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ........................................................... 12

*G.S. v. Penn-Trafford Sch. Dist.*, 2023 WL 4486667 (3d Cir. July 12, 2023) ................................... 2

*Garrett v. Wexford Health*, 938 F.3d 69 (3d Cir. 2019) ...................................................... 8, 9, 49

*Garrison v. Heublein*, 673 F.2d 189 (7th Cir. 1982) ................................................................... 20

*Gershengorin v. Vienna Beef*, 2007 WL 2840476 (N.D. Ill. Sept. 28, 2007) .................................... 23

*Gibbs v. Ernst*, 647 A.2d 882 (Pa. 1994) ...................................................................................... 40

*Glanski v. Ervine*, 409 A.2d 425 (Pa. 1979) ................................................................................. 40

*Glob. Maint. v. Boeing*, 2023 WL 3851977 (E.D. Pa. June 6, 2023) ............................................. 45

*Gnagey Gas & Oil v. Pa. Underground Storage*, 82 A.3d 485 (Pa. Commw. 2013) ............... 40, 42

*Gorran v. Atkins Nutritionals*, 464 F. Supp. 2d 315 (S.D.N.Y. 2006) ........................................... 35

*Gregg v. Ameriprise Financial*, 664 Pa. 567 (Pa. 2021) .............................................................. 42

*Gregg v. V-J Auto Parts*, 943 A.2d 216 (Pa. 2007) ...................................................................... 17

*Grenfell v. Lackawanna*, 2019 WL 4054024 (M.D. Pa. Mar. 6, 2019), *report and*
    *recommendation adopted*, 2019 WL 4040570 (M.D. Pa. Aug. 27, 2019) ..................................

*Grocery Mfrs. v. Gerace*, 755 F.2d 993 (2d Cir. 1985) ................................................................. 25

*Hahn v. Richter*, 673 A.2d 888 (Pa. 1996) .................................................................................... 35

*Harsh v. Petroll*, 887 A.2d 209 (Pa. 2005) .................................................................................... 18

*Hart v. Univ. of Scranton*, 838 F. Supp. 2d 324 (M.D. Pa. 2011) .................................................. 40

*Hemme v. Airbus*, 2010 WL 1416468 (N.D. Ill. April 1, 2010) ...................................................... 10

*Holk v. Snapple*, 575 F.3d 329 (3d Cir. 2009) .......................................................................... 1, 22

*Horizon Stevedoring v. Royal White Cement*, 2022 WL 16747281, (E.D. Pa. Nov. 7, 2022) ...... 38

*Houser v. Feldman*, 600 F. Supp. 3d 550 (E.D. Pa. 2022) ............................................................ 45

*Howard v. A.W. Chesterton*, 78 A.3d 605 (Pa. 2013) .................................................................. 17

*Hoyte v. Yum! Brands*, 489 F. Supp. 2d 24 (D.D.C. 2007) ........................................................... 37

*In re 5-hour ENERGY Mktg. & Sales Pracs. Litig.*, 2017 WL 385042 (C.D. Cal. Jan. 24, 2017) 19

*In re Acetaminophen*, 2023 WL 3126589 (S.D.N.Y. Apr. 27, 2023) ....................................... 15, 16

*In re Asbestos (No. VI)*, 801 F. Supp. 2d 342 (E.D. Pa. 2011) ......................................................11

*In re Asbestos School Litig.*, 46 F.3d 1284 (3d Cir. 1994) ............................................................ 48

*In re Avandia*, 804 F.3d 633 (3d Cir. 2015) .................................................................................. 16

*In re Bair Hugger*, 9 F.4th 768 (8th Cir. 2021) ........................................................................... 13

*In re BPA Polycarbonate Plastic*, 2009 WL 3762965 (W.D. Mo. Nov. 9, 2009) ........................ 29

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997 ................................ 39, 50

*In re Catanella & E.F. Hutton*, 583 F. Supp. 1388 (E.D. Pa. 1984) ........................................... 50

*In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 25 F. Supp. 2d 837 (N.D. Ill. 1998) .... 29

*In re Ford (No. II)*, 2010 WL 2813788 (D.N.J. July 9, 2010) ..................................................... 36

*In re Generic Pharms. Pricing Antitrust Litig.*, 394 F. Supp. 3d 509 (E.D. Pa. 2019) ................ 18

*In re JUUL (JUUL I)*, 497 F. Supp. 3d 552 (N.D. Cal. 2020) ...................................................... 14

*In re JUUL* (*JUUL II*), 2022 WL 1601418 (N.D. Cal. Apr. 29, 2022) ......................................... 17

*In re Midnight Madness Distilling*, 2024 WL 3517620 (Bankr. E.D. Pa. July 23, 2024)......... 9, 49

*In re Nexus,* 293 F. Supp. 3d 888 (N.D. Cal. 2018)......................................................................... 36

*In re Niaspan*, 42 F. Supp. 3d 735 (E.D. Pa. 2014)........................................................................ 42

*In re Nickelodeon*, 827 F.3d 262 (3d Cir. 2016)...................................................................... 22, 25

*In re Orthopedic Bone Screw,* 1996 WL 482977 (E.D. Pa. Aug. 22, 1996)............................ 44, 48

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)................................................. 12, 16

*In re Philips Recalled CPAP, Bi-Level PAP, & Ventilator Prods. Litig.*, 2023 WL 7019287 (W.D. Pa. Sept. 28, 2023) ................................................................................................................... 17

*In re R.M.J.,* 455 U.S. 191 (1982)................................................................................................... 30

*In re Roundup,* 390 F. Supp. 3d 1102 (N.D. Cal. 2018).................................................................. 13

*In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464 (W.D. Pa. 2019)..................

*In re Soc. Media Adolescent Addiction/Pers. Inj.*, 754 F. Supp. 3d 946 (N.D. Cal. 2024) ........... 17

*In re Takata Airbag Prod. Liab. Litig.*, 193 F. Supp. 3d 1324 (S.D. Fla. 2020) ........................... 39

*In re Whirlpool Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942 (N.D. Ohio 2009) ................................................................................................................................... 39

*In re Zoloft*, 858 F.3d 787 (3d Cir. 2017) ....................................................................................... 13

*Interdigital Tech. v. OKI*, 845 F. Supp. 276 (E.D. Pa. 1994)......................................................... 10

*Johnson v. Blendtec*, 500 F. Supp. 3d 1271 (D. Utah 2020) .......................................................... 44

*Johnson-Jack v. Health-Ade,* 587 F. Supp. 3d 957 (N.D. Cal. 2022) ........................................... 15

*KDH Elec. Sys. v. Curtis Tech.*, 826 F. Supp. 2d 782 (E.D. Pa. 2011)........................................... 21

*Kent v. Pfizer*, 2017 WL 11672334, at *3 (S.D. Cal.) .................................................................... 22

*Kitzmiller v. Jefferson Supply,* 2005 WL 8162224 (N.D. W.V. Sept. 8, 2005) .............................. 11

*Klein v. Council of Chem. Ass'ns*, 587 F. Supp. 213 (E.D. Pa. 1984)............................................. 11

*Krebs v. New Kensington-Arnold Sch. Dist.*, 2016 WL 6820402 (W.D. Pa. 2016) ..................... 10

*Krommenhock v. Post Foods,* 255 F. Supp. 3d 938 (N.D. Ca. 2017)............................................. 15

*Kuenzig v. Hormel,* 505 F. App'x 937 (11th Cir. 2013) ................................................................. 25

*Kyle K. v. Chapman*, 208 F.3d 940 (11th Cir. 2000) ....................................................................... 9

*Lance v. Wyeth*, 85 A.3d 434, 445 (Pa. 2014) .......................................................................... 32, 33

*Landau v. Viridian Energy*, 223 F. Supp. 3d 401 (E.D. Pa. 2016) .......................................... 21, 43

*Lavoie-Fern v. Hershey,* 610 F. Supp. 3d 661 (M.D. Pa. 2022).......................................................

*Leake v. U.S.*, 843 F. Supp. 2d 554, 556 (E.D. Pa. 2011).............................................................. 12

*Lindquist v. Dilkes*, 127 F.2d 21 (3d Cir. 1942) ............................................................................ 42

*Lisowski v. Henry Thayer,* 501 F. Supp. 3d 316 (W.D. Pa. 2020)................................................. 44

*Locust Valley Water Dist. v. Dow Chem.*, 465 F. Supp. 3d 235 (E.D.N.Y. 2020) ........................ 18

*Loper Bright Ent. v. Raimondo,* 603 U.S. 369 (2024).................................................................... 25

*Lupian v. Joseph Cory,* 905 F.3d 127 (3d Cir. 2018) ..................................................................... 22

*Lux v. Gerald E. Ort Trucking,* 887 A.2d 1281 (Pa. Super. Ct. 2005) ........................................... 12

*M.B. v. Schuylkill Cnty.*, 375 F. Supp. 3d 574 (E.D. Pa. 2019)................................................. 9, 10

*M.H. Eby v. Timpte Indus.*, 2019 WL 6910153 (E.D. Pa. Dec. 19, 2019) ..................................... 42

*Mancini v. Morrow*, 458 A.2d 580 (Pa. Super. 1983) ................................................. 42

*Manuel v. Pepsi-Cola*, 2018 WL 2269247 (S.D.N.Y. May 17, 2018) .......................... 14

*Marcum v. Columbia Gas*, 423 F. Supp. 3d 115 (E.D. Pa. 2019) ............................... 42

*Marion v. Bryn Mawr Tr.*, 288 A.3d 76 (Pa. 2023). .................................................. 44

*Martin v. Crown Chem. Equip.*, 2013 WL 12063924 (N.D. Ga. April 15, 2013) ...................... 10

*Matrixx Initiatives v. Siracuasano,* 563 U.S. 27 (2011) ...................................... 14, 15

*McAndrew v. Russell Dean*, 2007 WL 9760414 (M.D. Pa. Mar. 6, 2007) .................... 21

*McGrain v. C.R. Bard*, 551 F. Supp. 3d 529 (E.D. Pa. 2021) ................................... 33

*McGrath v. Bayer*, 393 F. Supp. 3d 161, 166 (E.D.N.Y. 2019) ................................ 14

*MD Mall Assocs. v. CSX*, 715 F.3d 47 (3d Cir. 2013) .............................................. 22

*Md. Shall Issue v. Anne Arundel Cnty.*, 91 F.4th 238 (4th Cir. 2024) ........................ 30

*Meaunrit v. ConAgra*, 2010 WL 2867393 (N.D. Cal. July 20, 2010) .......................... 25

*Medtronic v. Lohr,* 519 U.S. 470 (1996) ................................................................... 25

*Merino v. Ethicon*, 536 F. Supp. 3d 1271 (S.D. Fla. 2021) ....................................... 44

*Metzgar v. Playskool*, 30 F.3d 459 (3d Cir. 1994) ................................... 33, 34, 35, 36

*Mikula v. C.R. Bard*, 2022 WL 783429 (W.D. Pa. Mar. 15, 2022) ............................ 33

*Mills v. Giant of Md.*, 508 F.3d 11 (D.C. Cir. 2007) ................................................. 35

*Milo v. Procaccino*, 2020 WL 1853499 (E.D. Pa. Apr. 13, 2020) ............................... 9

*Milward v. Acuity Specialty Products Group,* 639 F.3d 11 (1st Cir. 2011) ............................ 12, 14

*Modlin v. Piazza Mgmt.*, 2023 WL 7386682 (E.D. Pa. Nov. 7, 2023) ........................... 9

*Morello v. Kenco Toyota Lift*, 142 F. Supp. 3d 378 (E.D. Pa. 2015) ........................... 37

*Murphy v. Hotwire*, 2020 WL 2128472 (E.D. Pa. May 5, 2020) ................................. 10

*N. Am. Commc'ns v. InfoPrint Sols.*, 817 F. Supp. 2d 642 (W.D. Pa. 2011) .................... 42

*N. Penn Towns v. Concert Golf Partners*, 554 F. Supp. 3d 665 (E.D. Pa. 2021) ...................... 42

*Nat'l Ass'n of Wheat Growers v. Bonta,* 85 F.4th 1263 (9th Cir. 2023) ........................ 31

*Nat'l Bldg. Leasing, Inc. v. Byler*, 381 A.2d 963 (Pa. Super. 1977) ........................... 42

*Nat'l Inst. of Family and Life Advocates* ("*NIFLA*") *v. Becerra*, 585 U.S. 755 (2018) ............... 30

*Nat'l Meat Ass'n v. Harris,* 565 U.S. 452 (2012) ..................................................... 28

*Nat'l Rest. Ass'n v. N.Y. City Dep't of Health*, 49 N.Y.S.3d 18 (App. Div. 2017) ...........................

*Organic Consumers v. Sanderson Farms*, 284 F. Supp. 3d 1005 (N.D. Cal. 2018) .................... 23

*Padilla v. Black and Decker*, 2005 WL 697479 (E.D. Pa. Mar. 24, 2005) ..................... 49

*Parrish v. Volkswagen*, 463 F. Supp. 3d 1043 (C.D. Cal. 2020) ................................. 36

*Patel v. Patel*, 2016 WL 3000821 (E.D. Pa. May 25, 2016) ....................................... 39

*Pavlik v. Lane Ltd./Tobacco Exporters,* 135 F.3d 876 (3d Cir. 1998) .......................... 21

*PDC Mach. v. Nel Hydrogen*, 2018 WL 3008531 (E.D. Pa. June 15, 2018) ................. 45

*Pelman v. McDonald's* (*Pelman I*), 237 F. Supp. 2d 512, 533 (S.D.N.Y. 2003) ............... 4, 19, 36

*Pelman v. McDonald's* (*Pelman II*), 396 F.3d 508 (2d Cir. 2005) ................................ 19

*Petree v. Victor Fluid Power,* 831 F.2d 1191 (3d Cir. 1987) ..................................... 31

*Petula v. Mellody*, 588 A.2d 103 (Pa. Commw. 1991) .............................................. 48

*Phelps v. Hormel,* 244 F. Supp. 3d 1312 (S.D. Fla. 2017) ......................................... 25

*Phillips v. A-Best Prods.*, 665 A.2d 1167 (Pa. 1995) ....................................................... 21

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008)................................................ 8

*Porrazzo v. Bumble Bee Foods*, 822 F. Supp. 2d 406 (S.D.N.Y. 2011) ............................... 36

*Powell v. Drumheller*, 653 A.2d 619 (Pa. 1995) ................................................................ 18

*Power Restoration v. PepsiCo*, 2014 WL 1725041 (E.D. Pa. Apr. 30, 2014)........................... 45

*Prater v. Am. Heritage*, 351 F. Supp. 3d 912 (E.D. Pa. 2019) ....................................................8, 11

*Precision Assocs. v. Panalpina World Transp.*, 2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011) ....... 42

*Precision Imaging v. Allstate*, 263 F. Supp. 3d 471 (S.D.N.Y. 2017) ........................................... 19

*Race v. Krum*, 222 N.Y. 410 (1918) ....................................................................................... 4

*RDK Truck v. Mack Trucks*, 2009 WL 1441578 (E.D. Pa. May 19, 2009) ................................. 45,

*Reichhold Chemicals v. Millennium Int'l Techs.*, 1999 WL 270391 (E.D. Pa. May 5, 1999) ...... 40

*Richardson v. EzriCare*, 2024 WL 4349687 (D.N.J. Sept. 30, 2024) ........................................ 9

*Roberts v. Michaels*, 219 F.3d 775 (8th Cir. 2000) ................................................................ 49

*Rodriguez v. CP Dev.*, 2021 WL 3037712 (W.D. Pa. July 19, 2021)....................................... 13

*Runner v. C.R. Bard*, 108 F. Supp. 3d 261 (E.D. Pa. 2015) .................................................... 34

*S.F. v. Archer-Daniels-Midland*, 2014 WL 1600414 (W.D.N.Y. 2014) .................................... 18

*Salyers v. A.J. Blosenski, Inc.*, 731 F. Supp. 3d 670 (E.D. Pa. 2024)....................................... 10

*Samuel-Bassett v. Kia*, 34 A.3d 1 (Pa. 2011) ......................................................................... 36

*Scharf v. Gen. Dynamics*, 2025 WL 1352262 (4th Cir. May 9, 2025)...................................... 39

*Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014) ..................................................................... 22

*Scialabba v. Cuellar de Osorio*, 573 U.S. 41 (2014) ................................................................. 26

*Sciortino v. Pepsico,* 108 F. Supp. 3d 780 (N.D. Cal. 2015) ...........................................................

*SD3 v. Black & Decker*, 801 F.3d 412 (4th Cir. 2015)........................................................ 44, 48

*Seagram & Sons v. McGuire*, 814 S.W.2d 385 (Tex. 1991)..................................................... 35

*Seamans v. Tramontana*, 2013 WL 5728670 (M.D. Pa. Oct. 22, 2013) .................................. 48

*Severa v. Solvay Spec. Polymers*, 524 F. Supp. 3d 381 (D.N.J. 2021)............................................ 9

*Shared Commc'ns Servs. v. Bell Atl. Props.*, 692 A.2d 570 (Pa. Super. 1997) ............................ 45

*Shouey v. Duck Head Apparel,* 49 F. Supp. 2d 413 (M.D. Pa. 1999) ...................................... 37

*Sikkelee v. Precision Airmotive*, 907 F.3d 701 (3d Cir. 2018)................................................... 19

*Sincavage v. Armour*, 74 Pa. D. & C. 279 (Com. Pl. 1950).......................................................... 3

*Singleton v. Chevron,* 835 F. Supp. 2d 144 (E.D. La. 2011) ............................................... 10, 12

*Skipworth v. Lead Industries*, 690 A.2d 169 (Pa. 1997) ..............................................................11

*Slemmer v. McGlaughlin Spray Foam Ins.*, 955 F. Supp. 2d 452 (E.D. Pa. 2013) ............... passim

*Smith v. Howmedica*, 251 F. Supp. 3d 844 (E.D. Pa. 2017)............................................... 32, 34

*Soucy v. Briggs & Stratton*, 2014 WL 794570 (D. Me. Feb. 27, 2014)....................................... 10

*Spear v. Atrium Med.,* 621 F. Supp. 3d 553 (E.D. Pa. 2022) ................................................... 33

*Steamfitters Loc. Union No. 420 Welfare Fund v. Philip Morris*, 171 F.3d 912 (3d Cir. 1999) ... 43

*Stratos v. Super Sagless,* 1994 WL 709375 (E.D. Pa. Dec. 21, 1994)................................... 35, 36

*Summers v. Certainteed*, 997 A.2d 1152 (Pa. 2010) ............................................................... 12

*Swartzbauer v. Lead Indus.*, 794 F. Supp. 142 (E.D. Pa. 1992)................................................ 46

*Taylor v. JBS Foods,* 2025 WL 102450 (D.S.D. Jan. 15, 2025).......................................... 24, 25, 26

*Thornton v. Kroger,* 2022 WL 488932 (D.N.M. Feb. 17, 2022) ............................................ 23, 26

*Thornton v. Tyson,* 28 F.4th 1016 (10th Cir. 2022) ................................................................ 26

*Toy v. Metro. Life Ins.*, 928 A.2d 186 (Pa. Super. 2007) ....................................................... 21

*U.S. v. Colton,* 231 F.3d 890, (4th Cir.2000) ....................................................................... 42

*U.S. v. Milchin,* 128 F.4th 199 (3d Cir. 2025) ..................................................................... 26

*U.S. v. Stanko,* 491 F.3d 408 (8th Cir. 2007) ...................................................................... 23

*U.S. v. W.R. Grace,* 504 F.3d 745 (9th Cir. 2007) ............................................................... 14

*Upside Foods v. Simpson*, 2024 WL 5274483 (N.D. Fla. Oct. 11, 2024) ............................... 28

*Valencia v. Allstate Texas Lloyd's,* 976 F.3d 593 (5th Cir. 2020) .........................................

*Van Bracklin v. Fonda,* 12 Johns. Cas. 468 (N.Y. Sup. 1815) ............................................... 4

*Van Buskirk v. Carey Canadian Mines,* 760 F.2d 481 (3d Cir. 1985) .................................... 16

*Vance v. Terrazas,* 444 U.S. 252 (1980) .............................................................................. 22

*Volin v. Gen. Elec.,* 189 F. Supp. 3d 411 (D.N.J. 2016) ....................................................... 44

*W. Penn Allegheny Health Sys. v. UPMC,* 627 F.3d 85 (3d Cir. 2010) .................................. 44,

*Walsh v. BASF,* 234 A.3d 446 (Pa. 2020) ............................................................................ 16

*Wartluft v. Milton Hershey Sch.*, 354 F. Supp. 3d 584 (M.D. Pa. 2018) ............................... 21, 40

*Washington v. Reynolds Consumer Prods.*, 2025 WL 673615 (S.D.N.Y. Mar. 3, 2025) ............... 19

*Webb v. Trader Joe's,* 999 F.3d 1196 (9th Cir. 2021) ......................................................... 25, 27

*Webb v. Volvo,* 2018 WL 1470470 (E.D. Pa. Mar. 26, 2018) ................................................. 21

*Weinberg v. Legion Athletics,* 683 F. Supp. 3d 438 (E.D. Pa. 2023) ................................... 37, 42, 43

*Wells v. Johnson & Johnson*, 554 F. Supp. 3d 1207 (W.D. Okla. 2021) ................................. 44

*Whitson v. Safeskin*, 313 F. Supp. 2d 473 (M.D. Pa. 2004) ................................................. 37

*Wilson v. Synthes*, 116 F. Supp. 3d 463 (E.D. Pa. 2015) .................................................... 33, 34

*WSFS Fin. v. Cobb (WSFS I)*, 2022 WL 4004782 (E.D. Pa. Aug. 10, 2022) ............................... 45

*WSFS Fin. v. Cobb (WSFS II)*, 2023 WL 4552110 (E.D. Pa. July 14, 2023) .............................. 46

*Wurth Baer Supply v. Strouse*, 627 F. Supp. 3d 422 (M.D. Pa. 2022) ................................... 45

*Yates v. Clifford Motors*, 423 A.2d 1262 (Pa. Super. 1980) ................................................. 36

*Zalatimo Sweets v. Ahmed Zalatimo,* 2023 WL 7018756 (W.D. Pa. July 17, 2023)............. 2, 9, 12

*Zauderer v. Ohio,* 471 U.S. 626 (1985)............................................................................. 27,

*Zeigler v. Sony*, 849 A.2d 19 (Conn. Super. 2004).............................................................. 44

*Zuzel v. Cardinal Health*, 565 F. Supp. 3d 623 (E.D. Pa. 2021) ........................................... 36

## STATUTES

13 Pa.C.S. § 2314 ............................................................................................................ 37

21 U.S.C. § 451 ............................................................................................................... 24

21 U.S.C. § 453 ......................................................................................................... 25, 26, 29

21 U.S.C. § 457 ............................................................................................................... 26

21 U.S.C. § 458 ............................................................................................................... 29

21 U.S.C. § 467e ......................................................................................................... 24, 29

21 U.S.C. § 601 .................................................................................... 25, 26, 29

21 U.S.C. § 602 ............................................................................................ 24

21 U.S.C. § 607 ............................................................................................ 26

21 U.S.C. § 610 ............................................................................................ 29

21 U.S.C. § 661 ............................................................................................ 24

21 U.S.C. § 678 ...................................................................................... 24, 29

## REGULATIONS

9 C.F.R. § 301.2 .................................................................................. 25, 26, 29

9 C.F.R. § 317.8 ...................................................................................... 25, 26

9 C.F.R. § 381.1 .................................................................................. 25, 26, 29

9 C.F.R. § 381.129 ................................................................................. 25, 26

9 C.F.R. § 412.2 ...................................................................................... 26, 27

9 C.F.R. § 500.8 ............................................................................................ 26

## RULES

FED. R. CIV. P. 12 ........................................................................................ 10

FED. R. CIV. P. 8 ........................................................................... 9, 19, 34, 44

FED. R. CIV. P. 9 ................................................................................... passim

## OTHER AUTHORITIES

3 BLACKSTONE, Commentaries (1768) ............................................................ 3

37 AM. JUR. 2d FRAUD AND DECEIT § 192 ................................................... 40

H.R. Rep. No. 101–538, 1990 U.S.C.C.A.N. 3336, 3337 (1990) ................. 22

PL 101–535 § 6(c)(2) ................................................................................... 1,

RESTATEMENT (FIRST) OF RESTITUTION § 3 ............................................... 43

RESTATEMENT (SECOND) OF TORTS § 395 .................................................. 32

RESTATEMENT (SECOND) OF TORTS § 398 .................................................. 32

RESTATEMENT (SECOND) OF TORTS § 402A ......................... 3, 4, 35, 36

RESTATEMENT (SECOND) OF TORTS § 550 .................................................. 42

RESTATEMENT (SECOND) OF TORTS § 551 .................................................. 40

RESTATEMENT (SECOND) OF TORTS § 876 .................................................. 44

RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 3 ...... 43

RESTATEMENT (THIRD) OF TORTS: PROD. LIAB. § 7 ................................... 35

Titus, *Restatement (Second) of Torts, Section 402A and the UCC*, 22 STAN. LAW. REV. 713 (1970) ...................................................................................................... 4

Wright & Miller, Federal Practice and Procedure § 1298 (4th ed. 2023 update) ........................ 39

<u>**INTRODUCTION**</u>

Defendants make ultra-processed foods ("UPF") that, by design, are addictive and overconsumed by people like Plaintiff. Defendants' UPF cause unique harm to children, including type 2 diabetes and fatty liver disease. Before Defendants' development and marketing of UPF, such conditions were unheard of in children and largely confined to elderly alcoholics. Because Defendants concealed the risks of UPF and heavily marketed UPF to children, Plaintiff—unaware of these unique risks—regularly consumed Defendants' UPF and, as a result, was diagnosed with type 2 diabetes and non-alcoholic fatty liver disease at the age of 16.

Now, Defendants essentially argue that they have immunity and that the courts cannot hold them responsible for concealing health risks from consumers, including Plaintiff. For example, Defendants vaguely claim that the Nutrition Labeling and Education Act (NLEA) prevents any state from requiring them to warn consumers of health risks—even though the NLEA does not apply to "a warning concerning the safety of the food or component of the food." *Holk v. Snapple,* 575 F.3d 329, 338 (3d Cir. 2009) (quoting PL 101–535 § 6(c)(2)). Similarly, as to a handful of products that may contain meat or poultry, Defendants argue that the Federal Meat Inspection Act (FMIA) or Federal Poultry Products Inspection Act (PPIA) preempt claims of any sort—even though 1) neither act regulates health warnings or whether a state can ban certain foods, 2) neither Act has any bearing on risks that Defendants mention (or conceal) in their marketing, and 3) both Acts expressly give "concurrent jurisdiction" to states to prohibit adulterated or misbranded meat and poultry products (a grant of state authority notably absent from Defendants' brief).

Defendants' First Amendment argument might be the worst of the bunch. Defendants declare that the Constitution immunizes manufacturers from liability if they dispute scientific evidence. Defendants' position would eradicate longstanding torts for failure to warn against any

manufacturer in any industry—so long as the manufacturer does not concede causation—and would make manufacturers the sole arbiters of their own liability. Fortunately, Defendants' position is far afield from the law, which is precisely why Defendants do not cite to a single case in any state or federal court that has prohibited a failure to warn claim on this ground.

Defendants also demand a heightened pleading standard and even go so far as to refer to the 147-page Complaint as a "shotgun pleading," proving that the term has apparently lost all meaning. In excruciating detail, Plaintiff alleges the risks of UPF, how Defendants concealed those risks, and how Plaintiff developed his injuries as a result. Defendants are on notice of the allegations. *See Zalatimo Sweets v. Ahmed Zalatimo*, 2023 WL 7018756, at *3 (W.D. Pa. July 17, 2023) (Defendants had enough notice to "raise motions to dismiss Counts … for factually and legally specific reasons to each Count"). As for product identification, Plaintiff identifies 110 products and brand names of Defendants' UPF that he regularly consumed. Defendants cite to no case that requires more specificity.

Defendants question whether causation is proven, but Plaintiff need not *prove* causation at this point. Plaintiff need only *allege* facts that support the *plausibility* of causation. *See G.S. v. Penn-Trafford Sch. Dist.*, 2023 WL 4486667, at *4 (3d Cir. July 12, 2023). Plaintiff cites numerous studies to support causation as to type 2 diabetes and fatty liver disease. This Court must accept these allegations as true and, unlike Defendants, take inferences in Plaintiff's favor.

After denying the scientific evidence supporting Plaintiff's claims and deeming it "controversial," Defendants speak out of the other side of their mouths and protest that UPF obviously causes unique risks of type 2 diabetes and fatty liver disease and that these risks are so obvious that they have no duty to warn children. However, Plaintiff alleges that Defendants had more knowledge of the risks than consumers and that the risks were not apparent to consumers.

Contra Defendants' arguments, it is reasonable to infer that the average American child was not reading reports from the French National Assembly's Parliamentary Office for Scientific and Technological Assessment[1] or from other similar sources.

Defendants' fraud arguments fare no better. Defendants argue that they were legally permitted to fraudulently conceal health risks from Plaintiff so long as they are not Plaintiff's fiduciaries. This warped view of the law is false and should be rejected. Defendants then make the frivolous argument that Plaintiff must demonstrate diligence because that is an element of an equitable doctrine whereby a defendant's fraudulent concealment can toll the statute of limitations. Suffice it to say that diligence is not an element of the *cause of action* for fraudulent concealment.

Defendants additionally make other arguments as to the pleading standard and the elements of each claim, which as explained herein, also lack merit.

Defendants hyperbolically argue that Plaintiff's claims would "create an entirely new category of liability based on a theory that has never been sanctioned by any court in the country." ECF 117-1 at 15. Their argument could not be further from the truth. Plaintiff's claims are grounded in the long-standing principle that Defendants should be held responsible for corrupt food products: "Since the early days of the common law those engaged in the business of selling food intended for human consumption have been held to a high degree of responsibility for their products." RESTATEMENT (SECOND) OF TORTS § 402A, cmt. b; *see also Sincavage v. Armour*, 74 Pa. D. & C. 279 (Com. Pl. 1950) ("[O]ne who was engaged in the sale of food or drink was held to be under a public duty to sell articles that were wholesome"); 3 BLACKSTONE, Commentaries *164-65 (1768) ("In contracts for provisions, it is alway[s] implied that they are wholesome; and

---

[1] Compl. ¶ 420-24.

if they be not, the same remedy [damages for deceit] may be had").[2] The Restatement comments make clear that tort liability arising from corrupt food is the foundation for all products liability law, not some unique exception to it (as Defendants suggest).[3] Plaintiff alleges that Defendants' UPF are corrupt.[4] Here, Defendants' UPF are "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Pelman v. McDonald's* (*Pelman I*), 237 F. Supp. 2d 512, 534 (S.D.N.Y. 2003) (quoting RESTATEMENT (SECOND) OF TORTS § 402A cmt. i). As such, Plaintiff has "not been given a free choice, and thus liability may attach." *Id.*

## BACKGROUND

Plaintiff has sued eleven manufacturers of UPF: Kraft Heinz Co., Mondelez International, Post Holdings, The Coca-Cola Company, PepsiCo, General Mills, Nestle USA, Kellanova, WK

---

[2] *See also* Titus, *Restatement (Second) of Torts, Section 402A and the UCC*, 22 STAN. LAW. REV. 713 (1970) (describing 1431 case holding "if I came into a tavern to eat and the taverner gives and sells me beer or food which is corrupt, by which I am put to great suffering, I shall clearly have an action against the taverner"); *Van Bracklin v. Fonda*, 12 Johns. Cas. 468 (N.Y. Sup. 1815) ("In the sale of provisions for domestic use, the vendor is bound to know that they are sound and wholesome, at his peril. This is a principle, not only salutary, but necessary to the preservation of health and life."); *Race v. Krum*, 222 N.Y. 410, 415-416 (1918) (This common law rule "is based upon the high regard which the law has for human life. The consequences to the consumer resulting from consumption of articles of food sold for immediate use may be so disastrous that an obligation is placed upon the seller to see to it, at his peril, that the articles sold are fit for the purposes for which they are intended. The rule is an onerous one, but public policy as well as the public health demand such obligation should be imposed .... If there be any poison in the article sold, or if its condition render it unfit for consumption, and the consumer be thereby made ill, some one must, of necessity suffer, and it ought not be the one who has had no opportunity of determining the condition of the article, but rather the one who has at his command the means of doing so.").

[3] Strict liability originates from food cases: "As long ago as 1266 there were enacted special criminal statutes imposing penalties upon [those] who supplied 'corrupt' food and drink. In the earlier part of this century this ancient attitude was reflected in a series of decisions in which the courts of a number of states sought to find some method of holding the seller of food liable to the ultimate consumer even though there was no showing of negligence on the part of the seller…Recent decisions, since 1950, have extended this special rule of strict liability beyond the seller of food for human consumption." RESTATEMENT (SECOND) OF TORTS § 402A cmt. b.

[4] Compl. ¶¶ 11, 22-23, 208-10, 213-17, 322-23, 356, 406, 412, 415, 428, 432.

Kellogg Co., Mars Incorporated, and ConAgra Brands. Defendants' UPF are industrially produced edible substances and the products of years of addiction science research, chemical modification, and a litany of industrial processing techniques. Defendants implemented addiction science techniques and predatory marketing campaigns developed by Big Tobacco companies Phillip Morris and RJ Reynolds to ensure that their UPF dominate the marketplace and replace whole foods in the American diet.

UPF have several characteristics in common and are easily distinguishable from whole foods. These distinctions have been recognized and characterized by the scientific community through use of the NOVA food classification system, which defines UPF based on the extensiveness of its processing, without regard to nutrient profile. Compl. ¶ 53-54. UPF are pieced together from fractionated substances that have undergone hydrolysis, hydrogenation, or other chemical modifications and contain ingredients that have zero or rare culinary use. *Id.* ¶ 57, 60. UPF are also unique in their presentation to the consumer. They contain additives meant to disguise unpleasant sensory properties or enhance the consumer's sensory perception of the product. *Id.* ¶ 58. UPF share unique risks and cause health consequences not seen in whole food, including unique risks of obesity, type 2 diabetes, non-alcoholic fatty liver disease, cancers, cardiovascular disease, cerebrovascular disease, and mortality. *Id.* ¶ 20. UPF have risks independent of their nutritional profiles. In studies where UPF's nutritional profile was the same as real food, participants eating UPF gain more weight than those given real food. *Id.* ¶¶ 67-71.

With the decline of the tobacco market, Big Tobacco began shifting resources to one with greater long-term profitability: UPF. *Id.* ¶¶ 7-9, 13, 234, 290. Their plan to dominate the American diet was twofold: (1) manufacture UPF to be as addictive as possible, and (2) aggressively market those addictive products to children. *Id.* ¶¶ 9-14. Defendants, some of which are direct successors

to Big Tobacco, adopted the tobacco industry's techniques to hack the physiological nervous system using sensory perception research and designs that alter dopaminergic reward responses and dysregulate hunger/satiety hormones. *Id.* ¶ 15, 115-21, 125, 150-95.

These efforts were enormously successful. UPF is so highly addictive that many people continue ingesting UPF after gastric bypass surgery, despite immediate adverse physical symptoms. *Id.* ¶ 171. UPF's addictive qualities have also been confirmed in animal studies, where rodents continue to prefer industrially produced sweets over other natural foods despite electric shock. *Id.* ¶ 173. Like tobacco, UPF is psychoactive: it increases dopamine in the brain irrespective of whether it is eaten or even surgically inserted directly into the gut, meaning that the addictive qualities persist regardless of taste, smell or touch. *Id.* ¶¶ 181-83. UPF also has reinforcing qualities similar to nicotine, where consumers will consume UPF even after satiation. *Id.* ¶ 187. These qualities are the intended result of Defendants' research and design of UPF. *Id.* ¶¶ 11, 15, 29, 150, 271, 334, 515, 523, 532, 538, 540, 546, 549, 582, 594, 597, 611, 620, 622, 632.

In order to disseminate their UPF as pervasively as possible, Defendants adopted another tactic from Big Tobacco: aggressive marketing to children. *Id.* ¶¶ 239-89. Defendants utilized cartoons, child actors, children's media, social media and more to pervasively target consumers who lack the ability to appreciate the gravity of UPF's health risks. *Id.* Defendants' marketing efforts never mention the addictiveness of UPF or UPF's other health risks to children. *Id.* ¶ 632.

Defendants' addiction science engineering and predatory marketing campaigns have paid off. UPFs now compose the majority of American children's diets and 12-15% of children are addicted to UPF. *Id.* ¶ 301. Childhood obesity has increased with the prevalence of UPF, tripling since the 1970s. *Id.* ¶ 302. As a result of UPF intake, diseases formerly associated with older alcoholics, like type 2 diabetes and fatty liver disease, are now common in children. *Id.* ¶¶ 303,

315, 320-21. Defendants knew that their UPF products were harmful and that their marketing to children was predatory. There is an international consensus that UPF leads to serious health consequences, including diabetes and fatty liver disease, and should not be marketed to children. *Id.* ¶¶ 403-45. Indeed, the Institutes of Medicine have warned that "the prevailing pattern of food and beverage marketing to children in America represents...a direct threat to the health of the next generation". *Id.* ¶¶ 377.

Defendants know this full well and have for decades. At a 1999 meeting in Minneapolis, executives from two Defendants warned other Defendants' executives about the risks of UPF. *Id.* ¶¶ 446-63. The executives warned of research showing that their UPF were driving "devastating public health consequences", including chronic disease epidemics in children, that cannot be due to genetics. *Id.* ¶¶ 451-62. Instead of changing course, Defendants doubled down, and spent millions lobbying against regulation, spreading misinformation about UPF safety, and refusing to warn about severe risks. *Id.* ¶¶ 464-502.

Plaintiff Bryce Martinez regularly ingested UPF manufactured by each Defendant.[5] *Id.* ¶ 508. Defendants never warned that their UPF was harmful or could lead to severe health consequences, including type 2 diabetes or fatty liver disease; or that UPF is addictive and engineered to be overconsumed. *Id.* ¶ 506. As a result, Plaintiff's consumption of Defendants' UPF caused his type 2 diabetes and non-alcoholic fatty liver disease at age 16. *Id.* ¶¶ 504-11.

## LEGAL STANDARD

The Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233

---

[5] *See* Compl. ¶ 508 (listing products that Plaintiff regularly ingested from each Defendant).

(3d Cir. 2008). In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

<u>ARGUMENT</u>

## I.    The Complaint places Defendants on notice of Plaintiff's claims.

### A.  Each Defendant is on notice of the allegations against it.

The Complaint gives Defendants more than enough notice of the claims against them. A shotgun pleading "is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Fike v. Global Pharma*, 741 F. Supp. 3d 265, 272 (E.D. Pa. 2024) (quoting *Brown v. Nicklow*, 2023 WL 1766272 at *3 (M.D. Pa. Feb. 3, 2023)). Here, Plaintiff "provide[s] enough information to put a defendant on sufficient notice to prepare their defense and also ensure that the court is sufficiently informed to determine the issue." *Prater v. Am. Heritage*, 351 F. Supp. 3d 912, 916 (E.D. Pa. 2019); *see also Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019); *Doe v. City of Phila.*, 2024 WL 2218897, at *3 (E.D. Pa. May 15, 2024). Plaintiff's well pled allegations identify conduct specific to each Defendant. The Complaint details UPF products manufactured by each Defendant,[6] how each Defendant engineered UPF to drive addictive and compulsive behavior,[7] specific marketing strategies each Defendant used to target Plaintiff and other children,[8] which Defendants attended the conspiratorial meeting in

---

[6] *See e.g.* Compl. ¶ 508.
[7] *See e.g.* Compl. ¶¶ 102, 106-14, 127-30, 134-44.
[8] *See e.g.* Compl. ¶¶ 255, 262-64, 268 n.313, 269 n.316, 277-79, 278 n.327, 280-84, 505.

Minneapolis,[9] and methods each Defendant used to design, manufacture, and test their UPF.[10]

Further, Plaintiff alleges that Defendants engaged in similar conduct.[11] Here, "the allegations are similar because the premise … is that [] defendants engaged in similar conduct." *Richardson v. EzriCare*, 2024 WL 4349687, at *5 (D.N.J. Sept. 30, 2024). Contrary to Defendants' argument, there is no categorical prohibition against group pleading. *Corbin v. Bucks Cnty.*, 703 F. Supp. 3d 527, 533 (E.D. Pa. 2023); *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000) ("The fact that defendants are accused collectively does not render the complaint deficient.").[12] Rather, the primary inquiry is "whether the complaint 'gives the defendants adequate notice of the claims against them ….'" *Milo v. Procaccino*, 2020 WL 1853499, at *10 (E.D. Pa. Apr. 13, 2020) (quoting *M.B. v. Schuylkill Cnty.*, 375 F. Supp. 3d 574, 586 (E.D. Pa. 2019)).

In fact, a complaint can satisfy Rule 8 even if it has "'some of the characteristics of a shotgun pleading' such as … 'some of the causes of action … not identify[ing] the role of each particular defendant in the claim'" as long as it "'describes, in significant detail, specific allegations against the respective defendants.'" *In re Midnight Madness Distilling*, 2024 WL 3517620, at *8 (Bankr. E.D. Pa. July 23, 2024) (quoting *Schuylkill Cnty.*, 375 F. Supp. 3d at 587) (declining to dismiss despite shotgun pleading characteristics)).[13] Courts consider the level of

---

[9] *See e.g.* Compl. ¶ 447.

[10] *See e.g.* Compl. ¶¶ 112-14; 130-32; 134-41.

[11] *See Severa v. Solvay Spec. Polymers*, 524 F. Supp. 3d 381, 393 (D.N.J. 2021) (grouping defendants is "efficien[t] … as it would be very repetitive … to repeat most of the allegations").

[12] *See also Midnight Madness,* 2024 WL 3517620, at *9 (adequate to "allege[] conduct was undertaken by a group of Defendants"); *Modlin v. Piazza Mgmt.*, 2023 WL 7386682, at *5 (E.D. Pa. Nov. 7, 2023) (declining to dismiss where complaint "made each claim against all defendants, though [did] not always list with specificity how the claim applie[d] to each" and "specifie[d] that all were responsible or played a role").

[13] *See also Fike*, 741 F. Supp. 3d at 274 ("although [the complaint] has some of the hallmarks of a shotgun pleading, it is not so vague or ambiguous that it fails to give [Defendant] notice …"); *Zalatimo*, 2023 WL 7018756, at *3; *Garrett*, 938 F.3d at 95 (defendants' "brief demonstrate[d] that it was possible to understand and engage with [Plaintiff's] claims").

detail in the complaint's facts section. *Schuylkill Cnty.*, 375 F. Supp. 3d at n.5 (adequate where "specific allegations and clearly identifies the individual defendants to whom they apply" even though "allegations in each 'Count' do not reliably make the same distinction, in some instances grouping together general allegations against different categories of defendants.").[14] Here, the Complaint as a whole provides Defendants with ample notice of Plaintiff's allegations.[15]

### B. Plaintiff identifies the products that caused his injuries.

The Complaint ¶¶ 507-08 adequately identifies products and brand names from each Defendant that Plaintiff regularly ingested. *See Interdigital Tech. v. OKI*, 845 F. Supp. 276, 283 (E.D. Pa. 1994) ("Plaintiff need not identify, in the complaint, specific products by name, so long as they are sufficiently identified in some way.").[16] Defendants cite no case that requires more to specify a "product" and themselves refer to Froot Loops, Frosted Flakes, and Rice Krispies as

---

[14] *See also Murphy v. Hotwire*, 2020 WL 2128472, at *6 (E.D. Pa. May 5, 2020) (not shotgun pleading where "enough detail to establish the factual background …, and each count specifie[d]" basis and general conduct creating liability, giving adequate notice); *Fike*, 741 F. Supp. 3d at 274 (adequate after considering complaint "as a whole").

[15] Defendants' cases are inapposite. *See Doe*, 2024 WL 2218897, at *3 (plaintiff tried to group employer with insurance carrier for denial of coverage); *Salyers v. A.J. Blosenski, Inc.*, 731 F. Supp. 3d 670, 684 (E.D. Pa. 2024) ("[T]he only allegations directed at WCUS specifically relate to its corporate citizenship and relationship to AJB."); *Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017) (noting that *civil rights complaints* require "considerable specificity"); *Krebs v. New Kensington-Arnold Sch. Dist.*, 2016 WL 6820402 at *8 (W.D. Pa. 2016) (same).

[16] *See also Singleton v. Chevron*, 835 F. Supp. 2d 144, 148 (E.D. La. 2011) ("The complaint allege[d] that [Defendant] Valspar manufactured certain plastic primers, paints and thinners. It need not further give 'brand name' or other specific information …"); *Martin v. Crown Chem. Equip.*, 2013 WL 12063924, at *2 (N.D. Ga. April 15, 2013) ("failure to allege the specific 'brand name' of the product or the precise dates of [Plaintiff]'s exposure does not make their claims implausible."); *Soucy v. Briggs & Stratton*, 2014 WL 794570, at *3 (D. Me. Feb. 27, 2014) ("at the 12(b)(6) stage, [identification of specific product] is not necessary"); *DuRocher v. Riddell*, 97 F. Supp. 3d 1006, 1018 (S.D. Ind. 2015) ("minimal pleading requirements [for] identifying a product in a products liability action do not necessarily require the specific model..."); *Coene v. 3M,* 2011 WL 3555788, at *3 (W.D.N.Y. Aug. 11, 2011) (need not name particular products as defendants "ought to know whether they sold" general type of product); *Hemme v. Airbus*, 2010 WL 1416468 at *3 (N.D. Ill. April 1, 2010) (generic term "wiring" was sufficient).

"products." ECF 117-1 at 41.[17]

This is not like *Klein v. Council of Chem. Ass'ns*, 587 F. Supp. 213, 221-22 (E.D. Pa. 1984), where the plaintiff did "not name one product, *even generically...*" (emphasis added). *See Kitzmiller v. Jefferson Supply,* 2005 WL 8162224, at *3 (N.D. W.V. Sept. 8, 2005) (distinguishing *Klein*) ("The Plaintiffs have arguably named the products generically ...."). Nor is this case like *City of Phila. v. Lead Indus. Ass'n*, 994 F.2d 112, 122 (3d Cir. 1993), where Plaintiffs "concede[d] that they cannot prove which lead pigment was applied to any specific property," did not attempt to link any manufacturer to the lead pigment at any property, and instead sought market share liability. Similarly, in *Cummins v. Firestone,* the plaintiff conceded that he did not know what products or manufacturers were responsible. 495 A.2d 963, 967-69 (Pa. Super. 1985). Nor is this case like other market share liability cases cited by Defendants, like *Skipworth*, 690 A.2d at 171, 173 and *Atl. Richfield v. Cnty. of Montgomery*, 294 A.3d 1274, 1286-87 (Pa. Commw. 2023). Those plaintiffs could not identify the manufacturer that caused their injuries. Unlike these cases, Plaintiff identifies products and brand names from each Defendant that caused Plaintiff's injuries. *See Allstate v. Omegaflex,* 2018 WL 924986 at *3 (E.D. Pa. Feb. 15, 2018) (adequate to allege that house fire was jointly caused by defects in separate products manufactured by two different defendants).

Defendants also argue that Plaintiff does not specify which (often proprietary) ingredients or processing techniques caused his harm, but Compl. ¶¶ 57-59 lists processes and ingredients unique to UPF which render them dangerous. Defendants' argument improperly conflates "the

---

[17] Defendants cite *Prater,* 351 F. Supp. 3d at 917, a civil rights case that has nothing to do with the specificity necessary to identify a product and summary judgment decisions that do not address the pleading standard. *In re Asbestos (No. VI)*, 801 F. Supp. 2d 342, 345-46 (E.D. Pa. 2011); *Skipworth v. Lead Indus. Ass'n*, 690 A.2d 169, 171-72 (Pa. 1997).

scientific question of biological plausibility with the legal question of probability", which is improper even at the summary judgment stage. *Milward v. Acuity Spec. Prods. Grp.,* 639 F.3d 11, 25 (1st Cir. 2011). Moreover, "At the pleading stage, a plaintiff is not expected, nor in most cases is he able, to articulate a claim's precise factual contours that may only later be elicited through discovery." *Singleton,* 835 F. Supp. 2d at 148; *see also Zalatimo,* 2023 WL 7018756, at *8 ("additional facts may well be uniquely within the possession of Defendants" and thus dismissal not warranted based on the lack of discovery").

## II.    Plaintiff has sufficiently pled causation.

Defendants advocate for a pleading standard that would effectively require Plaintiff to *prove* causation before discovery,[18] but "standards of pleading are not the same as standards of proof," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 214 (3d Cir. 2009), and "[t]he Court need not conclude that Plaintiff['s] allegations of causation make out a *prima facie* case but rather whether there is a reasonable expectation that discovery might lead to evidence of that element." *Bond v. Solvay Specialty Polymers*, 583 F. Supp. 3d 643, 652 (D.N.J. 2022) (citing *Connelly v. Lane Const.*, 809 F.3d 780, 789 (3d Cir. 2016)); *see also G.S. v. Penn-Trafford Sch. Dist.*, 2023 WL 4486667, at *4 (3d Cir. July 12, 2023) (vacating dismissal, in part, because "[o]rdinarily, proximate cause cannot be determined on the … pleadings but instead requires a factual development at trial").

Plaintiff identifies the products he consumed, alleges the risks of Defendants' UPF,[19]

---

[18] Defendants' cases do not support their argument that a plaintiff must allege facts that establish causation. *Leake* and *Paoli* addressed summary judgment. *See Leake v. U.S.*, 843 F. Supp. 2d 554, 556, 558 (E.D. Pa. 2011); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 752 (3d Cir. 1994). And *Lux* is factually distinct. *Lux v. Gerald E. Ort Trucking,* 887 A.2d 1281, 1286 (Pa. Super. Ct. 2005) ("It appears highly extraordinary that Appellee fleeing from the scene [of the first accident] could have caused Knight, who also fell asleep at the wheel, to collide with Appellant's vehicle [in the second accident] and ultimately result in Appellant's injuries."). *Summers v. Certainteed*, 997 A.2d 1152, 1164-66 (Pa. 2010), reversed summary judgment because "reasonable minds could differ".
[19] *See* Compl. ¶¶ 64-87, 150-60, 161, 165-96.

Plaintiff's injuries,[20] and the causal connection between Defendants' UPF and his injuries, as recognized in the scientific literature.[21] Contrary to Defendants' argument, "proving [] causation as part of [the plaintiff's] ultimate burden of persuasion comes later, and not at the motion-to-dismiss stage." *Rodriguez v. CP Dev.*, 2021 WL 3037712, at *8 (W.D. Pa. July 19, 2021) (quoting *Carvalho-Grevious v. Del. State U.*, 851 F.3d 249, 257 (3d Cir. 2017)).

### A. Plaintiff has sufficiently pled general causation.

As Defendants concede, Plaintiff alleges that "UPF is the cause of childhood Type 2 Diabetes and childhood fatty liver disease,"[22] along with supporting studies.[23] The Court's inquiry should end there, as this is sufficient to meet the pleading standard. The Complaint cites, among numerous other sources, the Lustig (2020) study to support causation. Dr. Lustig states that "[n]ow children get two diseases that were never seen before in this age group – T2DM and fatty liver disease" and "Ultraprocessed Food is the Cause."[24] Defendants malign the article as a "self-proclaimed advocacy piece," but Defendants point to nothing to support their characterization.[25]

---

[20] *See* Compl. ¶¶ 504, 509-11.

[21] *See* Compl. ¶¶ 30, 321, 505-07, 509-11.

[22] *See* Compl. ¶ 321; ECF 117-1 at 28.

[23] Compl. at ¶ 65, n. 62 (citing studies that found risk of type 2 diabetes: Moradi (2021); Delpino (2022); Chen (2023); Llavero-Valero (2021)); Compl. at ¶ 65, n. 63 (citing studies that found risk of non-alcoholic fatty liver disease: Zhao (Aug. 2023); Zhao (Oct. 2023); Zhang (2024)); Compl. at ¶ 321 (citing Lustig (2020)); ECF 117-1 at 28.

[24] Lustig at 3.

[25] Defendants criticize Lustig's cite to Srour (2019), attacking a citation of Plaintiff's citation. But Srour concluded that "a higher proportion of UPF in the diet was associated with a higher risk of T2D" and recommended "limiting UPF consumption", thus supporting causation and Dr. Lustig's ultimate conclusion (which is what Plaintiff cited to). Regardless, an author can "dr[aw] a different conclusion from a study than its authors did". *In re Zoloft*, 858 F.3d 787, 800 (3d Cir. 2017). *See also In re Roundup,* 390 F. Supp. 3d 1102, 1147 (N.D. Cal. 2018) (defendant's disagreements with expert's interpretation of studies, including that expert's conclusions differ from study authors, "are fodder for cross-examination, not grounds for exclusion"); *In re Bair Hugger*, 9 F.4th 768, 779 (8th Cir. 2021) ("not necessarily unreliable for the experts … to draw an inference of causation just because the study itself recognized … that the association did not establish causation"); *U.S.*

Regardless of how Defendants judge the article, it is improper to weigh its credibility on a motion to dismiss; what matters is that its conclusions support the plausibility of causation. *E.E.O.C. v. Def. Ass'n of Phila.*, 408 F. Supp. 3d 621, 627 (E.D. Pa. 2019) ("[T]he Court is required to accept as true the allegations in the complaint and its attachments, as well as reasonable inferences construed in the light most favorable to the plaintiffs"). Plaintiff further cites statements from Public Health Agencies and Governmental Agencies throughout the world[26] to show how UPF are "known to increase the risks of noncommunicable diseases like diabetes"[27] and non-alcoholic fatty liver disease.[28] At this stage, these sources support a "close causal association between the alleged conduct … and the resulting injury… ." *In re JUUL* (*JUUL I*)*,* 497 F. Supp. 3d 552, 665 (N.D. Cal. 2020).

Defendants' fraud cases are outliers. In *Becerra v. Coca-Cola*, 2018 WL 1070823, at *3-4 (N.D. Cal. Feb. 27, 2018), and *Manuel v. Pepsi-Cola*, 2018 WL 2269247, at *8-11 (S.D.N.Y. May 17, 2018), the courts dismissed fraud claims (which alleged only overpayment damages) after finding that the word "diet" did not suggest that the products promoted weight loss, which rendered studies irrelevant as to whether the products promote weight loss.[29] Here, numerous publications support a causal association between UPF and Plaintiff's diseases. Regardless, such a *Daubert*-like inquiry is inappropriate at the pleading stage. The Supreme Court has rejected Defendants' arguments, even in fraud cases. In *Matrixx Initiatives v. Siracuasano,* 563 U.S. 27, 45 n.12 (2011),

---

*v. W.R. Grace*, 504 F.3d 745, 765 (9th Cir. 2007) ("study's failure to establish causation goes to the weight …, but does not mean that an expert could not rely on it ..."); *Milward*, 639 F.3d at 23 (rejecting "reasoning that because no one line of evidence supported … causation, an inference of causation based on the totality of the evidence was unreliable").

[26] *See* Compl. ¶¶ 407-45 (citing numerous statements of Public Health Agencies).

[27] Compl. ¶¶ 418, 65, 72 (citing Public Health Agency statements and scientific articles).

[28] Compl. ¶ 427, 65 (citing Public Health Agency statements and scientific articles).

[29] *McGrath v. Bayer*, 393 F. Supp. 3d 161, 166, 171-72 (E.D.N.Y. 2019), is distinguishable as the plaintiff did not allege any *risks* of gadolinium retention.

the Court rejected the argument that a "study was not reliable because they did not sufficiently rule out the common cold as a cause for their patients' anosmia." The Court emphasized the minimal plausibility burden at the pleading stage. *Id*. When the defendant questioned the reliability of the complaint's other studies, the Court again emphasized "the existence of the studies suggests a *plausible* biological link between zinc and anosmia, which, in combination with the other allegations, is sufficient to survive a motion to dismiss." *Id.* at n.13; *see id.* at 46 (finding allegations "raise a reasonable expectation that discovery will reveal evidence" and "allo[w] … reasonable inference" of causation).

Lower courts have reached similar conclusions. In *Krommenhock v. Post Foods,* 255 F. Supp. 3d 938, 963 (N.D. Ca. 2017), the court found that the plaintiff alleged "relevant studies supporting plaintiff's theory," despite the defendant's arguments that the studies discussed ingredients not included in defendant's product and that the studies supported defendant's position. The court explained that "determining the full extent of that support is not appropriate on a motion to dismiss" and "[i]t is sufficient that plaintiffs have a plausible scientific basis ..." *Id.* Similarly, in *Johnson-Jack v. Health-Ade,* 587 F. Supp. 3d 957, 963 (N.D. Cal. 2022), the court found that the plaintiffs "plausibly alleged that [defendant's] products are unhealthy by citing scientific studies that allegedly link the consumption of sugar-sweetened beverages to negative health outcomes" and "whether the defendant's products are, in fact, healthy or unhealthy cannot be resolved at this stage." In addition, in *In re Acetaminophen*, 2023 WL 3126589, at *3 (S.D.N.Y. Apr. 27, 2023), the court rejected arguments that "the scientific studies on which [the complaint] relies suggest at most 'an association' between the exposure to acetaminophen and the identified injuries" and that "not one of the studies identified in the complaint 'affirmatively' finds that use of acetaminophen causes the two conditions." The court found that "[a] complaint is not the vehicle

for presenting an expert's analysis of causation". *Id.*

As in these cases, Plaintiff's extensive causation allegations are more than sufficient. Moreover, even at the summary judgment stage, scientific studies on classes of products can support causation as to specific products. *See Walsh v. BASF,* 234 A.3d 446, 464 (Pa. 2020) ("[A]n expert need not rely on studies mirroring the exact facts under consideration."). Under *Walsh*, Plaintiff can rely on a study to support causation even where "the conclusion of the study's author were contrary" to Plaintiff's position. *Id.* at 454.[30] Here, because Plaintiff has alleged numerous studies to support general causation, this Court can easily reject Defendants' argument.

**B. Plaintiff has sufficiently pled specific causation.**

Plaintiff plausibly alleges that Defendants' UPF products caused his type 2 diabetes and non-alcoholic fatty liver disease. *Van Buskirk v. Carey Canadian Mines*, 760 F.2d 481, 492 (3d Cir. 1985) ("A proximate, or legal cause, is … a substantial contributing factor in bringing about the harm in question"). "At [the pleading] stage …, plaintiffs need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of proximate causation." *In re Avandia*, 804 F.3d 633, 646 (3d Cir. 2015) (affirming denial of motion to dismiss). The Complaint describes the causal connection between Plaintiff's regular consumption of Defendants' UPF and his injuries, including his chronic exposure to Defendants' UPF as a child, products he consumed from each manufacturer during that time period, and his diagnosis of type 2 diabetes and non-alcoholic fatty liver disease at age 16.[31] These are "adequate allegations of causation". *Bond*, 583 F. Supp. 3d at 652 (adequate to allege exposure to toxins and illness coupled with study showing

---

[30] This reasoning goes more to Plaintiff's "substantive" "burden" than to procedure, and thus "governs in federal court." *Paoli*, 35 F.3d at 752.
[31] Compl. ¶¶ 29-31, 503-11.

contamination).[32] Indeed, "[c]ourts are loathe to dismiss claims for lack of proximate cause at the pleading stage." *Candelaria v. Conopco*, 2023 WL 2266047, at *2 (E.D.N.Y. Feb. 28, 2023).

Defendants cite summary judgment decisions that involved limited exposure,[33] but Plaintiff alleges chronic exposure to Defendants' UPF.[34] Defendants also try to transmogrify asbestos summary judgment opinions rejecting "any breath" theories into a heightened pleading standard requiring precise allegations as to "what products he consumed, when, and in what quantities." ECF 117-1 at 29. However, Pennsylvania courts have never required plaintiffs to "produce a mathematically precise table equating exposure levels with harm to show plaintiffs were exposed to toxic levels of a chemical." *In re Philips Recalled CPAP, Bi-Level PAP, & Ventilator Prods. Litig.*, 2023 WL 7019287, at *4 (W.D. Pa. Sept. 28, 2023) (citing *Bonner v. ISP Techs.,* 259 F.3d 924, 928 (8th Cir. 2001)). Additionally, Plaintiff's claims do not hinge on a diagnosis of addiction, as Defendants suggest. Rather, Plaintiff alleges that the addictive qualities of UPF lead to overconsumption by consumers, including Plaintiff.[35] Even so, contrary to Defendants' assertion, courts permit addiction-based claims. *See In re JUUL* (*JUUL II),* 2022 WL 1601418, at *15 (N.D. Cal. Apr. 29, 2022); *Castano v. Am. Tobacco*, 961 F. Supp. 953, 956 (E.D. La. 1997); *In re Soc. Media Adolescent Addiction/Pers. Inj.*, 754 F. Supp. 3d 946, 985 (N.D. Cal. 2024).

Defendants also argue that type 2 diabetes and non-alcoholic fatty liver disease are

---

[32] *See also Carvalho-Grevious*, 851 F.3d at 257 (Title VII case) ("proving but-for causation as part of her ultimate burden of persuasion comes later, and not at the motion-to-dismiss stage"); *Feeney v. Disston Manor*, 849 A.2d 590, 595 (Pa. Super. 2004) ("Once a plaintiff has introduced evidence that a defendant's negligent act or omission increased the risk of harm to a person in plaintiff's position, and that the harm … sustained, it becomes a question for the jury whether that increased risk was a substantial factor in producing the harm.").

[33] *See Howard v. A.W. Chesterton*, 78 A.3d 605, 608 (Pa. 2013); *Betz v. Pneumo Abex*, 44 A.3d 27, 37 (Pa. 2012); *Gregg v. V-J Auto Parts*, 943 A.2d 216, 227 (Pa. 2007).

[34] *See* Compl. ¶¶ 30, 507-08.

[35] Compl. ¶¶ 29, 62, 149-95, 294-95.

"multifactorial diseases," but Plaintiff need not rule out other possible causes at the pleading stage.[36] *In re Generic Pharms. Pricing Antitrust Litig.*, 394 F. Supp. 3d 509, 524 (E.D. Pa. 2019) ("Plaintiffs are not required to plead facts that … definitively rule out all possible innocent explanations" and "it is improper at this stage … to weigh alternatives and [decide] which is more plausible"). Further, Defendants do not "explain how … potential alternatives make it implausible" that their UPF products caused Plaintiff's injuries. *Candelaria*, 2023 WL 2266047, at *3 ("Candelaria need not eliminate every other potential cause of her injury in order to plead causation. She only must plead facts that plausibly show DMDM in TRESemmé products to be a substantial factor—a low bar … "); *Locust Valley Water Dist. v. Dow Chem.*, 465 F. Supp. 3d 235, 240 (E.D.N.Y. 2020) (sufficient to plead that product was substantial factor).[37]

Moreover, "a defendant is not relieved from liability because another concurring cause is also responsible for producing injury." *Davis v. Volkswagen*, 2019 WL 3252054, at *8 (Pa. Super. July 19, 2019) (citing *Harsh v. Petroll*, 887 A.2d 209, 218 (Pa. 2005) and *Powell v. Drumheller*, 653 A.2d 619, 622 (Pa. 1995)); *see also Dicio v. Wells Fargo*, 2015 WL 8276585, at *12 (W.D. Pa. Nov. 4, 2015), *report and recommendation adopted*, 2015 WL 8207486 (W.D. Pa. Dec. 7, 2015).

---

[36] Thus, Defendants' reference to articles cited in the Complaint that acknowledge other potential causes of type 2 diabetes or fatty liver disease is not compelling. In any event, these articles support Plaintiff's position that rates of diabetes and fatty liver disease in youth have significantly risen during the relevant time period, and complications from those diseases are likely. *See* CDC, *New Research Uncovers Concerning Increases in Youth Living with Diabetes in the U.S.* (Aug. 24, 2021)(https://archive.cdc.gov/www_cdc_gov/media/releases/2021/p0824-youth-diabetes.html#:~:text=Diagnosed); Cioana, *Prevalence of Obesity Among Children with Type 2 Diabetes, Systematic Review and Meta-Analysis*, 5 JAMA Network Open (2022) ("obesity is not a universal phenotype in children with T2D"); Bush, *Pediatric Non-Alcoholic Fatty Liver Disease,* 4 Children (Basel) 1, 2 (2017); Cleveland Clinic, *Steatotic (Fatty) Liver Disease: Symptoms & Treatment* (https://my.clevelandclinic.org/health/diseases/15831-fatty-liver-disease). Also, Plaintiff has cited numerous other studies to support causation. *See* Compl. ¶¶ 64-87, 407-45.
[37] Defendants' cited caselaw does not support their position. *See S.F. v. Archer-Daniels-Midland*, 2014 WL 1600414 at *5 (W.D.N.Y. 2014) (case depended on market share liability).

At most, other concurrent causes create a proximate cause issue, which is "generally for the jury." *Sikkelee v. Precision Airmotive*, 907 F.3d 701, 716 (3d Cir. 2018).

Defendants cite *Pelman I*, 237 F. Supp. 2d at 533, 541 for the proposition that a complaint must account for potential alternative causes and specify how often the plaintiff ate foods at issue, but the Second Circuit reversed the lower court's decision on those grounds. *Pelman v. McDonald's* (*Pelman II*), 396 F.3d 508, 511 (2d Cir. 2005).[38] The Second Circuit reasoned that answers to questions such as "What else did the plaintiffs eat? How much did they exercise? Is there a family history of the diseases which are alleged to have been caused by McDonalds products?" were "the sort of information that is appropriately the subject of discovery, rather than what is required to satisfy the limited pleading requirements of Rule 8(a)." *Id.* at 511-12. The amended complaint, which did not answer those questions, "more than me[t] the requirements of Rule 8(a)." *Id.* at 512.[39] Further, in *Pelman I*, 237 F. Supp. 2d at 533, 541, the initial complaint did not "allege that the dangers … were not well-known". Here, Plaintiff alleges that the risks of Defendants' UPF are not common knowledge.[40] *See id.* at 534-7 (allowing claims to proceed if "plaintiffs attempt to show that over-consumption of McDonalds is different in kind from, for instance, over-consumption of alcoholic beverage or butter because the processing of McDonalds' food has created an entirely different—and more dangerous—food than one would expect from a

---

[38] Defendants cite *Precision Imaging v. Allstate*, 263 F. Supp. 3d 471 (S.D.N.Y. 2017) to argue that the Second Circuit got it wrong, but *Precision*–an insurance reimbursement dispute–does not say that the *Pelman II* ruling on causation would differ under *Twombly*. In addition, courts continue to find *Pelman II* "instructive". *See Washington v. Reynolds Consumer Prods.*, 2025 WL 673615, at *4 (S.D.N.Y. Mar. 3, 2025); *see also In re 5-hour ENERGY Mktg. & Sales Pracs. Litig.*, 2017 WL 385042, at *9 (C.D. Cal. Jan. 24, 2017).

[39] Plaintiff's Complaint and its attachments discuss potential alternative causation theories, such as obesity (Lustig article) and genetics. Compl. ¶ 457.

[40] Compl. ¶¶ 516-20, 531-33.

hamburger, chicken finger or french fry cooked at home").[41] Taking Plaintiff's allegations as true, it is plausible and reasonable to infer that the average child did not appreciate the risk of diabetes and fatty liver disease from UPF.

### C.  Plaintiff has sufficiently pled warnings causation and justifiable reliance.

As to fraud and the failure to warn claims, Defendants argue that Plaintiff has not pled that Defendants' concealment caused his injuries. However, Plaintiff alleges that "[i]f Defendants had warned [him] that use of their UPF … would increase [his] risk of being seriously injured, including but not limited to developing Type 2 Diabetes or fatty liver disease in childhood, Plaintiff would not have ingested their UPF." Compl. ¶ 538. Plaintiff also alleges that he justifiably relied on Defendants' misrepresentations and omissions, which induced him to purchase and use Defendants' UPF (*id.* ¶ 583-84, 598, 608, 610); and he would not have done so had he known the risks (*id.* ¶¶ 584, 598, 625). Further, the risks, by far, are not apparent to consumers, including Plaintiff (*id..* ¶¶ 351-52, 516, 536), and Defendants concealed from Plaintiff the facts that UPF were engineered to be addictive, over-consumed, and cause increased risks of severe injuries, such as type 2 diabetes and fatty liver disease (*id.* ¶¶ 576-81, 591-94, 605-07).

This Court must accept the allegations as true. Moreover, the allegations of an emerging *international* consensus that UPF are uniquely harmful, require warnings, and should not be marketed to children, does not mean that Plaintiff (or other Americans) knew of UPF's risks, including the risks of type 2 diabetes and non-alcoholic fatty liver disease.[42] Plaintiff has alleged

---

[41] The alcohol cases were likewise based on the common knowledge of the risks of alcohol, *see Garrison v. Heublein*, 673 F.2d 189, 190 (7th Cir. 1982); *Bruner v. Anheuser-Busch*, 153 F. Supp. 2d 1358, 1360 (S.D. Fla. 2001); *Cook v. MillerCoors*, 872 F. Supp. 2d 1346, 1351 (M.D. Fla. 2012), which is unlike Plaintiff's allegations here that risks of UPF are not common knowledge.

[42] Defendants point to Compl. ¶¶ 406-45 in support of their argument. However, there is no reason for this Court to rule, as a matter of law, that prior to his injuries Plaintiff was reading, for example, the Dietary Guidelines for Brazilians or the Israeli Nutrition Recommendations.

causation and this Court should draw an inference of causation in his favor.[43] Moreover, under Pennsylvania law, there is a rebuttable presumption that "when no warning or an inadequate warning is provided, the end-user would have read and heeded an adequate warning ..." *Pavlik v. Lane Ltd./Tobacco Exporters,* 135 F.3d 876, 883 (3d Cir. 1998).

Indeed, even on summary judgment, defendant has a "substantial burden … [to] show that … [plaintiff] would have ignored additional warnings." *McAndrew v. Russell Dean*, 2007 WL 9760414, at *15 (M.D. Pa. Mar. 6, 2007); *see also Pavlik,* 135 F.3d at 884. Likewise, justifiable reliance on misstatements or omissions "is typically a question of fact … and requires the consideration of the parties, their relationships, and the circumstances surrounding their transaction." *Toy v. Metro. Life Ins.*, 928 A.2d 186, 208 (Pa. Super. 2007); *Cook v. Santander Consumer*, 2024 WL 5046037, at *4 (W.D. Pa. Sept. 23, 2024) (adequate to allege that plaintiff did not make payment because defendant did not tell plaintiff of delinquencies in payments).[44] Accordingly, dismissal is not warranted.[45]

---

[43] *Phillips v. A-Best Prods.*, 665 A.2d 1167, 1171 (Pa. 1995), is inapposite as a jury determined the plaintiff was warned.

[44] *See also Dilworth v. Metro. Life Ins*., 418 F.3d 345, 354 (3d Cir. 2005); *Dukich v. IKEA*, 2021 WL 1534520, at *7 (E.D. Pa. Apr. 19, 2021) (adequate to allege plaintiffs "did not act in returning the recalled dressers for a refund because of IKEA's failure to notify them"); *Slemmer v. McGlaughlin Spray Foam Ins.*, 955 F. Supp. 2d 452, 461 (E.D. Pa. 2013) (adequate to allege plaintiffs would not have bought product if risk were disclosed); *Bors v. Johnson & Johnson*, 208 F. Supp. 3d 648, 656 (E.D. Pa. 2016) (same); *Landau v. Viridian Energy*, 223 F. Supp. 3d 401, 417 (E.D. Pa. 2016) (adequate to allege plaintiff would have acted differently without fraud).

[45] Defendants' reliance cases are distinguishable. *See KDH Elec. Sys. v. Curtis Tech*., 826 F. Supp. 2d 782, 802-803 (E.D. Pa. 2011) (did not concern omissions, and representations were true or barred by parole evidence rule); *Webb v. Volvo*, 2018 WL 1470470 (E.D. Pa. Mar. 26, 2018) (did not concern omissions, and plaintiff did not identify misleading statement); *Wartluft v. Milton Hershey Sch*., 354 F. Supp. 3d 584, 593-594 (M.D. Pa. 2018) (did not decide reliance as plaintiffs did not link reliance to suicide); *Ahmed v. Wells Fargo*, 432 F. Supp. 3d 556, 564 (E.D. Pa. 2020) (alleged no facts to support theory that defendant "misled" her).

III.    **Plaintiff's claims are not preempted.**

"Preemption is an affirmative defense that the defendant has the burden to prove." *Lupian v. Joseph Cory,* 905 F.3d 127, 130 (3d Cir. 2018). Defendants "face[] an uphill battle" because courts "apply a general presumption against preemption, meaning that, '[i]n areas of traditional state regulation, we assume that a federal statute has not supplanted state law unless Congress has made such an intention 'clear and manifest.'" *In re Nickelodeon*, 827 F.3d 262, 291 (3d Cir. 2016) (quoting *MD Mall Assocs. v. CSX*, 715 F.3d 479, 489 (3d Cir. 2013)) (quoting *Bates v. Dow Agrosciences,* 544 U.S. 431, 449 (2005)). Further, "when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily accept the reading that disfavors pre-emption." *Id.*[46] In addition, the complaint need not "contain[] allegations that seek to avoid or defeat a potential affirmative defense" and courts should not "shift the burden of proof on the anticipated defense to plaintiff." *Vance v. Terrazas*, 444 U.S. 252, 270 n.11 (1980).[47]

**A.  The NLEA does not preempt Plaintiff's claims.**

Defendants make a vague argument as to Nutrition Labeling and Education Act (NLEA) preemption, but do not clearly ask for dismissal on this basis. In any event, the NLEA does not in any way regulate carcinogens or other, non-nutritive substances in foods." H.R. Rep. No. 101–538, 1990 U.S.C.C.A.N. 3336, 3337 (1990). Moreover, NLEA preemption does not apply to "a warning concerning the safety of the food or component of the food." *Holk,* 575 F.3d at 338

---

[46] *See Holk,* 575 F.3d at 334 (applying presumption against preemption to "regulation of food and beverage labeling and branding").
[47] *See also Schmidt v. Skolas,* 770 F.3d 241, 251-53 (3d Cir. 2014); *Kent v. Pfizer*, 2017 WL 11672334, at *3 (S.D. Cal. Aug. 16, 2017) (no "obligation to plead around preemption.").

(quoting PL 101–535 § 6(c)(2)).[48] Thus, the NLEA does not preempt any claim.

### B. Neither the FMIA nor the PPIA preempt Plaintiff's claims.

Plaintiff identified 110 products and brand names in Complaint ¶ 508, but Defendants argue that Federal Meat Inspection Act (FMIA) or Federal Poultry Products Inspection Act (PPIA) preemption may apply to *some* products within *ten* product lines that *may* contain meat or poultry. Defendants themselves concede that the FMIA and PPIA cannot preempt the lion's share of Plaintiff's claims or even all claims against *any* Defendant.

Even for meat and poultry products, Defendants' warning preemption argument is limited to the *label*. Because states can still regulate forms of warning, marketing, or advertising beyond the label itself,[49] Defendants can still fulfill their "duty to advise unsophisticated consumers" of risks. *Drayton v. Pilgrim's Pride,* 2004 WL 765123, at *7 (E.D. Pa. Mar. 31, 2004). Moreover, Defendants have not demonstrated that the FMIA or PPIA even apply to *warnings* about health risks. Defendants point to no FMIA or PPIA provision about warnings, and do not claim that the USDA *ever* considers whether a manufacturer should warn about health risks.

The elements of Defendants' FMIA/PPIA preemption defense are 1) Defendants "prepared" their UPF at an "establishment" under the FMIA/PPIA; 2) Defendants prepared their UPF "in accordance with the [FMIA/PPIA] requirements"; 3) there is a federal "requirement" under the FMIA/PPIA; 4) there is a state "requirement"; 5) the state "requirement" is "in addition

---

[48] *See also Nemphos v. Nestle Waters,* 775 F.3d 616, 621 & n. 5 (4th Cir. 2015); *Climbing Kites v. Iowa*, 739 F. Supp. 3d 742, 759 (S.D. Iowa 2024); *Lavoie-Fern v. Hershey,* 610 F. Supp. 3d 661, 665-67 (M.D. Pa. 2022); *Sciortino v. Pepsico,* 108 F. Supp. 3d 780, 799-805 (N.D. Cal. 2015); *Nat'l Rest. Ass'n v. N.Y. City Dep't of Health*, 49 N.Y.S.3d 18, 26 (App. Div. 2017).

[49] *See Thornton v. Kroger,* 2022 WL 488932 at *89 (D.N.M. Feb. 17, 2022); *Animal Legal Def. Fund v. Hormel,* 258 A.3d 174, 194-95 (D.C. App. 2021); *Organic Consumers v. Sanderson Farms,* 284 F. Supp. 3d 1005, 1013-14 (N.D. Cal. 2018); *Gershengorin v. Vienna Beef,* 2007 WL 2840476, at *3 (N.D. Ill. Sept. 28, 2007); *Am. Meat Inst. v. Ball,* 424 F. Supp. 758, 766 (W.D. Mich. 1976); *see also U.S. v. Stanko,* 491 F.3d 408, 418 (8th Cir. 2007) (FMIA "does not preempt state unfair-trade-practices laws in general").

to, or different than" the federal requirement; 6) Defendants' UPF is not "adulterated"; and 7) Defendants' UPF is not "misbranded." 21 U.S.C. §§ 467e, 678. Defendants do not even attempt to meet the "establishment", "preparation", "adulterated" or "misbranded" elements.

Nor can Defendants satisfy the state or federal "requirement" elements. Both laws expressly grant states "concurrent jurisdiction" "to prevent "adulterated or misbranded" meat or poultry products. 21 U.S.C. §§ 467e, 678. Both Acts evidence congressional intent for states to regulate meat and poultry. 21 U.S.C. §§ 451, 602 ("cooperation by the States"); *id.* §§ 454(a), 661(a) ("It is the policy of the Congress to protect the consuming public from meat and [poultry] products that are adulterated or misbranded and to assist in efforts by State and other Government agencies to accomplish this objective."). Indeed, President Johnson declared that the 1967 and 1968 amendments were a necessary "Federal-State partnership for consumer protection." *Taylor v. JBS Foods,* 2025 WL 102450, at *8 (D.S.D. Jan. 15, 2025).

As the Supreme Court has explained, "[a] requirement is a rule of law that must be obeyed; an event, such as a jury verdict, that merely motivates an optional decision is not a requirement," and therefore, "a state cause of action that seeks to enforce a federal requirement does not impose a requirement that is different from, or in addition to, requirements under federal law." *Bates,* 544 U.S. at 448. This reasoning is all the more salient here, where Congress expressly provided the States with concurrent jurisdiction. Further, "[t]o survive pre-emption, the state-law requirement need not be phrased in [] *identical* language" as the federal requirement. *Id.* at 454 (emphasis in original). Rather, state law need only be parallel to federal standards, and courts can fashion jury instructions to "ensure that nominally equivalent labeling requirements are *genuinely* equivalent." *Id.* (emphasis in original). To the extent state torts have different elements, "such additional elements … would make the state requirements narrower, not broader, than the federal

requirement. While such a narrower requirement might be 'different from' the federal rules in a literal sense, such a difference would surely provide a strange reason for finding pre-emption." *Id.* at n. 23 (quoting *Medtronic v. Lohr,* 519 U.S. 470, 495 (1996)); *see also Nickelodeon,* 827 F.3d at 291-92 ("even when federal laws have preemptive effect in some contexts, states generally retain their right 'to provide a traditional damages remedy for violations of common-law duties when those duties parallel federal requirements.'" (quoting *Lohr,* 519 U.S. at 495)). Thus, even if the FMIA/PPIA apply to warnings, states can impose parallel liability for conduct that also violates the federal Acts—i.e., misleading labeling. *See Taylor,* 2025 WL 102450, at *9 (FMIA); 9 C.F.R. §§ 301.2, 381.1(b), 317.8(a), 381.129(b); 21 U.S.C. §§ 453(h), 601(n).

### 1.  The FMIA and PPIA do not preempt Plaintiff's labeling claims.

As Defendants point out, some courts[50] have held that, when the USDA Food Safety and Inspection Service ("FSIS") approves a label, some state law claims may be preempted.[51] However, better reasoned opinions recognize that "the plain text of the [Acts] demonstrates that FSIS approval of a label is not conclusive as to whether the label is unlawfully misleading." *Taylor,*

---

[50] Defendants rely on cases that involved federally-approved statements on labels or clear conflicts with regulatory requirements, but Plaintiff's claims relate to omissions and Defendants point to no regulation that would conflict with a UPF warning. *See Webb v. Trader Joe's,* 418 F. Supp. 3d 524 (S.D. Cal. 2019) (challenged approved water content statement ); *Phelps v. Hormel,* 244 F. Supp. 3d 1312 (S.D. Fla. 2017) (challenged approved statements that products were "Natural", which complied with federal regulatory definition of "Natural"); *Brower v. Campbell,* 243 F. Supp. 3d 1124 (S.D. Cal. 2017) (challenged approved "healthy" statement); *Meaunrit v. ConAgra,* 2010 WL 2867393, at *1 (N.D. Cal. July 20, 2010) (challenged approved cooking instructions); *Grocery Mfrs. v. Gerace,* 755 F.2d 993 (2d Cir. 1985) (state law requiring "imitation" label would force manufacturer to violate federal definition of "imitation"); *Kuenzig v. Hormel,* 505 F. App'x 937 (11th Cir. 2013) (challenged fat percentage based upon federally-required method to calculate).

[51] *Loper Bright Ent. v. Raimondo,* 603 U.S. 369, 412 (2024) makes it clear that "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority[.]" Yet Defendants rely exclusively on pre-*Loper* decisions that give FSIS approval conclusive deference that exceeds Congressional delegation. In light of *Loper,* FSIS approval does not mandate preemption. *See Taylor,* 2025 WL 102450, at *5-*7.

2025 WL 102450, at *6 (quoting *Thornton v. Tyson,* 28 F.4th 1016, 1031 (10th Cir. 2022) (Lucero, J., dissenting));[52] *see also Thornton v. Kroger,* 2022 WL 488932, at *89 ("FMIA's preemption clause gives States concurrent jurisdiction over products that are 'misbranded'" ... .); *Armour v. Ball,* 468 F.2d 76, 84 (6th Cir. 1972) (finding that state statute conflicted with federal requirements for sausage composition, but noting that states can regulate "adulterated or misbranded articles"). Both Acts prohibit product "labeling which is false or misleading," and indicate that labeling must be both "not false or misleading *and* ... approved by the Secretary."[53] Thus, even if the FSIS approves a label, the label may still be "false or misleading".[54] A product is misbranded if the label "conveys any false impression or gives any false indication of ... quality," 9 C.F.R. §§ 317.8(a), 381.129(b), or if it is "false or misleading in any particular." 21 U.S.C. §§ 453(h), 601(n); 9 C.F.R. §§ 301.2, 381.1(b). The regulations make clear that pre-approval is not the final word on whether labels are misleading. *See* 9 C.F.R. §§ 412.2, 500.8 (approval may be revoked if later found to be misleading). Moreover, given Congress's express purpose to give concurrent state authority, courts should not rewrite the law to do the opposite.

Plaintiff alleges that UPF cause "unique health risks, separate and apart from the nutrient

---

[52] *Thornton v. Tyson* is distinguishable. Those plaintiffs sought injunctions to force label changes, and Congress repealed a statutory requirement similar to the plaintiffs' proposal. 28 F.4th at 1022-23, n.4 & n.7. The majority decision is also unpersuasive, because the majority rendered the "concurrent jurisdiction" exception and other statutory provisions as dead letters. The preemption provision does not state that preapproval bars concurrent jurisdiction.

[53] 21 U.S.C. § 607(d) (emphasis added); *id.* § 457(c); *see also Scialabba v. Cuellar de Osorio,* 573 U.S. 41, 70 (2014) (conjunctive "and" often makes two phrases "independent command[s]"); *U.S. v. Milchin,* 128 F.4th 199, 202 (3d Cir. 2025) ("The canon against surplusage counsels against adopting interpretations that render [portions of] a statute superfluous, void, or insignificant.").

[54] *See Taylor,* 2025 WL 102450, at *7 ("Congress did not make the Secretary [of Agriculture] the sole arbiter of whether a label is false or misleading."); *Fed. of Homemakers v. Butz,* 466 F.2d 462, 464 (D.C. Cir. 1972) (if USDA regulation permits misleading label, it "would be in excess of [the Secretary's] authority"); *Armour v. Freeman,* 304 F.2d 404, 410 (D.C. Cir. 1962) (Secretary proposed label was misleading); *see also id.* at 410 (Prettyman, J., concurring) ("reaction of the ordinary consumer" is test for misleading); *Butz,* 466 F.2d at 465; *Taylor,* 2025 WL 102450, at *7.

quality of a diet" and that the risks of UPF "are further compounded by the poor dietary quality of UPF" and "exacerbated by the fact that UPF are engineered to be overconsumed." Compl. ¶¶ 67-68. Further, Plaintiff alleges that ultra-processing causes UPF to "substantially deviate from the natural range and structure observed in natural foods" such that the human metabolism may not properly process UPF. *Id.* ¶ 86. Plaintiff alleges that he was misled by Defendants' concealment of these risks. *Id.* ¶ 618. Plaintiffs' claims are parallel to federal requirements that meat and poultry products not be misleading or adulterated. Without warnings, Defendants' labels give the false impression that such foods are as wholesome as foods that have not undergone ultra-processing. *See Zauderer v. Ohio,* 471 U.S. 626, 651 (1985) ("[W]arning[s] … might be appropriately required ... to dissipate the possibility of consumer confusion or deception."). Furthermore, Defendants do not claim that the PPIA/FMIA prevent a warning about UPF's risks.

Moreover, Defendants point to only a single approved product, but do not meet their burden by "produc[ing] evidence that the label was reviewed and approved by FSIS." *Cohen v. ConAgra,* 16 F.4th 1283, 1289 (9th Cir. 2021) (reversing dismissal because manufacturer did not prove FSIS approval). Indeed, many meat and poultry labels are never reviewed by the FSIS, but evade review through a regulation deeming such products "generically approved." 9 C.F.R. § 412.2(b). Defendants submit no affidavit or other evidence as to USDA approval of any label. In any event, consideration of such matters would be premature at this stage as Plaintiff alleges that Defendants concealed and misrepresented UPF risks.[55] *See Webb v. Trader Joe's,* 999 F.3d at 1204 (recognizing

---

[55] *See, e.g.,* Compl. ¶ 356 ("Defendants' internal testing has revealed safety concerns that they have concealed from consumers, regulators, and the public, and Defendants had actual knowledge that their UPF would cause incurable and life-changing illnesses."); *id.* ¶ 584 ("If Plaintiff had known the true facts and the facts concealed by Defendants, Plaintiff would not have purchased or ingested Defendants' UPF."); *id.* ¶ 591 ("Defendants willfully deceived Plaintiff by concealing these facts ... ."); *id.* ¶¶ 594-616 ("Defendants willfully and intentionally failed to disclose and

that plaintiff's "claims might not be preempted [under the PPIA] ... if... Trader Joe's is misrepresenting its data to FSIS").

### 2. The FMIA and PPIA do not preempt Plaintiff's testing, design, manufacturing, and implied warranty theories of liability.

Defendants have not met the federal "requirement" element of their preemption defense as to liability for design, manufacture, inadequate testing and implied warranty. Specifically, Defendants point to no FMIA or PPIA "requirement" that mandates that they sell UPF or prohibits them from selling non-UPF versions of their food. *See Ass'n des Éleveurs de Canards v. Becerra,* 870 F.3d 1140, 1150 (9th Cir. 2017) ("Nothing in the [PPIA] … limits a state's ability to regulate the *types* of poultry that may be sold …. [I]f a state bans a poultry product like foie gras, there is nothing for the PPIA to regulate.") (emphasis in original); *Empacadora de Carnes v. Curry,* 476 F.3d 326, 333 & n.4 (5th Cir. 2007) (FMIA "in no way limits states in their ability to regulate what type of meats may be sold"); *Cavel Int'l v. Madigan*, 500 F.3d 551, 554 (7th Cir. 2007) ("[I]n a literal sense a state law that shuts down any 'premises, facilities and operations …' is 'different' from the federal requirements …, but so literal a reading is untenable."); *Upside Foods v. Simpson*, 2024 WL 5274483, at *7 (N.D. Fla. Oct. 11, 2024) ( "[N]o federal authority [] *requires* the sale or use of cultivated meat") (emphasis in original).[56]

---

concealed material facts, and made false representations regarding the dangers and safety concerns of the UPF."); *see also id.* ¶ 57 (defining UPF as including "mechanically separated meat").

[56] This case is not like *Nat'l Meat Ass'n v. Harris,* 565 U.S. 452, 457-58 (2012), where a state statute conflicted with federal regulations regarding the treatment of injured animals. *See Becerra,* 870 F.3d at 1151-52 & n.7 (distinguishing *Harris*); *Upside Foods*, 2024 WL 5274483, at *7 (same). The *Harris* Court explained, "California's statute substitutes a new regulatory scheme for the one the FSIS uses." 565 U.S. at 460. The Court distinguished *Madigan* and *Curry* because those state laws prohibit manufacturers from ordering horses in the first place, but the ambulatory swine law tells slaughterhouses what to do when they encounter injured animals. *Id*. at 467. Moreover, the Court recognized that "States may exact civil ... penalties for ... conduct that also violates the FMIA" and the FMIA leaves "room for the States to regulate." *Id.* at n.10.

Even if there were an applicable federal "requirement", the FMIA and PPIA prohibit the adulterated meat and poultry products and authorize States to prohibit adulterated foods. 21 U.S.C. §§ 467e, 458(2), (3), 610, 678; *Blumas v. Costco*, 1999 WL 35809869, at *4 (D.N.M. Feb. 18, 1999) (state torts within concurrent jurisdiction). A product is "adulterated" if it "contains any poisonous or deleterious substance which may render it injurious to health," is "unsound, unhealthful, unwholesome, or otherwise unfit for human food," "any substance has been substituted," "inferiority has been concealed in any manner," or "any substance has been added thereto ... so as to ... reduce its quality ... or make it appear better or of greater value than it is." 21 U.S.C. §§ 453(g), 601(m); 9 C.F.R. §§ 301.2, 381.1(b). FSIS inspection does not foreclose a later finding that an item is adulterated. 21 U.S.C. §§ 610, 458(2), (3). Thus, states can prevent the sale of UPF because UPF are unsound, unfit, and inferior to alternatives.[57]

## IV. Plaintiff's claims do not violate the First Amendment.

Of course, the First Amendment is irrelevant to design, testing and implied warranty allegations. Further, the First Amendment does not shield manufacturers from their duty to warn of risks. *See In re BPA Polycarbonate Plastic*, 2009 WL 3762965, at n.4 (W.D. Mo. Nov. 9, 2009) (rejecting argument that First Amendment prohibits tort liability for failure to disclose information); *In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 25 F. Supp. 2d 837, 848 (N.D. Ill. 1998) ("there is no authority for the proposition that the First Amendment provides immunity for failure to warn cases"). If it did, no failure to warn claim could ever proceed against a manufacturer. Even in challenges to statutorily compelled warnings, which are subject to heightened judicial scrutiny not implicated by tort-based claims, courts have recognized that states

---

[57] *Animal Legal Def. Fund Boston v. Provimi Veal,* 626 F. Supp. 278, 284 (D. Mass. 1986), is distinguishable. In that case, 21 U.S.C. § 360b(k) made it clear that—contrary to the plaintiff's claim—certain animal drugs, including antibiotics, cannot render the resulting meat "adulterated."

may compel warnings about risks. *See Zauderer,* 471 U.S. at 651 & n.14 ("disclosure requirements trench much more narrowly on an advertiser's interests than do flat prohibitions on speech").[58] Thus, contrary to Defendants' argument, manufacturers cannot evade liability by characterizing a safety warning as "controversial," i.e., disputed. In any event, Plaintiff's allegations about the risks of UPF must be taken as true at this stage.

Defendants' reliance on *NIFLA* is misplaced, as it did not involve torts, products or a motion to dismiss. In fact, the Court re-affirmed the propriety of compelled safety warnings. *Nat'l Inst. of Family and Life Advocates ("NIFLA") v. Becerra,* 585 U.S. 755, 775 (2018) ("[W]e do not question the legality of health and safety warnings long considered permissible"). There, statutes required reproductive health clinics to provide disclosures about abortion services. *Id.* at 760-62. The *Zauderer* test[59] did not apply because the notice is irrelevant to the clinic's services and concerns "abortion, anything but an 'uncontroversial' topic." *Id.* at 769. The Court distinguished "[l]ongstanding torts for professional malpractice," which are "firmly entrenched in American tort law." *Id.* at 769-70. The Court also distinguished a requirement that physicians warn of abortion and childbirth risks. *Id.* at 770. Unlike *NIFLA,* the Plaintiff's claims relate to products that Defendants provide, are "longstanding torts" that are "firmly entrenched in American tort law", concern health risks, and do not require Defendants to take sides in a heated political controversy. Moreover, unlike the law in *NIFLA*, the jury's job is to determine whether the Defendants adequately warned, not to craft a warning or to decide if the Plaintiff has adequately crafted one.

---

[58] *See also Md. Shall Issue v. Anne Arundel Cnty.,* 91 F.4th 238, 244 (4th Cir. 2024) (county can require warning of link between guns and suicide); *In re R.M.J.,* 455 U.S. 191, n.11 (1982).

[59] Under *Zauderer*, states may compel disclosure of "purely factual and uncontroversial" speech "reasonably related to the State's [substantial] interest," such as "preventing deception of consumers," and is not "unjustified or unduly burdensome." 471 U.S. at 651. However, there is a distinction between government compelled affirmative speech, and tort liability for a product manufacturer's failure to speak.

*Petree v. Victor Fluid Power,* 831 F.2d 1191, 1195 (3d Cir. 1987).[60]

## V.   Plaintiff has sufficiently pled each cause of action.

### A.  Plaintiff has sufficiently pled his negligence claim (Count I).

Contrary to Defendants' argument, the Complaint includes robust, specific allegations of

breach to support the negligence claim:

- Defendants did not warn Plaintiff of the risks and dangers associated with the ingestion of their UPF (Compl. ¶¶ 332-56, 357-402, 403-45, 446-502, 505-06, 514, 517, 529-43, 634, 654);
- Defendants did not properly test their UPF to determine risks to the endocrine and metabolic systems, including Type 2 Diabetes and Fatty Liver Disease (Compl. ¶¶ 338-56, 506, 513, 517b, 517j, 592, 606-07, 633);
- Defendants engineered their UPF to be addictive and overconsumed (Compl. ¶¶ 8-12, 15, 29, 62, 68-70, 103-32, 133-48, 149-238, 271, 290, 292-96, 300-01, 413, 421, 428, 445, 506, 515, 517c, 517d, 534c, 534d, 547, 605, 620, 632-33, 643, 649, 654, 663);
- Defendants' UPF contain dangerous and unnatural combinations of nutrients (Compl. ¶¶ 2, 22-23, 53-63, 64-87, 198, 209-10, 220, 428, 515, 517e, 534e, 633);
- Defendants' UPF contain dangerous chemical additives and contaminants (Compl. ¶¶ 2, 57-58, 76-82, 106, 131-32, 198, 201, 210, 220, 295, 337-49, 353, 409, 412, 422, 429, 515, 517f, 534f, 633);
- Defendants' UPF causes unique health risks independent of nutrient content (Compl. ¶¶ 20-28, 64-87, 149-60, 194, 205, 221-22, 338-45, 356, 388-90, 393-97, 406-45, 455-58, 506, 515, 517g, 534b, 534g, 633);
- Defendants' UPF is ultra-processed (Compl. ¶¶ 2, 23, 53-87, 179, 196-238, 292, 534);
- Ultra-processing causes human health risks that other foods do not (Compl. ¶¶ 20-28, 64-87, 149-160, 194, 205, 221-22, 338-45, 356, 388-90, 393-97, 406-45, 455-58, 506, 515, 517b, 517g, 534b, 534g, 633);

---

[60] *Cal. of Com. v. Council for Educ. & Rsch. on Toxics,* 29 F.4th 468, 480 (9th Cir. 2022) and *Nat'l Ass'n of Wheat Growers v. Bonta,* 85 F.4th 1263, 1279 (9th Cir. 2023) are distinguishable as injunctions against statutorily compelled warnings about "known" risks even though there was considerable dispute. Further, the *Bonta* dissent correctly cautioned against requiring "scientific unanimity" and to "learn from historic episodes where hazardous product manufacturers have themselves manufactured controversy by financing studies to create doubt about the hazards they were creating." *Id.* at 1284 (Schroeder, J., dissenting). *Am. Beverage Ass'n v. S.F.,* 916 F.3d 749, 753, 756 (9th Cir. 2019), is even more inapposite as it turned on whether the ordinance-required warning was too large. Further, even in the context of statutorily compelled warnings, governments can compel affirmative speech that "is no more and no less than a safety warning" and does not force the speaker "to take sides in a heated political controversy." *CTIA v. Berkeley,* 928 F.3d 832, 848, 852-53 (9th Cir. 2019) (can require warning about radiation risks related to cell phones).

- Defendants' UPF significantly increases the risk of Type 2 Diabetes and Fatty Liver Disease (Compl. ¶¶ 4-5, 8, 18-30, 65-87, 170, 300, 303-31, 345, 376-90, 405-12, 418, 420, 427, 440, 456, 504, 515, 517b, 517i, 532, 534h, 538, 549, 566, 581, 591, 605, 638);

- Defendants marketed and labeled their UPF as safe when Defendants knew or should have known their UPF were dangerous (Compl. ¶¶ 29, 63, 64-87, 193, 230-31, 245-47, 251, 254-55, 302, 312, 323, 326, 349, 356, 357-61, 368-402, 403-45, 446-502, 505, 513-28, 529-43, 544-60, 561-73, 574-88, 589-602, 603-16, 617-69, 630-39, 640-56, 660, 668);

- Defendants did not act like reasonably prudent companies under similar circumstances (Compl. ¶¶ 512-28, 529-43, 581-82); and

- Defendants' marketing of their UPF failed to inform consumers of the risks associated with UPF. (Compl. ¶¶ 8, 13-14, 29, 63, 64-87, 193, 230-31, 239-89, 295-96, 302, 312, 323, 326, 349, 356, 357-402, 403-45, 446-502, 505, 513-28, 529-43, 544-60, 561-73, 574-88, 589-602, 603-16, 617-29, 630-39, 640-56, 660, 668).

Pennsylvania courts follow the RESTATEMENT (SECOND) OF TORTS §§ 395 and 398 for negligent design and manufacturing liability. *Lance v. Wyeth*, 85 A.3d 434, 445 n.13 (Pa. 2014). Section 395 provides liability for negligent manufacturing where the defendant did not exercise reasonable care in the manufacture of its product. Section 398 provides liability for negligent design where the defendant did not exercise reasonable care in the adoption of a safe design. At this stage, if a plaintiff has stated a negligence claim under *any* theory of liability, it is not necessary to dissect the allegations and dismiss specific theories of liability. *Douglas v. Atrium Med.*, 2023 WL 8643638, at *7 (M.D. Pa. Dec. 11, 2023) ("it could be appropriate for a plaintiff to allege, as the plaintiffs have here, that the defendants violated their duty of care either in design or marketing, without specifically distinguishing between the treatment of the claims") (citing *Smith v. Howmedica*, 251 F. Supp. 3d 844, 852 (E.D. Pa. 2017) and *Lance*, 85 A.3d at 458); *Slemmer*, 955 F. Supp. 2d at 457 (adequately pled negligence under design, manufacturing and failure to warn theories; *Bailey v. Janssen Pharm.*, 288 F. App'x 597, 607 (11th Cir. 2008) (complaint that wove together manufacturing and design defect theories stated a claim).

Plaintiff alleges more than enough as to UPF's dangerous design and that a safer, feasible

alternative design is available through allegations as to Defendants' design choices that caused the risks. Contrary to Defendants' argument, courts do not require more.[61] Given the fact-driven analysis, dismissal is inappropriate. *See, e.g., Metzgar v. Playskool*, 30 F.3d 459, 462-466 (3d Cir. 1994) (vacating summary judgment on negligent design and warning claims).

As to negligent design, Defendants cite *McGrain v. C.R. Bard,* 551 F. Supp. 3d 529, 541-42 (E.D. Pa. 2021), but that plaintiff did not "address either the design of Defendants' product or the availability of safer, feasible alternatives in any level of meaningful detail." Here, Plaintiff does both. Moreover, courts have rejected *McGrain'*s suggestion that a plaintiff must plead a safer alternative. *See Spear v. Atrium Med.,* 621 F. Supp. 3d 553, 559 & n.8 (E.D. Pa. 2022); *Lance*, 85 A.3d at n.36 (rejecting argument that Pennsylvania requires "proof of an alternative safer design as an absolute prerequisite"); *Foge*, 605 F. Supp. 3d at 690. Further, the *Spear* court found that the complaint "implicitly" pleads an alternative "where it identifies specific design choices giving rise to the risk." 621 F. Supp. 3d at n.8. As in *Spear*, there is an inference of a safer alternative had Defendants made different design choices.

Defendants incorrectly contend that the only allegation regarding negligent manufacturing is found in ¶ 517. The Complaint repeatedly alleges that Defendants did not exercise reasonable care in how they engineered and manufactured UPFs—e.g., that Defendants engineered their UPF

---

[61] *See English v. Eisai,* 2022 WL 780667, at *3 (M.D. Pa. Mar. 14, 2022) (adequate to allege that there is safer alternative—drug without risk); *Foge, McKeever v. Zoetis*, 605 F. Supp. 3d 682, 689 (W.D. Pa. 2022) (adequate to allege design flaw and alternative available without harmful substances); *Wilson v. Synthes*, 116 F. Supp. 3d 463, 468 (E.D. Pa. 2015) (one paragraph "sufficiently specific to identify the alleged design defect in Defendants' product"); *Douglas*, 2023 WL 8643638, at *6; *Crockett v. Luitpold Pharms.*, 2020 WL 433367, at *11 (E.D. Pa. Jan. 28, 2020); *Mikula v. C.R. Bard*, 2022 WL 783429, at *2 (W.D. Pa. Mar. 15, 2022).

to be addictive[62], overconsumed[63], and that the manufacturing process of UPF itself causes risks independent of nutrient content.[64] These allegations are more than sufficient. *See Foge,* 605 F. Supp. 3d at 691 (inference of manufacturing defect since drug was not intended to cause sudden death in horses).[65] Accordingly, dismissal is not warranted.[66]

### B. Plaintiff has sufficiently pled his failure to warn claim (Count II).

Defendants argue that the risks are obvious, but Plaintiff alleges that the dangers of UPF are not apparent to consumers.[67] For a risk to be obvious, "there must be general consensus within the relevant community." *See Metzgar,* 30 F.3d at 465. The inquiry is "whether knowledge of the danger would be possessed by 'the ordinary consumer who purchases [or uses the product], with the ordinary knowledge common to the community as to its characteristics.'" *Fleck v. KDI Sylvan Pools*, 981 F.2d 107, 119 (3d Cir. 1992). For example, "if the product is one customarily used by children, the danger must be one which children would be likely to recognize and appreciate in order to prevent them from recovering for a product related injury on the grounds that the danger

---

[62] Compl. ¶¶ 8-12, 15, 29, 62, 103-32, 133-48, 149-238, 271, 290, 292-96, 300-01, 421, 428, 445, 506, 515, 517c, 534c, 547, 605, 620, 632-33, 643, 654, 663.

[63] Compl. ¶¶ 29, 62, 68-70, 166, 170-74, 187-95, 196-238, 296, 413, 506, 517d, 534d, 547, 605, 643, 645, 649.

[64] Compl. ¶¶ 2, 20-28, 57-59, 64-87, 149-160, 194, 205, 221-22, 338-45, 356, 388-90, 393-97, 406-45, 455-458, 506, 515, 517g, 534b, 534g, 633.

[65] *See also Runner v. C.R. Bard*, 108 F. Supp. 3d 261, 270 (E.D. Pa. 2015) ("plaintiff satisfies Rule 8 when he pleads the defendants 'failed to exercise reasonable care' in manufacturing"); *DiCair v. Gilead Scis.*, 2022 WL 2703611, at *3 (E.D. Pa. July 12, 2022) (declining to dismiss negligent manufacturing "[a]lthough the Complaint's allegations are not as pointed as one would hope"); *Wilson*, 116 F. Supp. 3d at 468 (declining to dismiss manufacturing defect even though "allegations … are not extremely specific").

[66] *Smith*, 251 F. Supp. 3d at 853 is distinguishable as that plaintiff alleged "no factual allegations that address[ed] the manufacturing process."

[67] *See, e.g.,* Compl. ¶ 351 ("most consumers assume that if something is on shelves … it is safe, pure and does not contain hidden health harms"); *id*. ¶ 352 ("Most consumers assume that anything included in a store bought item has been studied, tested, and guaranteed to be safe—especially given the likelihood that children may ingest these items.").

was open and obvious." *Id*.[68] Taking inferences in Plaintiff's favor, an ordinary child would not know the risks of type 2 diabetes or fatty liver disease.

Contrary to Defendants' argument, RESTATEMENT (SECOND) OF TORTS § 402A cmt. j also supports a duty to warn. Comment j provides that a duty to warn exists for products, or ingredients in them, "consumed in excess quantity or over a long period of time when the danger, or potentiality of danger" *is not generally known or recognized*. In fact, Defendants' cases acknowledge that liability attaches to defendants under such facts. *See Gorran v. Atkins Nutritionals*, 464 F. Supp. 2d 315, 324 (S.D.N.Y. 2006) (food product defective or unreasonably dangerous when in condition not anticipated by average consumer); *Mills v. Giant of Md.*, 508 F.3d 11, 14 (D.C. Cir. 2007) (acknowledging cases where "risks from food are *not* considered widely known: 'unknown-ingredient' cases and 'unknown-harm' cases.").[69] Defendants' cases are also distinguishable because Plaintiffs did not plead that the risks were non-obvious.[70]

Defendants mischaracterize *Hahn v. Richter*, 673 A.2d 888, 889 (Pa. 1996) as prohibiting strict liability for food products; however, the court addressed prescription drugs and limited its

---

[68] In *Metzgar*, the court reversed a finding that choking risks of toy blocks were obvious. 30 F.3d at 465. Similarly, in *Fleck*, the court reversed the district court's conclusion that diving into a body of water of uncertain depth is obvious. 981 F.2d at 119. *See also Bowersfield v. Suzuki Motor,* 111 F. Supp. 2d 612, 623 (E.D. Pa. 2000) ("at least some ordinary consumers may not have fully appreciated the risks associated with riding in the rear cargo area"); *Stratos v. Super Sagless,* 1994 WL 709375, at *6 (E.D. Pa. Dec. 21, 1994) (risk of child being trapped in moving frame of electric bed not too obvious).

[69] *Mills* was decided primarily under the RESTATEMENT (THIRD) OF TORTS. Under RESTATEMENT (THIRD) OF TORTS: PROD. LIAB. § 7(a) "A food product may…be defectively designed under 2(b), as when the recipe for potato chips contains a dangerous chemical preservative; or may be sold without adequate warnings under 2(c), as when the seller fails to inform consumers that the dye applied to the skin of oranges contains a well-known allergen".

[70] *Gorran*, 464 F. Supp. 2d at 324 (focusing on whether "food product is sold in a condition anticipated by the consumer"); *Mills*, 508 F.3d at 14 (gas is well known risk of milk); *Dauphin Deposit Bank & Trust v. Toyota*, 596 A.2d 845, 850 (Pa. Super. 1991) (alcohol); *Seagram & Sons v. McGuire*, 814 S.W.2d 385, 388 (Tex. 1991) (alcohol).

holding to prescription drugs. Similarly, *Zuzel v. Cardinal Health*, 565 F. Supp. 3d 623, 639-640 (E.D. Pa. 2021) does not address food products or RESTATEMENT (SECOND) OF TORTS § 402A cmt. j.[71] In fact, § 402A cmt. d notes that strict liability applies "to the sale of food for human consumption." Defendants also create a false impression of § 402A cmt. e. While this comment recognizes that "there is today little in the way of consumer products which will reach the consumer without such processing," Defendants omit the preceding statement that "*Normally the rule stated in this Section will be applied to articles which already have undergone some processing before sale.*" Therefore, the Restatement supports Plaintiff's claims.[72] Further, *Zuzel*, *Metzgar*, *Fleck, Bowersfield,* and *Stratos* were decided after the plaintiffs had the opportunity to conduct discovery. Plaintiff should have the same opportunity here.

### C.  Plaintiff has sufficiently pled his implied warranty claim (Count III).

#### 1.  Defendants had sufficient notice.

Pre-suit notice is not required, *Samuel-Bassett v. Kia*, 34 A.3d 1, 26 (Pa. 2011), and a Complaint is sufficient notice. *See Yates v. Clifford Motors*, 423 A.2d 1262, 1270 n.10 (Pa. Super. 1980).[73] At any rate, "the reasonableness of delayed notice is a fact issue for the jury," and an improper basis for dismissal. *Bieda v. CNH Indus.,* 518 F. Supp. 3d 863, 875 (W.D. Pa. 2021).

---

[71] The *Zuzel* court also declined to address arguments relating to the "obviousness" of dangers.

[72] Courts follow the Restatement's guidance. *See Porrazzo v. Bumble Bee Foods*, 822 F. Supp. 2d 406, 418-419 (S.D.N.Y. 2011) (declining to dismiss based on whether risk of mercury poisoning from salmon was obvious). Importantly, even products listed in § 402A, cmt. i (whiskey, tobacco and butter) can lead to liability where a manufacturer alters the product to "induce addiction," or "are so extraordinarily unhealthy that they are outside the reasonable contemplation of the consuming public or that the products are so extraordinarily unhealthy as to be dangerous in their intended use." *Pelman I,* 237 F. Supp. 2d at 532.

[73] *See also Bednarski v. Hideout Homes & Realty*, 709 F. Supp. 90, 94 (M.D. Pa. 1988); *Confer v. Pall*, 2010 WL 11710657, at *2 (E.D. Pa. Mar. 2, 2010); *Parrish v. Volkswagen*, 463 F. Supp. 3d 1043, 1063–64 (C.D. Cal. 2020); *In re Nexus,* 293 F. Supp. 3d 888, 914 (N.D. Cal. 2018); *In re Ford (No. II)*, 2010 WL 2813788, at *39 (D.N.J. July 9, 2010).

## 2. Plaintiff has sufficiently pled an implied warranty.

Defendants' products were "not fit for their ordinary, intended use as safe food substances," because they are "engineered to be overconsumed" and "pose health risks when ingested." Compl. ¶¶ 547, 550. While Defendants boast that their UPF "are edible," ECF 117-1 at 49, a seller breaches the implied warranty of merchantability when its goods contain hidden defects. *See Weinberg v. Legion Athletics*, 683 F. Supp. 3d 438, 451 (E.D. Pa. 2023) ("it is of no consequence to our analysis whether" whether supplement performed intended function where plaintiff alleged that it was unsafe).[74] *Barton v. Lowe's*, 124 A.3d 349 (Pa. Super. 2015) rejected Defendants' argument otherwise. There, the trial court dismissed a claim where a lawnmower caught fire in storage because the mower was fit "to cut grass." *Id.* at 358. The Superior Court reversed because the implied warranty also warranted that the lawnmower would not pose hidden dangers. *Id.*

Defendants' cases do not support their argument. In *Whitson v. Safeskin*, the court simply held that a unique allergic sensitivity to latex did not render gloves unusually dangerous. 313 F. Supp. 2d 473, 480 (M.D. Pa. 2004). In *Andrade* and *Hoyte*, the courts dismissed claims alleging hidden risks in food because the plaintiffs did not allege that they suffered any health problems. *Andrade-Heymsfield v. NextFoods*, 2022 WL 1772262, at *1, *7 (S.D. Cal. Apr. 27, 2022); *Hoyte v. Yum! Brands*, 489 F. Supp. 2d 24, 26–28 (D.D.C. 2007).[75] Here, Defendants' UPF caused Plaintiff's health problems, and those injuries were not the result of his own unusual sensitivities.

Pennsylvania also recognizes that goods must "conform to the promises or affirmations of fact made on the container or label," 13 Pa.C.S. § 2314(b), and Plaintiff alleged that Defendants'

---

[74] *See also Morello v. Kenco Toyota Lift*, 142 F. Supp. 3d 378, 390 (E.D. Pa. 2015) (safety of product "goes to its ordinary purpose"); *Slemmer*, 955 F. Supp. 2d at 459 (adequate to allege that product is dangerous).

[75] *Shouey v. Duck Head Apparel,* 49 F. Supp. 2d 413, 429 (M.D. Pa. 1999), is unhelpful because that plaintiff gave no indication that the cigarette lighter did not function properly.

UPF "did not conform to the representations made by Defendants." Because Defendants ignore this basis for liability, dismissal is not appropriate.[76]

### D. Plaintiff has sufficiently pled his fraud and deception-based claims (Counts V-VIII).

Plaintiff alleges that Defendants had a duty to disclose risks, Compl. ¶¶ 575-76, 590-91, 604, but concealed the risks of their UPF. *Id*. ¶¶ 577-82, 591-97, 605-08. Particularly, Defendants concealed the fact that their "UPF were engineered to be addictive [and] … over-consumed, and cause increased risks of severe physical injuries in children, such as Type 2 Diabetes and fatty liver disease…." *Id*. ¶ 605. Plaintiff further alleges that he purchased and consumed Defendants' UPF because of these misrepresentations. *Id*. ¶¶ 583-86, 598-601, 610-15, 654.

#### 1. Defendants overstate the Rule 9(b) requirements.

"Fraud arises where [1] the misrepresentation is knowingly false, [2] where there is a concealment calculated to deceived, or [3] where there is a non-privileged failure to disclose." *De Joseph v. Zambelli*, 139 A.2d 644, 647 (Pa. 1958). Plaintiff's allegations support liability under the first method (negligent misrepresentation), second method (fraudulent concealment) or third method (negligent or fraudulent nondisclosure).

Initially, Defendants overstate the Rule 9(b) requirements. As to negligent misrepresentation, this Court can consider the general misrepresentation allegations because Rule 9(b) does not apply to negligent misrepresentation claims. *See Horizon Stevedoring v. Royal White Cement*, 2022 WL 16747281, at *8 (E.D. Pa. Nov. 7, 2022) ("allegations of 'numerous conversations' or 'repeated representations' … on unspecified dates and in unspecified places"

---

[76] Plaintiff has simultaneously filed a notice to voluntarily dismiss the express warranty claim.

sufficient for negligent misrepresentation claim).[77] As to fraudulent omissions, courts apply the relaxed Rule 9(b) standard, *Patel v. Patel*, 2016 WL 3000821, at *7 (E.D. Pa. May 25, 2016), as "it is well-nigh impossible for plaintiffs to plead all the necessary facts with particularity, given that those facts will often be in the sole possession of the defendant." *Scharpf v. Gen. Dynamics*, 2025 WL 1352262, at *3 (4th Cir. May 9, 2025).[78] Courts have found Rule 9(b) satisfied where the plaintiffs alleged that the defendant did not disclose a known risk. *In re Whirlpool Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942, 961 (N.D. Ohio 2009) ("…Plaintiffs' fraud-by-omission claims notify Whirlpool of the time (never), place (nowhere), and content (nothing) of the alleged misrepresentations, the Plaintiffs' alleged reliance (materiality), the fraudulent scheme (Whirlpool's knowledge of the supposed defects and problems), its fraudulent intent (failure to disclose them), and the resulting injury (overpayment).").[79] Plaintiff adequately alleges that Defendants knew of the risks of UPF and did not disclose them.

---

[77] *See Bors*, 208 F. Supp. 3d at 656 ("The majority of decisions ... have not applied Rule 9(b) to negligent misrepresentation cases."); *id.* at 656-67 (adequate to allege that defendant represented that dangerous product was safe); *Anderson v. Battersby*, 2024 WL 3498352, at *5 (M.D. Pa. July 22, 2024) ("the weight of authority suggests that Rule 9(b) does not apply to negligent misrepresentation claims.").

[78] *See also In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1418 (3d Cir. 1997) (9(b) relaxed "where the factual information is peculiarly within the defendant's knowledge or control"); *Feldman v. Mercedes-Benz*, 2012 WL 6596830, at *10 (D.N.J. Dec. 18, 2012) ("plaintiffs pleading a fraud by omission claim are not required to plead fraud as precisely as they would for a false representation claim"); *In re Takata Airbag Prod. Liab. Litig.*, 193 F. Supp. 3d 1324, 1337 (S.D. Fla. 2020) ("By definition, Plaintiffs cannot point to one particular statement by [defendant] as this count is for an omission—a non-statement."); *Falk v. Gen. Motors*, 496 F. Supp. 2d 1088, 1098–99 (N.D. Cal. 2007) ("Clearly, a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim."); Wright & Miller, Federal Practice and Procedure § 1298 (4th ed. 2023 update) ("Some courts apply Rule 9(b) more leniently when omissions rather than affirmative misrepresentations are involved, which seems appropriate.").

[79] *See also Feldman*, 2012 WL 6596830, at *10; *Falk*, 496 F. Supp. 2d at 1098-99; *Takata Airbag*, 193 F. Supp. 3d at 1337; *see also Patel*, 2016 WL 3000821, at *8 (sufficient to allege "knowingly omitted the fact that the funds were not presently available").

### 2. Plaintiff sufficiently pled his negligent and fraudulent misrepresentation claims (Counts V-VI).

As previously explained, Defendants' alleged misstatements support Plaintiff's negligent misrepresentation[80] claim because Rule 9(b) does not apply to this claim. Further, Plaintiff's negligent and fraudulent misrepresentation claims are supported by Defendants' "failure to disclose." *De Joseph*, 139 A.2d at 647.[81] A breach of duty to disclose can give rise to negligent or fraudulent non-disclosure. *Gibbs v. Ernst,* 647 A.2d 882, 894 (Pa. 1994) (recognizing "negligent failure to disclose"); *id.* at 892 (citing RESTATEMENT (SECOND) OF TORTS § 551; RESTATEMENT (SECOND) OF TORTS § 551(1), (2)(e), & cmt. e (liability where another would expect disclosure); *id.* at illus. 3 (duty to disclose that "house is riddled with termites"); *Gnagey Gas & Oil v. Pa. Underground Storage,* 82 A.3d 485, 500-502 (Pa. Commw. 2013).

Notably, "[a] seller has a duty to disclose conditions that are dangerous to the purchaser." *Glanski v. Ervine,* 409 A.2d 425, 430 (Pa. 1979); *see also Reichhold Chemicals v. Millennium Int'l Techs*., 1999 WL 270391, at *2 (E.D. Pa. May 5, 1999). Here, Plaintiff alleges Defendants did not disclose the risks of UPF. Compl. ¶¶ 574-602. "Defendants had unique and private access to the ingredients, manufacturing, development, design, production, research and/or testing of their UPF, and thus unique access to material facts regarding the safety of their UPF." Compl. ¶ 606. They

---

[80] *See* 37 AM. JUR. 2D FRAUD AND DECEIT § 192 ("[A] statement that contains only favorable matters and omits all reference to unfavorable matters is as much a false representation as if all the facts stated were untrue."); Compl. ¶ 564 (Defendants represented that UPFs are "safe, wholesome, healthy, protective, child-friendly, and/or natural for frequent ingestion."); *id.* ¶ 577 ("Defendants … represent[ed] that their UPF have no serious side effects when they knew or should have known that their products did cause serious side effects as described herein."); *id.* ¶ 580 ("Defendants' misrepresentations included but are not limited to messages in labels and marketing that their UPF are safe, healthy, and should be ingested by children."); *id.* ¶ 594.

[81] Defendant cites cases that did not involve omissions. *See e.g., Conquest v. WMC Mortg.*, 247 F. Supp. 3d 618, 641 (E.D. Pa. 2017); *Wartluft*, 354 F. Supp. 3d at 593; *Hart v. Univ. of Scranton*, 838 F. Supp. 2d 324, 329 (M.D. Pa. 2011).

also knew or should have known that ordinary consumers, like Plaintiff, would not have discovered the dangers of their UPF, including that Defendants' UPF were designed to be addictive and caused unique health risks. *Id*. ¶¶ 515-16. Specifically, their UPF were engineered to be addictive and overconsumed; contain dangerous and unnatural combinations of nutrients, chemical additive and contaminants; and significantly increase the risk of Type 2 Diabetes, Fatty Liver Disease, and other life-changing chronic illnesses. Compl. ¶¶ 62, 68, 515, 534. These allegations sufficiently allege that Defendants violated their duty to disclose. In any event, Defendants' argument is premature.[82]

### 3. Plaintiff sufficiently pled his fraudulent concealment claim (Count VII).

Plaintiff's fraudulent concealment claim is based upon Defendants' concealment calculated to deceive. *De Joseph*, 139 A.2d at 647. Plaintiff outlines the dangers associated with Defendants' UPF[83] that Defendants purposefully concealed from consumers, including Plaintiff.[84] Defendants argue that Plaintiff did not plead a special relationship. Initially, as explained in the

---

[82] *See* RESTATEMENT (SECOND) OF TORTS § 551 cmt. m ("If there are disputed facts bearing upon the existence of the duty, as for example the defendant's knowledge of the fact, the other's ignorance of it or his opportunity to ascertain it, the customs of the particular trade, or the defendant's knowledge that the plaintiff reasonably expects him to make the disclosure, they are to be determined by the jury under appropriate instructions as to the existence of the duty.").

[83] *See* Compl. ¶ 515 ("Defendants knew or should have known that their UPF were engineered to be addictive, were engineered to promote overconsumption, contained dangerous and unnatural combinations of nutrients, contained dangerous chemical additives and contaminants, caused unique health hazards independent of nutrient content, that ultra-processing causes human health risks, and that UPF significantly increases the risk of metabolic diseases such as Type 2 Diabetes, Fatty Liver Disease, and other life changing chronic diseases."); *see also id*. ¶¶ 294, 296, 323.

[84] *See* Compl. ¶ 356 ("Defendants' internal testing has revealed safety concerns that they have concealed from consumers, regulators, and the public, and Defendants had actual knowledge that their UPF would cause incurable and life-changing illnesses."), *id*. ¶ 401 ("Defendants have known for decades that targeting children with unhealthy UPF was fundamentally unfair, "a direct threat to the health" of children, and would lead to disastrous health outcomes. Nevertheless, they … inundate American children with unfair and deceptive marketing."), *id*. ¶ 605 ("Defendants fraudulently and deceptively concealed that their UPF were engineered to be addictive, engineered to be over-consumed, and cause increased risks of severe physical injuries in children, such as Type 2 Diabetes and fatty liver disease ... .").

prior section, Pennsylvania recognizes a duty to disclose risks to consumers. Moreover, a duty to disclose is unnecessary for fraudulent concealment, which is governed by RESTATEMENT (SECOND) OF TORTS § 550. *Gnagey*, 82 A.3d at 500-03.[85] Section 550 imposes liability "regardless of a duty to disclose." *M.H. Eby v. Timpte Indus.*, 2019 WL 6910153, at *5 (E.D. Pa. Dec. 19, 2019); *Gnagey*, 82 A.3d at 502 (citing *U.S. v. Colton*, 231 F.3d 890, 898-99 (4th Cir.2000) (fiduciary relationship, statute, or other special circumstance is unnecessary for actionable concealment)).[86]

To craft a frivolous diligence argument, Defendants conflate the equitable doctrine where fraudulent concealment can toll the statute of limitations with the *cause of action*. *See In re Niaspan*, 42 F. Supp. 3d 735, 748 (E.D. Pa. 2014). However, diligence is not an element of the *cause of action* for fraudulent concealment. In any event, Plaintiff has alleged that he could not discover the risks of UPF because Defendants concealed this information. Compl. ¶ 609.[87]

### 4.  Plaintiff has sufficiently pled his Pennsylvania Unfair Trade Practices & Consumer Protection Law ("CPL") claim (Count VIII).

Courts "liberally construe" the CPL. *Weinberg*, 683 F. Supp. 3d at 449. The CPL provides strict liability for "deceptive conduct", which is any conduct with "the capacity or tendency to deceive." *Gregg v. Ameriprise Fin.*, 664 Pa. 567, 580, 584 (Pa. 2021). Because this is "a lesser, more relaxed standard for than that for fraudulent or negligent misrepresentation," *id.* at 587, Rule

---

[85] *See also Mancini v. Morrow*, 458 A.2d 580, 585 (Pa. Super. 1983); *Nat'l Bldg. Leasing, Inc. v. Byler*, 381 A.2d 963, 966 (Pa. Super. 1977); *Lindquist v. Dilkes*, 127 F.2d 21, 24, n. 16 (3d Cir. 1942); *Duquesne Light v. Westinghouse,* 66 F.3d 604, 612 (3d Cir. 1995).

[86] Defendants cite cases that erroneously hold that Section 551 applies to fraudulent concealment. *Marcum v. Columbia Gas*, 423 F. Supp. 3d 115, 121 (E.D. Pa. 2019); *N. Penn Towns v. Concert Golf Partners*, 554 F. Supp. 3d 665, 701 (E.D. Pa. 2021) (citing *Marcum*). But these cases are contrary to Pennsylvania law. *See Gnagey*, 82 A.3d at 500-03. *N. Penn Towns* is also distinguishable as the plaintiff was a sophisticated business. 554 F.Supp.3d at 706.

[87] *See N. Am. Commc'ns v. InfoPrint Sols.*, 817 F. Supp. 2d 642, 650 (W.D. Pa. 2011); *Precision Assocs. v. Panalpina World Transp.*, 2011 WL 7053807, at *54 (E.D.N.Y. Jan. 4, 2011); *Chems. Antitrust Litig.*, 504 F. Supp. 2d 777, 787–88 (N.D. Cal. 2007).

9(b) does not apply. *Slemmer,* 955 F. Supp. 2d at 463; *Landau,* 223 F. Supp. 3d at 417. Here, Defendants withheld information about the risks of their UPF. Further, Defendants a) "represent[ed] that goods have characteristics, ingredients, uses or benefits that they do not have"; b) "advertis[ed] goods with the intent not to sell them as advertised"; c) "represent[ed] that goods are of a particular standard, quality or grade if they are of another"; and d) "engag[ed] in fraudulent or deceptive conduct that creates a likelihood of confusion." Compl. ¶ 619; *see also id.* ¶¶ 20-28. These allegations more than suffice. *Dukich,* 2021 WL 1534520, at *7 (adequate to plead IKEA did not tell plaintiffs about risk); *Weinberg,* 683 F. Supp. 3d at 449-51 ("general averments of prohibited conduct, together with justifiable reliance and resultant harm, will suffice."; adequate to allege that defendant marketed dangerous product as safe).

### E.  Plaintiff has sufficiently pled his unjust enrichment claim (Count IX).

Plaintiff does not bring a standalone claim, but rather a derivative tort claim, for unjust enrichment based upon the principle that "if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched… ." *Steamfitters Loc. Union No. 420 Welfare Fund v. Philip Morris*, 171 F.3d 912, 936 (3d Cir. 1999).[88] Plaintiff has adequately pled several underlying claims to support this claim. Plaintiff alleges that he conferred a benefit on Defendants by buying the UPF, Defendants retained a benefit, and it would be unjust to allow the Defendants to keep those payments. Compl. ¶¶ 633-39. Further, contrary to Defendants' argument, courts have permitted these claims in product cases. *See Lisowski v. Henry Thayer,* 501 F. Supp. 3d 316, 339

---

[88] *See also* RESTATEMENT (FIRST) OF RESTITUTION § 3 (1937) ("A person is not permitted to profit by his own wrong at the expense of another."); RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 3 (2011); *Weinberg,* 683 F. Supp. 3d at 452 (permitting unjust enrichment as companion to tort claim).

(W.D. Pa. 2020) (permitting unjust enrichment claim as companion to CPL claims).[89]

### F. Plaintiff has sufficiently pled his conspiracy and concerted action claims (Counts X-XI).

Even under the heightened standard that Conspiracy Defendants[90] suggest is required, Plaintiff sufficiently alleges "the period of the conspiracy, the object of the conspiracy, and the certain actions taken of the [Conspiracy Defendants] taken to achieve that purpose." *In re Orthopedic Bone Screw,* 1996 WL 482977, at *7 (E.D. Pa. Aug. 22, 1996).[91]

#### 1. Plaintiff has pled underlying torts.

Contrary to the Conspiracy Defendants' argument, Plaintiff has plausibly alleged several underlying torts.

#### 2. Plaintiff has sufficiently pled malice.

Plaintiff need not allege malice for concerted action under RESTATEMENT (SECOND) OF TORTS § 876. *Marion v. Bryn Mawr Tr*., 288 A.3d 76, 84-93 (Pa. 2023). As to conspiracy, Pennsylvania courts have found malice where businesses sought to profit *and* injure the plaintiff. *See Reading Radio v. Fink*, 833 A.2d 199, 213 (Pa. Super. 2003) (conspiracy to hire plaintiff's

---

[89] *See also Aetna v. Insys Therapeutics,* 324 F. Supp. 3d 541, 559 (E.D. Pa. 2018); *Cesare v. Champion Petfoods*, 429 F. Supp. 3d 55, 65 (W.D. Pa. 2019); *Slemmer*, 955 F. Supp. 2d at 460; *see also Merino v. Ethicon*, 536 F. Supp. 3d 1271, 1290 (S.D. Fla. 2021); *Volin v. Gen. Elec.*, 189 F. Supp. 3d 411, 422 (D.N.J. 2016); *Wells v. Johnson & Johnson*, 554 F. Supp. 3d 1207, 1216 (W.D. Okla. 2021); *Johnson v. Blendtec*, 500 F. Supp. 3d 1271, 1293 (D. Utah 2020); *Zeigler v. Sony*, 849 A.2d 19, 25 (Conn. Super. 2004).

[90] Kraft Heinz, Mondelēz, Post Holdings, Coca-Cola Company, General Mills, and Mars

[91] *Bone Screw* applied an improper, heightened pleading standard, which even the *Bone Screw* court acknowledged is absent from Rule 8. 1996 WL 482977, at *7. *See W. Penn Allegheny Health Sys. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (rejecting idea "that *Twombly* 's plausibility standard functions more like a probability requirement in complex cases"); *SD3 v. Black & Decker*, 801 F.3d 412, 427 (4th Cir. 2015) ("a heightened pleading requirement … does not apply  … even in an antitrust case."). In any event, Plaintiffs have met the *Bone Screw* pleading standard. Compl. ¶¶ 446-502, 641-656 (alleging continuing conspiracy, beginning in April 1999, to continue to engineer UPF to be over-consumed and addictive and profit from the sale of UPF by concealing the dangers of UPF from the public and regulatory authorities).

employees).[92] The Conspiracy Defendants' "interest in economic gain" does not, "in itself, justify or negate specific intent to cause injury, particularly if the intended means for achieving such a gain were unlawful and illegitimate." *Aetna*, 324 F. Supp. 3d at 558. Although federal courts are divided, the more persuasive authority concludes that "unadulterated malice is admittedly not required." *Burris v. Main Line Health*, 2017 WL 2506446, at *14 (E.D. Pa. June 9, 2017).[93] Plaintiff has sufficiently alleged the Conspiracy Defendants' intent to injure Plaintiff through unlawful actions,[94] that his "ingestion of UPF was a primary objective of the conspiracy," and that any benefit the Conspiracy Defendants accrued was solely the result of their efforts to "lure children to consume increasing amounts of UPF as a wrongful, unlawful, and tortious means to make a profit." *Id*. ¶¶ 644-45. These allegations are more than sufficient. FED. R. CIV. P. 9(b) ("Malice … may be alleged generally."); *WSFS Fin. v. Cobb (WSFS I)*, 2022 WL 4004782, at *5 (E.D. Pa. Aug. 10, 2022) (sufficient to allege "defendants agreed on a 'plan designed to damage

---

[92] *See also Com. v. TAP Pharm. Prods*., 885 A.2d 1127, 1141 (Pa. Commw. Ct. 2005) (*en banc*) (pharmaceutical price-fixing scheme); *Shared Commc'ns Servs. v. Bell Atl. Props*., 692 A.2d 570, 575 (Pa. Super. 1997) (conspiracy to switch service providers in violation of plaintiff's service contract, noting that jury can reject defense that intent was "to service potential … customers").

[93] *See also Houser v. Feldman*, 600 F. Supp. 3d 550, 571 (E.D. Pa. 2022) (adequate to allege that defendant made false statements "to avoid sharing 'credit (or potential financial gains)'"); *PDC Mach. v. Nel Hydrogen*, 2018 WL 3008531, at *5 (E.D. Pa. June 15, 2018) ("that a defendant may benefit economically from improper actions … does not necessarily preclude … malice"); *RDK Truck v. Mack Trucks*, 2009 WL 1441578, at *32 (E.D. Pa. May 19, 2009) ("fact that an action advances one's business interest is not sufficient to warrant summary dismissal"); *Glob. Maint. v. Boeing*, 2023 WL 3851977, at *6 (E.D. Pa. June 6, 2023); *Wurth Baer Supply v. Strouse*, 627 F. Supp. 3d 422, 439 (M.D. Pa. 2022); *Power Restoration v. PepsiCo*, 2014 WL 1725041, at *6 (E.D. Pa. Apr. 30, 2014).

[94] *See* Compl. ¶ 642 ("All Conspiracy Defendants entered into an agreement to advance their financial interests by injuring Plaintiff"), *id*. ¶ 644 ("Conspiracy Defendants orchestrated efforts … to drive UPF into children by way of unlawful conduct …"), *id*. ¶ 645 ("Conspiracy Defendants … set[] out to entice and lure children to consume increasing amounts of UPF as a wrongful, unlawful and tortious way of making profit."), *id*. ¶ 655 ("Defendants conduct was unlawful …"), *id*. ¶ 658 ("Conspiracy Defendants had actual and constructive knowledge that … [their] action were unlawful, and violated the rights of children"), *id*. ¶ 664 ("Defendants' concerted conduct was unlawful"); *see generally id*. ¶¶ 446-502.

BMT/WSFS and enrich themselves.'").[95]

### 3. Plaintiff has sufficiently pled an agreement.

Plaintiff alleges that Conspiracy Defendants "worked in concert to maintain and expand the UPF market" by engineering UPF to be addictive, deceptive marketing, and downplaying scientific literature that threatened to expose the actual risk of the products. Compl. ¶¶ 642-46. This conspiracy could only survive if Conspiracy Defendants collectively conspired to "withh[o]ld the truth about the consequences of their and their co-conspirators' actions, and conceal[] the harms caused by their and their co-conspirators' UPF." *Id*. ¶¶ 647-49. The Conspiracy Defendants understood the risks of UPF, yet continued to withhold vital health risks from UPF consumers while continuing to benefit from their agreement. *Id*. ¶ 446, 466-68. To this end, Conspiracy Defendants' representatives met in Minneapolis in April 1999, where executives from Kraft and the predecessor to General Mills plainly disclosed an awareness of an emerging public health consensus around "devastating health consequences" of childhood obesity and growing awareness that the increase in childhood obesity was driven by the "ubiquity of inexpensive, good-tasting, super-sized, energy dense foods" that they manufactured and advertised to children, and urged the group to reform their practices "before the problem becomes a crisis for us." *Id*. ¶¶ 446-63. Conspiracy Defendants agreed to do the opposite: "we're not going to screw around with the company jewels here and change the formulations because a bunch of guys in white coats are worried." *Id*. ¶ 466. After the meeting, Conspiracy Defendants acted in furtherance of their conspiracy. As the Complaint says, "CEOs from the largest UPF companies met secretly, sat

---

[95] Defendants erroneously cite *WSFS II*, the summary judgment decision based upon lack of "any evidence." *WSFS Fin. v. Cobb* (*WSFS II*), 2023 WL 4552110, at *13 (E.D. Pa. July 14, 2023). Defendants cite other distinguishable cases with no allegation that defendants' aim was to injure the plaintiffs. *Corrigan v. Methodist Hosp.*, 853 F. Supp. 832, 837 (E.D. Pa. 1994); *Swartzbauer v. Lead Indus.*, 794 F. Supp. 142, 144-45 (E.D. Pa. 1992).

together in the same room,[] looked squarely at the consequences of their actions…[,] understood that their actions were unconscionable[, and] turned their back on America's children and spent the next 25 years callously grasping at profits, despite having actual knowledge of the public health crises they were causing." *Id*. ¶¶ 497-501. They continued producing and marketing their products to children as before, collectively refusing to respond to pressure to change. *Id*. ¶¶ 466-69. Instead, they mounted a joint campaign against reforms, collectively spending hundreds of millions of dollars on lobbying efforts and junk science research to maintain their joint effort to mislead the public and maintain a political environment in which their plan would succeed. *Id*. ¶¶ 469-496.

These allegations state a claim. *Bors*, 208 F. Supp. 3d at 657-58 (declining to dismiss conspiracy and concerted action claims based on allegations of agreement and efforts to conceal risks). Contrary to Conspiracy Defendants' argument, the court can infer an agreement from "a common motive to conspire, evidence that shows that the parallel acts were against the apparent individual economic self-interest of the alleged conspirators, and evidence of a high level of interfirm communications." *B & R Supermarket v. Visa*, 2024 WL 4334075, at *11 (E.D.N.Y. Sept. 27, 2024). Courts recognize that "[b]ecause direct evidence of a conspiracy is rarely available, the existence of a conspiracy may be inferred from the circumstances." *Grenfell v. Lackawanna*, 2019 WL 4054024, at *9 (M.D. Pa. Mar. 6, 2019), *R&R adopted*, 2019 WL 4040570 (M.D. Pa. Aug. 27, 2019).[96] This Court can also infer an agreement from a "motivat[ion] to conspire out of a fear of product-liability exposure," and "allegations of communications and meetings among conspirators [that provided] the means and opportunity to conspire." *SD3 v. Black & Decker*, 801 F.3d 412, 432

---

[96] *See also RDK Truck*, 2009 WL 1441578, at *30; *W. Penn Allegheny Health Sys.*, 627 F.3d at 100 (in Sherman Act case, adequate to allege "in the summer of 2002, UPMC and Highmark formed an agreement to protect one another from competition," "UPMC agreed to use its power … to exclude Highmark's rivals from the Allegheny County health insurance market, and that in exchange Highmark agreed to take steps to strengthen UPMC and to weaken its primary rival").

(4th Cir. 2015). Here, Plaintiff alleges a common motive, Compl. ¶¶ 466, 642, 645, 653, and subsequent concerted action in pursuit of their common goals. *id*. ¶¶ 468-502, 641-56. In any event, no inference is unnecessary as Plaintiff has alleged an agreement.

Conspiracy Defendants' cases are distinguishable as in those cases plaintiffs merely alleged parallel conduct. *Petula v. Mellody*, 588 A.2d 103, 107 (Pa. Commw. 1991) (plaintiff "fails to set forth any supporting facts such as meetings, conferences, telephone calls or joint signatures");[97] *Burnside v. Abbott Labs*, 505 A.2d 973, 982 (Pa. Super. 1985) ("no averments of meetings, conferences, telephone calls, joint filings, cooperation, consolidation, or joint licensing."); *Bone Screw*, 1996 WL 482977, at *8 ("Alleging that Defendants 'acted in agreement' is a near miss if the Plaintiffs are intending to allege a conspiracy. Did Defendants agree or not?").[98]

Conspiracy Defendants argue that they did not change their behavior after 1999, but they conspired to *not* change course. *See SD3*, 801 F.3d at 412 (manufacturers agreed not to adopt safety features because "non-adopters might be sued for producing an inherently unsafe product"); *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 487 (W.D. Pa. 2019) (conspiracy not to compete for employees). Taking Plaintiff's allegations as true, dismissal is not warranted.

## VI.    The individual Defendant's recycled arguments lack merit.

In section V of their Memorandum, individual Defendants largely reiterate the arguments made elsewhere in their Motion, such as whether Plaintiff adequately alleged causation; identified specific products, ingredients or processes; alleged reliance; or alleged the elements of conspiracy

---

[97] State cases are also unpersuasive on the pleading standard: *Seamans v. Tramontana*, 2013 WL 5728670, at *2 (M.D. Pa. Oct. 22, 2013) ("Pennsylvania is a fact pleading … jurisdiction.").

[98] *In re Asbestos School Litig.,* 46 F.3d 1284, 1292 (3d Cir. 1994), a summary judgment decision, is less helpful as the plaintiffs did not come forth after discovery with evidence of a conspiracy. *Id.* (noting it would "highly significant" "if there were evidence that" defendants "tacitly or overtly agreed … to continue selling … without warnings or … written agreements, meetings, and other communications … to conceal their knowledge of the dangers of asbestos from the public").

and concerted action. These arguments lack merit, as Plaintiff has explained in the appropriate sections on specificity of Plaintiff's allegations, or the adequacy of the allegations as to causation, reliance and various causes of action.

Defendants' unique arguments raised in section V likewise fail. For example, Kraft Heinz, Kellanova, and Kellogg assert that Plaintiff misnames or misstates their corporate structures while Defendants PepsiCo,[99] General Mills, WK Kellogg, and Kellanova allege that Plaintiff misattributes some UPF they do not manufacture. However, courts do not require perfection in the pleadings. *Midnight Madness*, 2024 WL 3517620, at *9 ("[T]he test is not perfect pleading, but rather whether the complaint provides adequate notice…."); *Garret*, 938 F.3d at 96 (vacating dismissal even though "complaint [was] far from perfect."). Accordingly, mislabeling a defendant is not fatal, where the pleadings identify the proper defendant.[100]

Kraft Heinz, Mondelēz, Post Holdings, PepsiCo, Nestlé, Mars, General Mills, and Conagra argue that Plaintiff did not plead that he viewed their advertisements. These contentions overlook Plaintiff's allegations as to ads featuring these Defendants' brands' advertising characters, their

---

[99] PepsiCo also alleges that Plaintiff mentions ads for Doritos and Cheetos but never alleges he consumed these products. However, the Complaint clearly states that Plaintiff "regularly ingested …UPF…" that "include[ed] but [was] not limited to" the products listed. Compl. ¶ 508(e).

[100] *See Padilla v. Black and Decker*, 2005 WL 697479 at *3 (E.D. Pa. Mar. 24, 2005) (discussing *Datskow v. Teledyne,* 899 F.2d 1298, 1301 (2d Cir. 1990) (noting that plaintiffs "committed the lesser sin of mislabeling the right defendant ...")); *Ceara v. Deacon*, 916 F.3d 208, 213-14 (2d Cir. 2019) (misspelling defendant's name along with identifying information would not prevent defendant from realizing who plaintiff meant); *Roberts v. Michaels*, 219 F.3d 775, 777-78 (8th Cir. 2000) (noting "well-recognized distinction between a complaint that sues the wrong party, and a complaint that sues the right party by the wrong name."); *Valencia v. Allstate Texas Lloyd's*, 976 F.3d 593, 597 (5th Cir. 2020) ("[A] misidentification may be overlooked e.g., when there are two separate but related entities that use a similar trade name and the correct entity had notice of the suit and was not misled or disadvantaged by the mistake.").

use of media characters to market their products, or advertisements.[101] Plaintiff further alleges that "Defendants' marketing targeted children, including plaintiff, with unfair and deceptive messages regarding their UPF",[102] and that Plaintiff was injured as a result.[103]

General Mills argues that Plaintiff does not identify who purchased the UPF, but Plaintiff alleges that "Plaintiff purchased and ingested Defendants' UPF."[104] General Mills also argues that Plaintiff does not specify *when* he did so. Such specificity, however, is not necessary when "the transactions are numerous and take place over an extended period of time." *In re Catanella & E.F. Hutton,* 583 F. Supp. 1388, 1398 (E.D. Pa. 1984). Plaintiff has sufficiently pled that he "regularly ingested" Defendants' UPF, indicating numerous transactions spanning a lengthy period of time.[105]

<u>CONCLUSION</u>

For these reasons, this Court should deny Defendants' motion to dismiss. In the alternative, Plaintiff requests leave to amend. *See Burlington Coat Factory,* 114 F.3d at 1434-35.

---

[101] Compl. ¶ 262 (Kraft Heinz ad); *id.* ¶ 263 (Mondelēz ad); *id.* ¶ 264 (Post Holdings ad); *id.* ¶ 277 (PepsiCo ad); *id.* ¶ 282 n.334 (General Mills ad); *id.* ¶ 280 n.330 (Nestlé USA ad); *id.* ¶ 284 n.336 (Mars, ad); *id.* ¶¶ 281-82 (Conagra ad).
[102] Compl. ¶ 505.
[103] Compl ¶¶ 507, 509-11.
[104] Compl. ¶ 624; *see also id.* ¶¶ 546, 554, 555, 557, 567, 570, 584, 598 ("Had Plaintiff known the true facts, they would not have purchased … Defendants' UPF"); *id.* ¶ 625 ("Plaintiff would not have purchased … Defendants' UPF…."); *id.* ¶¶ 654, 663.
[105] Compl. ¶¶ 30, 508(h), 511.

Dated:  May 30, 2025                          Respectfully submitted,

                                             **MORGAN & MORGAN**

                          By:    _/s/ Rene F. Rocha, Esq._
                                 RENE F. ROCHA, ESQ.*
                                 LA Bar No. 34411
                                 **MORGAN & MORGAN, COMPLEX**
                                 **LITIGATION GROUP**
                                 400 Poydras Street, Suite 1515
                                 New Orleans, LA 70130
                                 rrocha@ForThePeople.com
                                 T: (954) 318-0268
                                 F: (954) 327-3018

                                 _/s/ Josh Autry, Esq._
                                 JOSH AUTRY, ESQ.
                                 PA Bar No. 208459
                                 KY Bar No. 98419
                                 TN Bar No. 41623
                                 NY Bar No. 6161962
                                 **MORGAN & MORGAN, P.A.**
                                 199 Water Street, Suite 1500
                                 New York, NY 10005
                                 jautry@ForThePeople.com
                                 T: (859) 899-8785

                                 K. CLANCY BOYLAN, ESQ.
                                 PA Bar No. 314117
                                 **MORGAN & MORGAN, P.A.**
                                 2005 Market Street, Suite 350
                                 Philadelphia, PA 19103
                                 cboylan@ForThePeople.com
                                 T: (215) 446-9795
                                 F: (215) 446-9799

                                 T. MICHAEL MORGAN, ESQ.*
                                 FL Bar No. 62229
                                 **MORGAN & MORGAN, P.A.**
                                 20 N. Orange Ave., Suite 1600
                                 Orlando, FL 32801
                                 mmorgan@ForThePeople.com
                                 T: (407) 418-2031
                                 F: (407) 245-2284

51

CHRISTOPHER A. SEEGER, ESQ.**
NJ Bar No. 042631990
PARVIN K. AMINOLROAYA, ESQ.**
NJ Bar No. 028492008
**SEEGER WEISS LLP**
55 Challenger Road
Ridgefield Park, NJ 07660
cseeger@seegerweiss.com
paminolroaya@seegerweiss.com
T: (212) 584-0700
F: (212) 584-0799

FRAZAR THOMAS, ESQ.
PA Bar No. 325478
DAVE BUCHANAN, ESQ.
PA Bar No. 320392
**SEEGER WEISS LLP**
325 Chestnut Street
Suite 917
Philadelphia, PA 19106
fthomas@seegerweiss.com
dbuchanan@seegerweiss.com
T: (973) 639-9100
F: (973) 679-8656

FRANK PETOSA, ESQ.*
FL Bar No. 972754
**MORGAN & MORGAN COMPLEX
LITIGATION GROUP**
8151 Peters Road
Suite 4000
Plantation, FL 33324
fpetosa@ForThePeople.com
T: (954) 318-0268
F: (954) 327-3018

*Attorneys for Plaintiff*

*Admitted Pro Hac Vice*
**Pending Admission Pro Hac Vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 30, 2025, the foregoing was served via the Court's ECF system on all counsel of record.

<u>*/s/ Rene F. Rocha, Esq.*</u>
RENE F. ROCHA, ESQ.