# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

BRYCE MARTINEZ
               Plaintiff,

v.

KRAFT HEINZ COMPANY, INC.,
MONDELEZ INTERNATIONAL, INC.,
POST HOLDINGS, INC., THE COCA-
COLA COMPANY, PEPSICO, INC.,
GENERAL MILLS, INC., NESTLE USA,
INC., KELLANOVA, WK KELLOGG CO
MARS INCORPORATED, INC.,
CONAGRA BRANDS, INC.
               Defendants.

Case No. 2:25-cv-00377

Hon. Mia Roberts Perez

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF OMNIBUS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## TABLE OF CONTENTS

Introduction ................................................................................................................. 1

Argument ..................................................................................................................... 3

I.    The Complaint Exemplifies Improper Group Pleading. ..................................... 3

II.    Plaintiff Has Not Come Close To Pleading Causation. ...................................... 5

    A.    Plaintiff Does Not Identify Specific Products That Allegedly Caused His Injuries. ................................................................................................. 5

    B.    Plaintiff Does Not Plausibly Plead Either General or Specific Causation. ............. 8

III.    Preemption Bars Plaintiff's Claims. ............................................................... 13

    A.    Plaintiff's Claims Regarding Meat and Poultry Products Are Preempted. ........... 13

    B.    Plaintiff's Vague Pleading as to All Products Attempts to Skirt FDA Preemption. ................................................................................................... 15

IV.    Plaintiff's Claims Are Barred by the First Amendment. ................................. 15

V.    Each Individual Claim Fails for Additional Reasons. ..................................... 16

    A.    Plaintiff's Negligence Claims Fail Under Any Theory (Count I) ........................ 16

    B.    Plaintiff's Failure-to-Warn Claims Are Deficiently Pled (Count II). ................... 18

    C.    Plaintiff Fails to State a Claim for Breach of Implied Warranty (Count III). ........ 19

    D.    Plaintiff's Fraud-Based Claims Fail (Counts V–VIII). ....................................... 20

    E.    Plaintiff Does Not Allege That Any Defendant Was Unjustly Enriched (Count IX). .................................................................................................... 22

    F.    Plaintiff's Conspiracy and Concerted Action Claims Fail (Counts X–XI). .......... 23

        1.    Both claims fail for lack of malice. ........................................................... 23

        2.    Plaintiff does not plausibly allege an agreement. ..................................... 24

Conclusion ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acetaminophen*,
2023 WL 3126589 (S.D.N.Y. Apr. 27, 2023).........................................................................10

*Advance Cap. Partners, LLC v. Rossmann*,
495 F. App'x 235 (3d Cir. 2012) ........................................................................................21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................12, 19

*B & R Supermarket, Inc. v. Visa, Inc.*,
2024 WL 4334075 (E.D.N.Y. Sept. 27, 2024) ..................................................................25

*Barton v. Lowe's Home Ctrs., Inc.*,
124 A.3d 349 (Pa. Super. Ct. 2015).................................................................................20

*Becerra v. Coca-Cola Co.*,
2018 WL 1070823 (N.D. Cal. Feb. 27, 2018) .................................................................8, 9

*Becerra v. Dr Pepper/Seven Up, Inc.*,
2018 WL 1569697 (N.D. Cal. Mar. 30, 2018)............................................................8, 9, 10

*Becerra v. Dr Pepper/Seven Up, Inc.*,
2018 WL 3995832 (N.D. Cal. Aug. 21, 2018) ...................................................................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................... *passim*

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*,
2009 WL 3762965 (W.D. Mo. Nov. 9, 2009) ...................................................................15

*Blumas v. Costco Wholesale Corp.*,
1999 WL 35809869 (D.N.M. Feb. 18, 1999) ....................................................................14

*Brower v. Campbell Soup Co.*,
243 F. Supp. 3d 1124 (S.D. Cal. 2017).............................................................................13

*Burnside v. Abbott Lab'ys*,
505 A.2d 973 (Pa. Super. Ct. 1985).............................................................................7, 24

*Burris v. Main Line Health Sys.*,
2017 WL 2506446 (E.D. Pa. June 9, 2017) ......................................................................23

*In re Catanella & E.F. Hutton & Co. Sec. Litig.*,
    583 F. Supp. 1388 (E.D. Pa. 1984) ........................................................18

*Cohen v. ConAgra Brands, Inc.*,
    16 F.4th 1283 (9th Cir. 2021) ..............................................................13

*Comer v. Am. Transmission Sys., Inc.*,
    2025 WL 1530750 (W.D. Pa. May 29, 2025)....................................4, 20

*Corbin v. Bucks Cnty.*,
    703 F. Supp. 3d 527 (E.D. Pa. 2023) ......................................................4

*Cummins v. Firestone Tire & Rubber Co.*,
    495 A.2d 963 (Pa. Super. Ct. 1985)........................................................8

*Davis v. Volkswagen Grp. of Am.*,
    2019 WL 3252054 (Pa. Super. Ct. July 19, 2019) ................................12

*DePuy Synthes Sales, Inc. v. Globus Med., Inc.*,
    259 F. Supp. 3d 225 (E.D. Pa. 2017) ....................................................24

*Dolby v. Ziegler Tire & Supply Co.*,
    2017 WL 781650 (Pa. Super. Ct. Feb. 28, 2017)..................................19

*Douglas v. Atrium Med. Corp.*,
    2023 WL 8643638 (M.D. Pa. Dec. 11, 2023), *report and recommendation*
    *adopted*, 2024 WL 4364950 (M.D. Pa. Sept. 30, 2024) ......................17

*Drayton v. Pilgrim's Pride Corp.*,
    2004 WL 765123 (E.D. Pa. Mar. 31, 2004) ........................................15

*Drumheller v. Johnson & Johnson*,
    2021 WL 1853407 (E.D. Pa. May 10, 2021) ........................................18

*Edwards v. Johnsonville LLC*,
    2024 WL 686925 (N.D. Ill. Feb. 1, 2024) ............................................13

*Excevarria v. Dr Pepper Snapple Grp., Inc.*,
    764 F. App'x 108 (2d Cir. 2019) ............................................................9

*Geffner v. Coca-Cola Co.*,
    343 F. Supp. 3d 246 (S.D.N.Y. 2018)......................................................9

*Glanski v. Ervine*,
    409 A.2d 425 (Pa. Super. Ct. 1979)......................................................22

*Gorran v. Atkins Nutritionals Inc.*,
    464 F. Supp. 2d 315 (S.D.N.Y. 2006)..............................................18, 19

*Gregg v. Ameriprise Fin., Inc.*,
    245 A.3d 637 (Pa. 2021) ....................................................21

*Hahn v. Richter*,
    673 A.2d 888 (Pa. 1996) ....................................................19

*Hedrick v. BSH Home Appliances Corp.*,
    2025 WL 1238363 (C.D. Cal. Apr. 28, 2025) .........................16

*Interdigital Tech. Corp. v. OKI Am., Inc.*,
    845 F. Supp. 276 (E.D. Pa. 1994) .......................................5

*Jeter v. Brown & Williamson Tobacco Corp.*,
    113 F. App'x 465 (3d Cir. 2004) ........................................22

*Kardovich v. Pfizer, Inc.*,
    97 F. Supp. 3d 131 (E.D.N.Y. 2015) ...............................9, 10

*Kester v. Zimmer Holdings, Inc.*,
    2010 WL 2696467 (W.D. Pa. Jun. 16, 2010) ..........................3

*Kester v. Zimmer Holdings, Inc.*,
    2010 WL 4103553 (W.D. Pa. Oct. 18, 2010) .........................21

*Klein v. Council of Chem. Ass'ns*,
    587 F. Supp. 213 (E.D. Pa. 1984) .....................................7, 8

*Kovalev v. Lidl US, LLC*,
    647 F. Supp. 3d 319 (E.D. Pa. 2022) ..................................22

*Kretulskie v. Madison Nat'l Life Ins. Co.*,
    2019 WL 5866694 (M.D. Pa. Oct. 9, 2019) ..........................24

*Krommenhock v. Post Foods, LLC*,
    255 F. Supp. 3d 938 (N.D. Cal. 2017) .................................10

*Kyle K. v. Chapman*,
    208 F.3d 940 (11th Cir. 2000) ...........................................4

*Lisowski v. Henry Thayer Co.*,
    501 F. Supp. 3d 316 (W.D. Pa. 2020)........................20, 22, 23

*M.B. v. Schuylkill Cnty.*,
    375 F. Supp. 3d 574 (E.D. Pa. 2019) ...................................4

*Manuel v. Pepsi-Cola Co.*,
    2018 WL 2269247 (S.D.N.Y. May 17, 2018) ........................8, 9

*Marion v. Bryn Mawr Tr. Co.*,
  288 A.3d 76 (Pa. 2023) ........................................................................................................24

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011) ...............................................................................................................10

*McDonough v. State Farm Fire & Cas. Co.*,
  365 F. Supp. 3d 552 (E.D. Pa. 2019) ..................................................................................22

*McGrain v. C.R. Bard, Inc.*,
  551 F. Supp. 3d 529 (E.D. Pa. 2021) .............................................................................17, 18

*In re Midnight Madness Distilling, LLC*,
  2024 WL 3517620 (E.D. Pa. July 23, 2024) .........................................................................5

*Mills v. Giant of Md., LLC*,
  441 F. Supp. 2d 104 (D.D.C. 2006) ....................................................................................15

*Milo v. Procaccino*,
  2020 WL 1853499 (E.D. Pa. Apr. 13, 2020) .........................................................................4

*N.Y. Times Co. v. Sullivan*,
  376 U.S. 254 (1964) .............................................................................................................16

*Nat'l Ass'n of Wheat Growers v. Bonta*,
  85 F.4th 1263 (9th Cir. 2023) ..............................................................................................16

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
  585 U.S. 755 (2018) .............................................................................................................16

*Nat'l Meat Ass'n v. Harris*,
  565 U.S. 452 (2012) .......................................................................................................13, 14

*Nemphos v. Nestle Waters N. Am., Inc.*,
  775 F.3d 616 (4th Cir. 2015) ...............................................................................................15

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
  1996 WL 482977 (E.D. Pa. Aug. 22, 1996) ........................................................................24

*Patel v. Patel*,
  2016 WL 3000821 (E.D. Pa. May 25, 2016) .......................................................................21

*Pelman v. McDonald's Corp.*,
  237 F. Supp. 2d 512 (S.D.N.Y. 2003) ............................................................................11, 12

*In re Philips Recalled CPAP, Bi-Level PAP, & Ventilator Prods. Litig.*,
  2023 WL 7019287 (W.D. Pa. Sep. 28, 2023) ......................................................................11

*Prater v. Am. Heritage Fed. Credit Union*,
  351 F. Supp. 3d 912 (E.D. Pa. 2019) ............................................................3

*Precision Imaging of N.Y., P.C. v. Allstate Ins. Co.*,
  263 F. Supp. 3d 471 (S.D.N.Y. 2017)........................................................12

*Richardson v. EzriCare, LLC*,
  2024 WL 4349687 (D.N.J. Sept. 30, 2024) .................................................4

*Riegel v. Medtronic, Inc.*,
  552 U.S. 312 (2008)....................................................................................13

*Runner v. C.R. Bard*,
  108 F. Supp. 3d 261 (E.D. Pa. 2015) ........................................................18

*S.F. v. Archer-Daniels-Midland Co.*,
  2014 WL 1600414 (W.D.N.Y. Apr. 21, 2014) ......................................11, 12

*Salyers v. A.J. Blosenski, Inc.*,
  731 F. Supp. 3d 670 (E.D. Pa. 2024) ..........................................................3

*Samuel-Bassett v. Kia Motors Am., Inc.*,
  34 A.3d 1 (Pa. 2011) ..................................................................................20

*Schmidt v. Ford Motor Co.*,
  972 F. Supp. 2d 712 (E.D. Pa. 2013) ........................................................23

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
  801 F.3d 412 (4th Cir. 2015) .....................................................................25

*Singleton v. Chevron USA, Inc.*,
  835 F. Supp. 2d 144 (E.D. La. 2011)...........................................................6

*Skipworth by Williams v. Lead Indus. Ass'n, Inc.*,
  690 A.2d 169 (Pa. 1997) ..............................................................................7

*Snyder v. Phelps*,
  562 U.S. 443 (2011)....................................................................................16

*Spear v. Atrium Medical Corp.*,
  621 F. Supp. 3d 553 (E.D. Pa. 2022) ........................................................17

*Steamfitters Loc. Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
  171 F.3d 912 (3d Cir. 1999)........................................................................22

*Thornton v. Tyson Foods, Inc.*,
  28 F.4th 1016 (10th Cir. 2022) ..................................................................14

*Weinberg v. Legion Athletics, Inc.*,
   683 F. Supp. 3d 438 (E.D. Pa. 2023) ...................................................................20

*WSFS Fin. Corp. v. Cobb*,
   2023 WL 4552110 (E.D. Pa. July 14, 2023)....................................................23, 24

*Yu v. Dreyer's Grand Ice Cream, Inc.*,
   592 F. Supp. 3d 146 (S.D.N.Y. 2022)...................................................................20

**Statutes**

21 U.S.C. § 467 ..................................................................................................................13

21 U.S.C. § 610 ..................................................................................................................15

21 U.S.C. § 678 ..................................................................................................................13

**Other Authorities**

Affidavit of Robert H. Lustig, *S.F. v. Archer-Daniels-Midland Co.*, 2013 WL
   9541767 (W.D.N.Y. Sep. 25, 2013) ....................................................................11

Restatement (Second) of Torts § 353............................................................................22

Restatement (Second) of Torts § 402A .........................................................................19

Restatement (Second) of Torts § 550............................................................................22

Robert H. Lustig, *Ultraprocessed Food: Addictive, Toxic, and Ready for
   Regulation*, 12 Nutrients 1 (2020) ....................................................................9, 10

Sajjad Moradi et al., *Ultra Processed Food Consumption and Adult Diabetes
   Risk: A Systematic Review and Dose Response Meta Analysis*, Nutrients Dec.
   2021..............................................................................................................................9

## INTRODUCTION

Plaintiff's Complaint offers only generalized grievances against the food-and-beverage industry, grounded in the unscientific and imprecise concept of so-called "ultra-processed foods" ("UPFs"), a term Plaintiff uses to refer to over 70% of our nation's food supply. But it comes nowhere close to satisfying the basic requirements of Rule 8. Plaintiff concedes that his claims for breach of express warranty and implied warranty of fitness for a particular purpose cannot proceed, but attempts to salvage the rest of his counts. Those efforts must fail. Based on an allegation that he "regularly" consumed thousands of unidentified products, in unidentified amounts, at unidentified times, that fall within brands manufactured by the eleven cherry-picked Defendants, he seeks to conduct a fishing expedition covering potentially every product those companies have manufactured and every advertisement they have produced. Neither federal nor Pennsylvania law tolerates this type of litigation overreach based on such sparse and unsupported allegations.

*First*, Plaintiff touts the length of his Complaint as proof that he plausibly pled each of his claims, Dkt. 126 ("Opposition" or "Opp.") 2, but his allegations attack the food-and-beverage industry writ large instead of specifying, as they must, what *each* Defendant supposedly did that injured *him*. To avoid the unnecessary burdens of "discovery abuse," courts "insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558–59 (2007).[1] Because the Complaint violates this fundamental principle, all of Plaintiff's claims should be dismissed.

*Second*, the Opposition essentially concedes that the Complaint fails to identify any Defendant's particular food or beverage that allegedly caused Plaintiff harm, relying on its reference to 110 disparate "brand names." Opp. 2. That failure is dispositive on all claims.

---

[1] Unless otherwise noted, internal quotation marks and citations are omitted from quotations.

Nonetheless, Plaintiff argues he adequately pled general causation by citing studies about so-called "UPFs" as a whole, Opp. 13, but he does not seriously dispute that the cited studies provide no scientific conclusions as to *causation*. Likewise, he claims to have pled specific causation by generally stating that he regularly consumed unidentified products within the 110 listed brands, Opp. 17, but the lack of detail means the Court can only speculate as to whether the conduct of each of these Defendants actually caused his type 2 diabetes or non-alcoholic fatty liver disease.

*Third*, Plaintiff's arguments about preemption and the First Amendment are contrary to law. Congress has expressly preempted Plaintiff's claims, giving USDA—not private plaintiffs— authority over meat and poultry labeling and production, and FDA authority over other food labeling and production. Plaintiff also attempts to dodge the clear First Amendment issues here by attacking a strawman, arguing that Defendants are proposing blanket immunity whenever a duty to warn is contested. Not so: the First Amendment precludes liability in limited situations where, as here, claims are based on alleged failures to include controversial and inaccurate warnings.

*Finally*, Plaintiff's Opposition does not salvage his individual causes of action, each of which fails to allege fundamental elements of the claim. Notably, Plaintiff concedes he does not allege that he saw or relied on any Defendant's specific marketing, foreclosing his fraud-based claims. And his Opposition confirms that his nebulous negligence claim does not specify what is supposedly defective in the design or manufacture of Defendants' products. The conspiracy claim against certain Defendants fails under this Court's prior holding that malice demands allegations of a specific and sole intent to harm. These and every other count too suffer from additional deficiencies detailed below.

Plaintiff's grievances against the food-and-beverage industry do not amount to a viable legal action against any specific Defendant. His Complaint should be dismissed with prejudice.

**ARGUMENT**

**I.    THE COMPLAINT EXEMPLIFIES IMPROPER GROUP PLEADING.**

Plaintiff improperly fails to differentiate his allegations against the eleven Defendants. Dkt. 117-1 ("Motion" or "Mot.") 8–11. He claims otherwise in the Opposition, *see* Opp. 8–10, but the examples he cites from the Complaint only underscore his failure to allege "who is responsible for what." *Salyers v. A.J. Blosenski, Inc.*, 731 F. Supp. 3d 670, 683 (E.D. Pa. 2024).[2]

For example, Plaintiff contends that he "detail[ed] UPF products manufactured by each Defendant," Opp. 8, but his Complaint (at ¶ 508) merely lists *brand* names rather than any particular food or beverage *product* allegedly consumed by Plaintiff. *See infra* Section II(A); Mot. 10–12. The Complaint also repeats the collective, undefined, and potentially boundless phrase "Defendants' UPF" no fewer than 56 times, and not *one* paragraph in Counts I through XI refers to conduct by any particular Defendant. Similarly, although Plaintiff claims that the Complaint "detail[s] … how each Defendant engineered UPF," Opp. 8, the paragraphs he cites largely refer "[c]ollectively" to the purported "Big Tobacco companies" that are not parties. *See* Compl. ¶ 102. The handful of paragraphs that mention specific Defendants do not identify any products, ingredients, or manufacturing processes at issue. Further, the allegations that supposedly detail "specific marketing strategies" by "each Defendant," Opp. 8, are entirely unconnected to Plaintiff. *See* Compl. ¶ 255 (alleging "promotion of UPF to children" generally). In short, Plaintiff's vague and "collective" allegations prevent Defendants and the Court from ascertaining the basis of the claims against each Defendant. *Kester v. Zimmer Holdings, Inc.*, 2010 WL 2696467, at *6 (W.D. Pa. Jun. 16, 2010) (complaint "fails to adequately identify which [d]efendant caused [p]laintiff's

---

[2] Plaintiff says he satisfies the standard articulated in *Prater v. American Heritage Federal Credit Union*, 351 F. Supp. 3d 912, 916–17 (E.D. Pa. 2019) (Opp. 8), but that case *dismissed* a complaint because, as here, the complaint improperly "group[ed] different incidents together." *Id.*

alleged injury and ... is insufficient and speculative").

Nevertheless, Plaintiff asks the Court to overlook his group pleading by claiming each Defendant's conduct is "similar." Opp. 9. But Plaintiff's cited authority does not support his position. In *M.B. v. Schuylkill County*, for example, the court *dismissed* claims against certain defendants because general allegations referencing "Defendants" collectively failed to state a claim against them. 375 F. Supp. 3d 574, 601 (E.D. Pa. 2019). Plaintiff's cases involving "similar" conduct among defendants are inapposite because the alleged injuries were directly traceable to an identifiable product or facility, making clear each defendant's distinct role.[3] By contrast, this Complaint implicates *thousands* of unrelated foods and beverages, ingredients, research and development, manufacturing practices, and advertisements by eleven Defendants over *decades*, with no distinctly alleged role in causing his type 2 diabetes or non-alcoholic fatty liver disease.

Plaintiff also does not meaningfully respond to the Defendant-specific deficiencies raised in the Motion. Mot. 27–32. For example, Plaintiff waves away his misnaming of certain parties, relying on inapposite cases where courts forgave spelling errors and other similar issues. Opp. 49. Those cases do not allow the Plaintiff to keep a party in a case when he has alleged no relevant facts about the party—or where actions, brands, and products are attributed to the wrong party altogether. *See*, *e.g.*, Mot. 30–31 (Plaintiff includes *no* allegations about any Kellanova ads,

---

[3] In *Corbin v. Bucks County*, 703 F. Supp. 3d 527, 533 (E.D. Pa. 2023), for example, the complaint "allege[d] four distinct failures by [correctional facility] personnel, and it ma[de] clear which of the defendants it s[ought] to hold responsible for each." *See also Richardson v. EzriCare, LLC*, 2024 WL 4349687 (D.N.J. Sept. 30, 2024) (all defendants were participants *in the same* supply chain for one product); *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000) (all defendants "were personally involved in the care of" the plaintiff *in the same* facility); *Milo v. Procaccino*, 2020 WL 1853499, at *11 (E.D. Pa. Apr. 13, 2020) (all defendants were involved with specific parts of building *the same* identified home). Notably, in dismissing a "shotgun pleading," a court recently distinguished *Milo* because the complaint, similar to here, involved "collective allegations without distinction as to the roles played by each of the" defendants. *Comer v. Am. Transmission Sys., Inc.*, 2025 WL 1530750, at *4 (W.D. Pa. May 29, 2025).

ingredients, brands, or products).

Because the Complaint comes nowhere close to "describ[ing], in significant detail, specific allegations against the respective defendants," it must be dismissed, even under Plaintiff's cited authority. *In re Midnight Madness Distilling*, *LLC*, 2024 WL 3517620, at *8 (E.D. Pa. July 23, 2024) (Opp. 9).

## II.    PLAINTIFF HAS NOT COME CLOSE TO PLEADING CAUSATION.

Plaintiff fails to plead causation because the Complaint does not: (1) identify the specific food and beverage products that allegedly caused Plaintiff's injury; or (2) plausibly allege either general or specific causation. *See* Mot. 11–21. Plaintiff's arguments to the contrary lack merit.

### A.    Plaintiff Does Not Identify Specific Products That Allegedly Caused His Injuries.

Plaintiff's Opposition confirms that his lawsuit is an attack on all so-called "UPF" products rather than an attempt to recover for injuries caused by any Defendant's particular product. Plaintiff argues he identified the products at issue, pointing to paragraphs 507 and 508 of the Complaint. Opp. 10. But paragraph 507 vaguely alleges that "Plaintiff was chronically exposed to" "Defendants' UPF," and paragraph 508 lists *110 different brands*, some of which encompass 100-plus different *products*, and some of which are not even manufactured by any Defendant, Mot. 29. A brand is not a product. *See* Mot. 14 (showing product variety within brands).

Plaintiff argues he does not have to *name* the products that he alleges caused his asserted injuries, as long as they are sufficiently identified in some other way. Opp. 10–11. But the case he relies on—*Interdigital Tech. Corp. v. OKI Am., Inc.*, 845 F. Supp. 276 (E.D. Pa. 1994)—was about federal subject matter jurisdiction, and, in any case, applied the "no set of facts" pleading standard that *Twombly* overruled. 550 U.S. at 562–63. Moreover, because the complaint in *Interdigital* described the precise product features that were problematic, the defendant never argued it was unable to determine (and indeed *did* determine) which products were at issue. 845 F. Supp. at 282–

83.[4] But here, such a determination is impossible because Plaintiff provides no details about which specific products he allegedly consumed—a fact he certainly should know.

Plaintiff's assertion that the Complaint "lists processes and ingredients unique to UPF" does not fix this problem. Opp. 11 (citing Compl. ¶¶ 57–59). None of those paragraphs (or any others) actually alleges that the identified ingredients or additives are *unique* to "UPF." More importantly, the lists are non-exhaustive and extremely vague, so it is impossible to pinpoint the products at issue. For example, the Complaint says that "UPFs" may contain "flavors," "mechanically separated meat," or "additives," but those are broad *categories* of ingredients. Compl. ¶¶ 57–58. Even where it attempts to pinpoint specific ingredients, its list includes exceedingly common *molecules* that also appear in naturally grown foods, including "lactose" and "fructose." *Id.* ¶ 57. Revealing how subjective this so-called "UPF" category is, Plaintiff alleges a "product is UPF" "if its list of ingredients contains substances that are never or rarely used in [hypothetical] kitchens," or if it uses "[s]ophisticated and attractive packaging." *Id.* ¶¶ 59–60.

Importantly, Plaintiff never even alleges which of those boundless ingredients, additives, processes, or packagings are used in any products he supposedly consumed. Rather, he uses "UPF" as if it were a fixed, unchanging product that can cause signature illnesses. But that plainly is not the case given Plaintiff's subjective and sweeping definition, as well as the fact that Plaintiff lumps together eleven Defendants (leaving out countless restaurants and manufacturers), treating their thousands of foods and beverages as fungible, and encompassing potentially decades of development and sales all based on this overbroad, imagined category of foods and beverages.

---

[4] Plaintiff's other cases—lumped together in one footnote, Opp. 10 n.16—are similarly inapposite because the plaintiffs in those cases alleged exposure to a specific chemical or provided sufficient detail such that the product(s) at issue were readily discernible. *See, e.g.*, *Singleton v. Chevron USA, Inc.*, 835 F. Supp. 2d 144, 146 (E.D. La. 2011) (identifying "benzene-containing products").

Plaintiff's repeated and inappropriate treatment of "UPF" as a monolithic, interchangeable commodity seeks to evade Pennsylvania's prohibition on market-share and enterprise liability and cannot compensate for his failure to identify specific products at issue.[5]

Plaintiff's Opposition foreshadows the severe case management problems that will follow if his ambiguous allegations are permitted to proceed. For example, the Complaint references advertisements for Doritos and Cheetos brands without naming those brands in the list of "UPFs" that Plaintiff purportedly consumed. Mot. 29. Plaintiff responds that the Complaint *does* cover those brands because it alleges that what Plaintiff consumed "included but was *not limited to*" the listed brands. Opp. 49 n.99 (cleaned up, emphasis added). In other words, Plaintiff claims his Complaint sweeps in *every* product from *every* Defendant that could possibly fall within his ambiguous description of "UPF." On top of Plaintiff's apparent (and strategic) failure to even identify the universe of *brands* at issue, Plaintiff does not seriously dispute that he failed to allege that he ever viewed any supposedly deceptive advertisements, instead relying on the vague claim that "Defendants' marketing," *collectively*, "targeted children, including plaintiff, with unfair and deceptive messages regarding their UPF." Opp. 49–50. Courts do not entertain vague complaints weaponizing this sue-first-ask-questions-later approach. *See Klein v. Council of Chem. Ass'ns*, 587 F. Supp. 213, 222 (E.D. Pa. 1984) (dismissing complaint where the "inability of plaintiffs to name specific products" was potentially due to plaintiffs' "unwillingness to be committed to allegations that may not ultimately sustain liability"); *see also Twombly*, 550 U.S. at 558–59.

Plaintiff's efforts to distinguish Defendants' cited authorities also fail. Plaintiff asserts that

---

[5] Even if Pennsylvania courts had not repeatedly declined to adopt such theories, they also would fail here due to Plaintiff's failure to join "substantially all" "UPF" makers and the fact that "UPFs" are not a singular, defined product. *See Skipworth by Williams v. Lead Indus. Ass'n, Inc.*, 690 A.2d 169, 172–73 (Pa. 1997); *Burnside v. Abbott Lab'ys*, 505 A.2d 973, 984–85 (Pa. Super. Ct. 1985). In any event, Plaintiff clarifies that he is not alleging market-share liability. Opp. 11, 18.

"[t]his is not like *Klein* … where the plaintiff did 'not name one product, *even generically*,'" and that the plaintiff in *Cummins v. Firestone Tire & Rubber Co.*, 495 A.2d 963 (Pa. Super. Ct. 1985), "conceded that he did not know what products or manufacturers were responsible." Opp. 11. But the rule from those cases is clear: "a plaintiff must at least designate the product alleged to be defective in order to recover from one who sells it." *Klein*, 587 F. Supp. at 222; *see also Cummins*, 495 A.2d at 967–69 (same). Here, the Complaint does not identify what products Plaintiff consumed that allegedly led to his injuries. Plaintiff is "in a position to know the products" he consumed, and allowing him to proceed with a claim without identifying a particular product would "turn[] the law of product liability on end." *Klein*, 587 F. Supp. at 221–22.

### B.  Plaintiff Does Not Plausibly Plead Either General or Specific Causation.

In response to Defendants' argument that the Complaint does not adequately plead general or specific causation, Plaintiff misstates the argument and accuses Defendants of requiring him to "*prove*" causation before discovery. Opp. 12. Although Plaintiff "need not scientifically prove causation at the pleading stage, [he] must nonetheless *plausibly allege it*." *Becerra v. Dr Pepper/Seven Up, Inc.*, 2018 WL 1569697, at *6 (N.D. Cal. Mar. 30, 2018) (emphasis added). Plaintiff fails to defend the adequacy of his allegations on either general or specific causation.

*General causation*. Contrary to Plaintiff's argument, Opp. 13, simply citing scientific literature does not satisfy his pleading burden when the studies do not lead to a plausible conclusion that Defendants' products cause the alleged injuries. *See Manuel v. Pepsi-Cola Co.*, 2018 WL 2269247, at *12 (S.D.N.Y. May 17, 2018), *aff'd*, 763 F. App'x 108, 109 (2d Cir. 2019); *see also Becerra v. Coca-Cola Co.*, 2018 WL 1070823, at *4 (N.D. Cal. Feb. 27, 2018).

Plaintiff dismisses Defendants' cited cases as "outliers" because they involved consumer fraud and economic loss claims. Opp. 14. But the Complaint here also relies on theories of consumer fraud. *E.g.*, Compl. ¶¶ 589–639. In any event, those rulings are not unique to the specific

cause of action alleged. In those cases, the proffered theory of deception was that the products at issue supposedly "cause[d]" weight gain. *Manuel*, 2018 WL 2269247, at *12; *Becerra*, 2018 WL 1070823, at *4. And because the complaints claimed to "cite numerous scientific studies" supporting those theories, the courts considered those materials, ultimately ruling that the plaintiffs had "overstated the actual science set forth in the citations" by conflating a mere "correlation" with causation. *Becerra*, 2018 WL 1070823, at *4; *see also Manuel*, 2018 WL 2269247, at *12.[6]

The same is true here. Plaintiff's "supporting studies" for his causal theory, *according to Plaintiff's own description*, do not offer causal conclusions. Opp. 13 n.23 (characterizing studies as "f[i]nding [a] risk," not cause); *see also* Compl. ¶ 65 n.63 (citing studies purporting to find an "association" between so-called "UPF" and non-alcoholic fatty liver disease but not causation); Compl. nn.62, 71, 78–79, 83, 385 (similar with respect to diabetes). In fact, one of the studies Plaintiff relies on in the Complaint *and* his Opposition expressly cautions that "causation cannot be determined."[7] Recognizing the lack of support in scientific studies, Plaintiff relies most heavily on an advocacy piece declaring so-called "UPF" as "the Cause of" non-communicable diseases. Robert H. Lustig, *Ultraprocessed Food: Addictive, Toxic, and Ready for Regulation*, 12 Nutrients 1, 2 (2020). But that article does not find that so-called "UPFs" can cause non-alcoholic fatty liver disease or childhood type 2 diabetes, and it does not conclude that *any of Defendants' foods and beverages* cause those conditions. Plaintiff criticizes Defendants for "malign[ing] the article" as

---

[6] *Manuel* and *Becerra* are not outliers in rejecting inadequately pled causal theories at the motion-to-dismiss stage. *See, e.g.*, *Excevarria v. Dr Pepper Snapple Grp., Inc.*, 764 F. App'x 108, 109–10 (2d Cir. 2019); *Geffner v. Coca-Cola Co.*, 343 F. Supp. 3d 246, 253–54 (S.D.N.Y. 2018); *Becerra*, 2018 WL 1569697, at *6; *Becerra v. Dr Pepper/Seven Up, Inc.*, 2018 WL 3995832, at *7–8 (N.D. Cal. Aug. 21, 2018); *Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131, 141 (E.D.N.Y. 2015).

[7] Moradi et al., *Ultra Processed Food Consumption and Adult Diabetes Risk: A Systematic Review and Dose Response Meta Analysis*, Nutrients Dec. 2021 (cited in Compl. n.62 and Opp. 13).

an advocacy piece, Opp. 13, but the article expressly states its goal is to "guide both scientists and policy makers in instituting" food regulations, not to objectively compile studies. Lustig, *supra* at 1. That is exactly the kind of unscientific material that courts have rejected, even at the pleading stage. *See Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131, 138 & n.6 (E.D.N.Y. 2015) (dismissing complaint that relied on "an editorial commenting on a particular set of research studies").[8]

Plaintiff's suggestion that the Supreme Court has countenanced similar causation allegations in *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) (Opp. 14–15), is wrong. There, the Court affirmed the denial of a motion to dismiss a federal securities lawsuit alleging a failure to disclose reports of a potential link between a cold remedy and loss of smell. *Id.* at 30. The Court held that reasonable *investors* could consider "reports of adverse events as material even though the reports did not provide statistically significant evidence of a causal link." *Id.* at 44. That does not speak to the relevant causation standard in a product liability suit. Plaintiff highlights a statement from the Court's discussion of securities law *materiality* based on an argument that a study was "not reliable because [it] did not sufficiently rule out" alternative causes. Opp. 15. But Defendants' argument here is that the cited studies, even when crediting Plaintiff's *own characterizations* of them, do not establish a plausible inference of general causation.[9]

***Specific causation***. Plaintiff comes nowhere close to alleging, as he must, that *each*

---

[8] Plaintiff also says his citations to international governments' statements about "UPF" are enough to plead causation. Opp. 14 (Compl. ¶¶ 418–45). But the only case he cites specifically clarified it was *not* discussing standards relevant to product liability cases.

[9] Plaintiff's other cited authorities are similarly inapposite. For example, the studies cited at the pleading stage in *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938 (N.D. Cal. 2017), "provid[e]d conflicting conclusions or create[d] some factual dispute." *Becerra*, 2018 WL 1569697, at *6. And in *In re Acetaminophen*, 2023 WL 3126589, at *3 (S.D.N.Y. Apr. 27, 2023), the court reasoned that a "Consensus Statement" signed by numerous doctors in a prominent journal "provide[d] a more than adequate pleading of the element of causation." Here, by contrast, the studies, at most, "support merely a[n alleged] correlation," which "is not causation." *Becerra*, 2018 WL 159697, at *6 (distinguishing *Krommenhock*).

Defendant's product(s) caused *his* alleged injuries. Instead of pleading any meaningful facts about his consumption, Plaintiff argues that his injuries resulted from "chronic exposure" to Defendants' allegedly interchangeable "UPFs." Opp. 17. But that does not relieve Plaintiff of ordinary pleading requirements. Plaintiff's suggestion that such a bare-bones pleading withstood a motion to dismiss in *In re Philips Recalled CPAP, Bi-Level PAP, & Ventilator Prods. Litig.*, 2023 WL 7019287, at *4 (W.D. Pa. Sep. 28, 2023), is misleading. In *Philips*, the complaint was permitted to survive because, unlike here, the plaintiffs had actually provided relevant details, including "information about device usage, prescription information, … [and] injury particulars." *Id.* at *6.

Plaintiff also argues that his sparse allegations are sufficient because he "need not rule out other possible causes at the pleading stage." Opp. 18. But again, Plaintiff has the onus to plead basic information about his consumption of *each* Defendant's product(s), or else the only way this Court can possibly infer causation is by impermissibly "resorting to wild speculation." *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 538 (S.D.N.Y. 2003); *S.F. v. Archer-Daniels-Midland Co.*, 2014 WL 1600414, at *4 (W.D.N.Y. Apr. 21, 2014), *aff'd*, 594 F. App'x 11 (2d Cir. 2014).

Despite its striking similarities to this case, Plaintiff all but ignores *S.F.*,[10] where the court dismissed a complaint alleging high-fructose corn syrup caused type 2 diabetes. *S.F.*, 2014 WL 1600414. The court held allegations "idly listing various common foods [the plaintiff] ha[d] eaten" were insufficient. *Id.* at *4.[11] Plaintiff alleges even less here—not even the foods he ate *or* a specific ingredient at issue. And while Plaintiff notes that *Pelman*—also strikingly similar and also

---

[10] While Plaintiff brushes *S.F.* aside on the ground that the plaintiff "depended on market share liability," Opp. 18 n.37, the court explained that "the plaintiffs failed to plead proximate causation," and addressed market-share liability in the alternative. 2014 WL 1600414, at *4–5.

[11] Notably, Dr. Lustig—the same advocate that Plaintiff relies on to support causation here— submitted an expert report to accompany the complaint in *S.F.* Aff. of Robert H. Lustig, *S.F. v. Archer-Daniels-Midland Co.*, 2013 WL 9541767 (W.D.N.Y. Sep. 25, 2013). The court dismissed the complaint for failure to plead causation, anyway.

dismissing the complaint on causation grounds—was reversed by the Second Circuit, Opp. 19, the "bare-bones notice-pleading" standard applied in that ruling has "been superseded by the more rigorous plausibility standards set forth in" *Iqbal* and *Twombly*. *Precision Imaging of N.Y., P.C. v. Allstate Ins. Co.*, 263 F. Supp. 3d 471, 476 (S.D.N.Y. 2017); *see also S.F.*, 2014 WL 1600414, at *4 (the Second Circuit's reversal in *Pelman* "is open to question" after *Iqbal* and *Twombly*). Plaintiff also contends that his case differs because "the risks" being alleged "are not common knowledge." Opp. 19. However, even if that were true, *Pelman* did not turn on public knowledge. Rather, there, as here, the problem was that "any number of other factors … potentially could have affected plaintiff['s] weight and health"; so, like here, allowing the case to proceed would have required "wild speculation." *Pelman*, 237 F. Supp. 2d at 538–39.[12]

　　　None of Plaintiff's cited cases warrants a contrary result. Plaintiff points to authority stating that "a defendant is not relieved from liability because another concurring cause is also responsible for producing injury." Opp. 18 (quoting *Davis v. Volkswagen Grp. of Am.*, 2019 WL 3252054, at *8 (Pa. Super. Ct. July 19, 2019)). But as *Davis* makes clear, the fact that "multiple substantial factors may cooperate to produce an injury" does not eliminate the requirement that a plaintiff plead and ultimately prove that each defendant's alleged conduct played a "substantial" role in causing that injury. 2019 WL 3252054, at *8. Here, Plaintiff's failure to plead any facts regarding his exposure to any individual Defendant's products forecloses any inference of substantial-factor causation as to any of the Defendants.

---

[12] Plaintiff's claim that his lawsuit does not "hinge on a diagnosis of addiction," Opp. 17, misunderstands Defendants' argument. Defendants argue that Plaintiff cannot compensate for the lack of specific exposure allegations by simply alleging that "UPFs" have addictive qualities, especially because this Plaintiff does not allege to have been addicted. Mot. 21. The cases cited by Plaintiff allowing addiction-based theories of liability to proceed in the context of nicotine and social media, Opp. 17 (collecting cases), do not hold otherwise.

III.    **PREEMPTION BARS PLAINTIFF'S CLAIMS.**

Plaintiff misinterprets the "concurrent jurisdiction" provisions of FMIA and PPIA. Opp. 24, 26, 29. These clauses do not create a loophole to impose labeling or ingredient requirements that are "in addition to, or different than" the comprehensive federal scheme regulating meat and poultry products. As to other products, the vagueness of the Complaint makes it impossible to tell, but Plaintiff's claims appear to attempt to impose new state-law duties that are preempted by the FDCA. Plaintiff cannot dodge preemption by pleading so vaguely that the Court cannot discern what it covers. The Court should decline Plaintiff's invitation to excuse his vague pleading and rewrite the law of federal preemption.

### A.  Plaintiff's Claims Regarding Meat and Poultry Products Are Preempted.

FMIA and PPIA prevent "[m]arking, labeling, packaging, or ingredient requirements" that are "in addition to, or different than" those of federal law. 21 U.S.C. § 678; *id.* § 467e.[13]

***Plaintiff's Meat and Poultry Warning Claims Are Preempted.*** Plaintiff tries to avoid the bar on claims regarding FSIS-approved labels by positing a nonexistent distinction between those based on stated, as opposed to omitted, information. Opp. 25 n.50. But claims that a label lacked warnings are preempted. *Brower v. Campbell Soup Co.*, 243 F. Supp. 3d 1124, 1127–29 (S.D. Cal. 2017). Preemption results if the label is "additional or different"—it need not "conflict[]" with federal requirements to be preempted. *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 459–61 (2012).[14]

States' concurrent authority does not change the analysis. Concurrent authority allows, at most, state-law enforcement of federal standards, but additional requirements still are preempted.

---

[13] Common law claims are state law "requirements." *Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1288 (9th Cir. 2021) (Opp. 27); *see Riegel v. Medtronic, Inc.*, 552 U.S. 312, 323–24 (2008).
[14] Plaintiff also demands proof that labels were approved outside the "generic[]" process. Opp. 27. The manner of FSIS review, however, is irrelevant. *See Edwards v. Johnsonville LLC*, 2024 WL 686925, at *5 (N.D. Ill. Feb. 1, 2024).

*See Thornton v. Tyson Foods, Inc.*, 28 F.4th 1016, 1025–26 (10th Cir. 2022). The phrases "adulteration" and "misbranding" do not let Plaintiff impose his own label requirements, and allowing him to do so would be contrary to the Congressionally-enacted preemption statutes and the regulators' determination that the meat and poultry products were properly labeled. *Id.*; Mot. 22–25. Moreover, the word "adulterated" does not appear anywhere in the Complaint and "misbranding" is there just once.

Fundamentally, as he admits, Plaintiff's claims are preempted unless Defendants' food labels violate federal law. Opp. 25, 27. Yet, Defendants' labels comply with FMIA and PPIA. And Plaintiff fails to identify any false or misleading part—indeed, he identifies no labels he saw, as confirmed by dismissal of his express warranty claim.[15]

***Plaintiff's Claims Related to Production Are Preempted.*** Plaintiff wrongly contends that USDA preemption does not extend to "testing, design, [or] manufacturing" claims because the sale of "UPF" is not mandated. Opp. 28. This again ignores the preemption clauses' broad language. Cases about bans on horse slaughter and the like are inapposite, because while they hold that states can outlaw certain slaughter entirely, they cannot dictate how products from already slaughtered livestock should be manufactured, produced, or labeled. *See Nat'l Meat Ass'n*, 565 U.S. at 467.

In any event, Plaintiff has not pled that Defendants' products are adulterated; he has not identified any case suggesting that food alleged to have negative health effects is adulterated. Instead, he cites cases about food carrying serious pathogens defined by regulators as adulterants, unlike the ingredients in Defendants' products. *Blumas v. Costco Wholesale Corp.*, 1999 WL 35809869, at *3 (D.N.M. Feb. 18, 1999) (plaintiffs could pursue claims related to meat

---

[15] Plaintiff faults Defendants for not appending USDA-approved labels or other product-specific evidence. Opp. 23, 27. This highlights Plaintiff's failure to identify the products at issue. For Conagra alone, Plaintiff is suggesting Defendant should submit labels for over 1,500 products.

contaminated with E. Coli, which was defined by USDA as "adulterated," but "Plaintiffs likely could not pursue a claim … based on the distribution of meat which did not fall within the USDA definition of adulterated"); *Drayton v. Pilgrim's Pride Corp.*, 2004 WL 765123, at *5–7 (E.D. Pa. Mar. 31, 2004) (listeria, "designated" by FSIS "as an adulterant") (Opp. 23). Plaintiff's theory would require finding that a large portion of the food supply is adulterated and should be banned. 21 U.S.C. § 610 (FMIA) (sale or transport of adulterated food forbidden). That is not the role Congress has given to Plaintiff or this Court.

**B. Plaintiff's Vague Pleading as to All Products Attempts to Skirt FDA Preemption.**

On FDA preemption, Plaintiff responds that Defendants do not "clearly ask for dismissal" on this ground. Opp. 22. That misses the point, which is that the allegations are so deficient that it is impossible for Defendants to assess their preemption defense as to any specific product. However, NLEA's carve out for warnings about food safety does not foreclose preemption of Plaintiff's claims. *Cf.* Opp. 22–23. Plaintiff's cited cases *confirm* this. *In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, 2009 WL 3762965, at *6 (W.D. Mo. Nov. 9, 2009) ("safety" exception not implicated where FDA had concluded BPA was safe) (Opp. 29); *Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 624–27 (4th Cir. 2015) (failure-to-warn claim regarding fluoride preempted) (Opp. 23 n.48); *see also Mills v. Giant of Md., LLC*, 441 F. Supp. 2d 104, 106–09 (D.D.C. 2006) (failure-to-warn claims regarding lactose preempted). To the extent Plaintiffs' claims attempt to impose requirements contrary to federal law and FDA regulations, they are preempted.

**IV.    PLAINTIFF'S CLAIMS ARE BARRED BY THE FIRST AMENDMENT.**

Plaintiff does not dispute that his claims would require Defendants "to warn of risks" from so-called "UPF," Opp. 29, or that courts have rejected similar attempts to "compel[] sellers to warn consumers of a potential 'risk' never confirmed by any regulatory body" or scientific authority.

*Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1283 (9th Cir. 2023). Plaintiff's attempt to compel unscientific warnings linking "UPF" to health effects is barred by the First Amendment.

Plaintiff suggests there is a carve-out from the First Amendment for "longstanding torts" or warnings of health risks. Opp. 30. The case he cites, *National Institute of Family & Life Advocates v. Becerra*, 585 U.S. 755 (2018), does not support that assertion. And, indeed, the Supreme Court has confirmed the First Amendment is a defense in tort cases. *See Snyder v. Phelps*, 562 U.S. 443, 451 (2011). Plaintiff also argues "statutorily compelled warnings" claims require a different legal analysis than common law claims. Opp. 31 n.60. This unsupported argument is contrary to black-letter law that a state cannot accomplish by common law what it is forbidden from doing by statute. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 277 (1964). Accordingly, "[w]hen a plaintiff asserts a claim based upon a defendant's failure to warn, the First Amendment may bar that claim." *Hedrick v. BSH Home Appliances Corp.*, 2025 WL 1238363, at *6 (C.D. Cal. Apr. 28, 2025) (dismissing failure-to-warn claim "because the articles" cited by plaintiff "reveal that there is no scientific consensus regarding those health risks, such a warning would likely violate the First Amendment").

Plaintiff also insists his "allegations about the risks of UPF must be taken as true." Opp. 30. But Plaintiff's own sources incorporated by reference in the Complaint show there is no causal link between so-called "UPF" and specific health effects, Mot. 15–21; *infra* Section II(B), and the argument that a warning is factual and uncontroversial is a legal conclusion—not a factual assertion that must be accepted as true. Plaintiff's suggestion that Defendants seek to use the First Amendment as blanket immunity against all failure-to-warn claims, Opp. 29, is simply hyperbole.

## V.   EACH INDIVIDUAL CLAIM FAILS FOR ADDITIONAL REASONS.

### A.  Plaintiff's Negligence Claims Fail Under Any Theory (Count I).

Plaintiff essentially concedes that the Complaint does not specify whether he is seeking to

proceed on a theory of negligent design or manufacture but argues it is not "necessary" to differentiate between these two distinct product-liability concepts "[a]t this stage." Opp. 32. Yet, Plaintiff's cited cases acknowledge that the allegations necessary to pursue these claims are distinct. *See, e.g.*, *Douglas v. Atrium Med. Corp.*, 2023 WL 8643638, at *6 (M.D. Pa. Dec. 11, 2023) (labeling negligence claims is "useful" in ensuring the right law is applied).[16] Regardless, Plaintiff's allegations are insufficient under either theory.

As to design, Plaintiff acknowledges that the Complaint, at most, generically challenges "UPF's" purportedly "dangerous design," rather than the specific design features of any Defendant's product. Opp. 32. Absent allegations detailing a product's design and allegations about a safer alternative design, a negligent-design claim cannot proceed. *McGrain v. C.R. Bard, Inc.*, 551 F. Supp. 3d 529, 541–42 (E.D. Pa. 2021). Although Plaintiff argues he need not "plead a safer alternative" under *Spear v. Atrium Medical Corp.*, 621 F. Supp. 3d 553, 559 (E.D. Pa. 2022), *Spear* erred in "declin[ing] to follow" *McGrain*'s direction to the contrary. Moreover, *Spear* excepted the requirement to allege an alternative design because it involved a theory that a *drug* product was "too dangerous to market" altogether, *id.*, and Plaintiff cites no authority extending this theory outside of extreme drug safety cases.[17] Regardless of *alternative* designs, the Complaint still fails to allege any details about any certain product's design.

As to negligent manufacturing, Plaintiff argues he adequately alleged that Defendants did not exercise reasonable care in "how [Defendants] engineered and manufactured UPFs." Opp. 33–

---

[16] The Report and Recommendation in *Douglas* ultimately found that the plaintiff's failure to articulate the "specific theory of negligence" did not compel dismissal; however, that was legally erroneous and, in any event, based in part on "the *pro se* nature of the complaint[,]" 2023 WL 8643638, at *6–7, which is not a consideration here. This erroneous recommendation faced no objection before the district court judge. 2024 WL 4364950, at *4 (M.D. Pa. Sep. 30, 2024).

[17] Plaintiff's other cases are inapposite because each included an alleged alternative design or an example of a substitutable product without the allegedly dangerous feature. Opp. 33 n.61.

34. But as *McGrain* makes clear, to withstand a motion to dismiss, a plaintiff must specifically allege that something "went wrong during the manufacturing process." 551 F. Supp. 3d at 541. Although Plaintiff leans heavily on one outlier case that read this element out of Pennsylvania tort law, *see Runner v. C.R. Bard*, 108 F. Supp. 3d 261 (E.D. Pa. 2015), that case is contrary to the prevailing weight of authority within this District. *See Drumheller v. Johnson & Johnson*, 2021 WL 1853407, at *8 (E.D. Pa. May 10, 2021) (declining to follow *Runner* on this issue and dismissing negligent manufacture claim for failure to "allege facts showing a deviation from a suitable design"). Plaintiff thus does not plead a viable negligence claim under any theory.

### B. Plaintiff's Failure-to-Warn Claims Are Deficiently Pled (Count II).

Plaintiff's arguments on duty-to-warn and warning-causation are meritless. Mot. 33–36. Defendants' products are safe to consume and do not require any warning. Moreover, it is far from clear who purportedly should have received or would have allegedly heeded any warning: Plaintiff was a young child during almost the entire relevant time period, surely not making his own food decisions or purchases.[18] His claims fail for additional reasons.

First, Plaintiff argues that Defendants had a duty to warn because the purported risks of developing type 2 diabetes and non-alcoholic fatty liver disease were "not generally known or recognized." Opp. 35. But as Plaintiff confirms in the first sentence of his brief, the gravamen of this lawsuit is that Defendants' products were allegedly "overconsumed by people like Plaintiff." *Id.* at 1; *see also* Opp. 17. The risk from overconsuming any food is an obvious one, about which food manufacturers have no duty to warn. *See Gorran v. Atkins Nutritionals Inc.*, 464 F. Supp. 2d

---

[18] Indeed, apart from vague allegations that Plaintiff "purchased … Defendants' UPF," *e.g.*, Compl. ¶ 546, Plaintiff does not allege which (if any) of Defendants' products *he* purchased, much less when and in what amounts. Even in Plaintiff's cited cases, such bare-bones allegations are insufficient. *See In re Catanella & E.F. Hutton & Co. Sec. Litig.*, 583 F. Supp. 1388, 1398 (E.D. Pa. 1984) (noting the *only* fact missing was the date of the transactions—the plaintiff had alleged every other necessary detail, including the names of the securities sold and even their value).

315, 324 (S.D.N.Y. 2006) (no duty to warn a particular diet "would increase both cholesterol levels and the risk of heart disease"). Plaintiff contends *Gorran* and Defendants' other cases are "distinguishable" because the plaintiffs did not specifically allege that the risks were "non-obvious," Opp. 35, but those cases turned on the common sense of the "average consumer." *See Gorran*, 464 F. Supp. 2d at 324; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) (court should "draw on its experience and common sense" in evaluating motion to dismiss). Here, too, the alleged risks of overconsumption are so commonsense and well-established that the Restatement recognized as early as 1965 that they cannot form the basis of a failure-to-warn claim. Restatement (Second) of Torts § 402A cmt. i ("[A]ny food … necessarily involves some risk of harm, if only from over-consumption.").[19]

Second, Plaintiff argues he adequately pled warning causation by alleging that "[i]f Defendants had warned [him] that use of their UPF … would increase [his] risk of being seriously injured … Plaintiff would not have ingested their UPF." Opp. 20 (quoting Compl. ¶ 538). This is the type of "formulaic recitation" of the claim's elements that *Iqbal* directs courts to disregard. 556 U.S. at 678. It also conflicts with Plaintiff's allegation that warnings about "UPFs" are widespread and with the detailed nutritional information about ingredients, nutrient amounts (with recommended daily intake percentages), and recommended serving sizes found on the labels.[20]

### C. Plaintiff Fails to State a Claim for Breach of Implied Warranty (Count III).

Plaintiff voluntarily dismissed his express warranty claim, and failed to defend any theory

---

[19] Plaintiff (Opp. 35) also claims that *Hahn v. Richter*, 673 A.2d 888, 889–90 (Pa. 1996), is inapplicable because the court specifically "addressed prescription drugs." But in so doing, the court invoked the commentary to section 402A, reasoning that the potential overconsumption of alcoholic beverages and consuming "foods containing … saturated fats … over a period of time" are "example[s]" of risks that manufacturers have no duty to warn about. *Id*. at 890 n.3.

[20] Contrary to Plaintiff's argument, no rebuttable presumption that a warning would be heeded applies here because this is not a case "involving workplace exposure to asbestos." *Dolby v. Ziegler Tire & Supply Co.*, 2017 WL 781650, at *5 (Pa. Super. Ct. Feb. 28, 2017).

of an implied warranty of fitness for a particular purpose. *Comer*, 2025 WL 1530750, at *5 (plaintiff's "failure to respond to an argument advanced in support of a motion to dismiss results in a waiver of the claim sought to be dismissed"). This leaves only his implied warranty of merchantability claim, which fails for multiple reasons. Although Plaintiff identifies a few cases that deemed the filing of a complaint to be sufficient notice, those cases are nonbinding,[21] and at odds with other authorities (including those cited elsewhere in Plaintiff's brief) holding that pre-suit notice is required to "allow the seller an opportunity to resolve the dispute … *before* the buyer initiates a lawsuit." *Lisowski v. Henry Thayer Co.*, 501 F. Supp. 3d 316, 330–31 (W.D. Pa. 2020) (Opp. 43–44) (emphasis added). Treating a complaint as notice would subvert that purpose and effectively nullify a key element of Pennsylvania warranty law.

Plaintiff also does not dispute that, to breach an implied warranty of merchantability, food must be unfit for human consumption. Instead, he relies on inapposite cases from outside of the food context to argue a product is not merchantable if it contains "hidden defects." Opp. 37 (citing *Weinberg v. Legion Athletics, Inc.*, 683 F. Supp. 3d 438, 444, 451 (E.D. Pa. 2023) (a "poisonous" supplement); *Barton v. Lowe's Home Ctrs., Inc.*, 124 A.3d 349, 358 (Pa. Super. Ct. 2015) (a "self-destruct[ing]" lawnmower)). Here, Plaintiff seeks to rewrite the law on merchantability to include "whether a food is healthful or nutritious," which "is not the standard." *Yu v. Dreyer's Grand Ice Cream, Inc.*, 592 F. Supp. 3d 146, 163 (S.D.N.Y. 2022) (dismissing implied warranty claim based on allegation that vegetable oil is "linked to numerous health problems").

### D. Plaintiff's Fraud-Based Claims Fail (Counts V–VIII).

Plaintiff's fraudulent and negligent representation claims fail because he has not alleged

---

[21] Plaintiff cites *Samuel-Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 26 (Pa. 2011), for the proposition that "[p]re-suit notice is not required." Opp. 36. However, there the Supreme Court merely held that outstanding questions related to notice did not preclude certification of a class.

(1) any specific representation by any Defendant, as reflected by dismissal of his express warranty claim; (2) reliance—or even *who* would have relied on representations while Plaintiff was a minor; (3) anything about representations that were in fact false; or (4) plausible facts regarding Defendants' requisite mental states. Plaintiff effectively abandons his claim that Defendants made any purported affirmative representations, instead arguing Defendants failed "to disclose risks." Opp. 38. This pivot to an omission theory is self-defeating, as negligent and fraudulent misrepresentations require affirmative statements. *See Advance Cap. Partners, LLC v. Rossmann*, 495 F. App'x 235, 238 n.1 (3d Cir. 2012) ("Non-disclosure of a material fact would give rise to a cause of action for fraudulent non-disclosure"—a claim Plaintiff does not assert—"not for fraudulent or negligent misrepresentation"); *Patel v. Patel*, 2016 WL 3000821, at *7 (E.D. Pa. May 25, 2016) (dismissing fraudulent misrepresentation claim where there was no "*affirmative* misrepresentation") (Opp. 39). And even if omissions could form the basis of misrepresentation claims, these counts still fail. Although Plaintiff alleges that Defendants omitted information from their marketing, and broadly attacks Defendants' purported "marketing campaigns" no fewer than 17 times in his brief, *id.* at 5; *see also id.* at 6, 7, 8, 23, 32, 40, 41, he never alleges that he saw, heard, or relied on *any* Defendant's particular marketing. Accordingly, he fails to plead any plausible facts regarding an actionable omission or reliance. *See Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 645–46 (Pa. 2021) (fraudulent or negligent misrepresentation require reliance) (Opp. 42).

Likewise, concealment requires the plaintiff to identify with specificity affirmative deceptive acts done to conceal information, scienter, and reliance on such concealment, which Plaintiff has not done. *See Kester v. Zimmer Holdings, Inc.*, 2010 WL 4103553, at *3–4 (W.D. Pa. Oct. 18, 2010) (dismissing fraudulent concealment claim because plaintiff did not "specif[y] the

time," place, or person disseminating "misrepresentations or omissions"). This claim separately fails for lack of any specific duty to disclose. Plaintiff argues that no duty is required for concealment claims governed by the Restatement (Second) of Torts § 550. *See* Opp. 42. But the Third Circuit has specifically applied the Restatement § 550 to hold that, "[u]nder Pennsylvania law, a party is liable for fraudulent concealment only when it had a duty to speak in the first place."[22] *Jeter v. Brown & Williamson Tobacco Corp.*, 113 F. App'x 465, 469 (3d Cir. 2004).

Plaintiff's Consumer Protection Law claim likewise fails as he has not identified any specific deceptive act or omission by any Defendant. *Lisowski*, 501 F. Supp. 3d at 336 (dismissing CPL claim based on failure to disclose an ingredient "due to a lack of specificity [in] identify[ing] the product or the timeframe of labeling deficiencies") (Opp. 43–44). As a result, Plaintiff does not plausibly allege any specific conduct that was *deceptive* under the law—*i.e.*, likely to deceive a reasonable consumer. *McDonough v. State Farm Fire & Cas. Co.*, 365 F. Supp. 3d 552, 562 (E.D. Pa. 2019). Plaintiff also admits CPL claims require reliance, Opp. 43, but makes no attempt to show he has adequately pled reliance or how that reliance led to his injury.

### E.  Plaintiff Does Not Allege That Any Defendant Was Unjustly Enriched (Count IX).

As Plaintiff admits, Opp. 43, unjust enrichment is contingent on having a viable underlying tort claim, which he lacks. *Steamfitters Loc. Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 937 (3d Cir. 1999). Moreover, the law is clear that an unjust enrichment claim is not appropriate when Plaintiff used the bargained-for product, even if he argues it was unsafe. *See Kovalev v. Lidl US, LLC*, 647 F. Supp. 3d 319, 353–54 (E.D. Pa. 2022) (no unjust enrichment

---

[22] A normal consumer-seller relationship does not create a duty. *See Jeter*, 113 F. App'x at 469. Plaintiff cites a case regarding a purported duty to disclose dangerous conditions, which in turn cites a Restatement provision specific to *land*. Opp. 40 (citing *Glanski v. Ervine*, 409 A.2d 425, 430 (Pa. Super. Ct. 1979) (citing Restatement (Second) of Torts § 353 (1965))).

claim when plaintiff "paid for," "received," and "consumed portions of" food).[23] Plaintiff also has failed to plead he conferred a benefit on Defendants. *Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 721–22 (E.D. Pa. 2013).

### F.  Plaintiff's Conspiracy and Concerted Action Claims Fail (Counts X–XI).

Plaintiff does not dispute that conspiracy and concerted action claims must be predicated on an underlying intentional tort. Opp. 44. Because Plaintiff has failed to plead fraud, the only alleged intentional tort, his claims for civil conspiracy and concerted action fail. They also fail for lack of malice and an agreement.

#### 1.  Both claims fail for lack of malice.

As this Court has held, malice requires that the "*sole* purpose of the conspiracy was to injure the plaintiff." *WSFS Fin. Corp. v. Cobb*, 2023 WL 4552110, at *13 (E.D. Pa. July 14, 2023) (Perez, J.) (emphasis added). Plaintiff alleges that this group of Defendants[24] sought "to make a profit." Opp. 45 (quoting Compl. ¶ 645). At most, this accuses these Defendants of "act[ing] for their own business advantage rather than solely to harm Plaintiff." *Cobb*, 2023 WL 4552110, at *13. That is dispositive.

Lacking any rationale for the Court to revisit *Cobb* and its analysis of the many cases reaching the same conclusion, Plaintiff relies on older, nonbinding authority holding that "unadulterated malice is ... not required." Opp. 45 (quoting *Burris v. Main Line Health Sys.*, 2017 WL 2506446, at *14 (E.D. Pa. June 9, 2017)).[25] Given this Court's prior ruling and the respect

---

[23] Plaintiff cites non-food, non-binding cases permitting unjust enrichment claims to proceed even when the recipient used the product. *See, e.g.*, *Lisowski*, 501 F. Supp. 3d at 338–39. But there, the plaintiff "did not receive the product he thought he was buying." *Id.* Here, the Complaint does not allege *what* products Plaintiff ever bought or consumed, or that such products lacked required labeling listing *exactly* what was in each item.

[24] Defined by Plaintiff as Kraft Heinz, Mondelēz, Post Holdings, Coca-Cola Company, General Mills, and Mars. Compl. ¶ 641.

[25] Plaintiff argues that *Cobb* was a "summary judgment decision." Opp. 46 n.95. But that misses

owed to state courts on issues of state law, the Court should "decline [Plaintiff's] invitation to expand the malice requirement." *Kretulskie v. Madison Nat'l Life Ins. Co.*, 2019 WL 5866694, at *5 (M.D. Pa. Oct. 9, 2019). Regardless, Plaintiff does not point to any well pled facts suggesting that harming him was even *a* purpose of the purported conspiracy, meaning that Plaintiff's conspiracy and concerted action claims fail even under Plaintiff's watered-down standard.[26]

### 2. Plaintiff does not plausibly allege an agreement.

Plaintiff argues he has sufficiently pled an agreement by alleging that these Defendants "worked in concert to maintain and expand the UPF market" and to "conceal[]" the purported risks of their products. Opp. 46. That is no different than the rejected allegations against the "entire spinal fixation device industry" in *In re Orthopedic Bone Screw Products Liability Litigation*, 1996 WL 482977, at *1 (E.D. Pa. Aug. 22, 1996). Plaintiff argues that *Bone Screw* is "distinguishable" because it involved mere allegations of "parallel conduct," Opp. 48. But there, as here, plaintiffs alleged that defendants "made fraudulent misrepresentations and concealed material facts regarding the safety of their devices." *Compare In re Bone Screw*, 1996 WL 482977, at *8, *with* Opp. 46 (Defendants "withh[e]ld the truth … and conceal[ed] the harms").

Relying on a non-Pennsylvania case about federal antitrust conspiracy, Plaintiff also argues

---

the key point that "[m]alice requires an *allegation* that the sole purpose of the conspiracy was to injure the plaintiff." *Cobb*, 2023 WL 4552110, at *13. Indeed, this Court expressly relied on the "thorough[] discuss[ion] [of] the malice requirement … in *DePuy Synthes Sales, Inc.*," which dismissed a conspiracy claim on the pleadings. *See DePuy Synthes Sales, Inc. v. Globus Med., Inc.*, 259 F. Supp. 3d 225, 248–49 (E.D. Pa. 2017).

[26] Plaintiff also argues that he "need not allege malice for concerted action under" § 876 of the Restatement, citing only *Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76, 84–93 (Pa. 2023) (Opp. 44). However, *Marion* specifically addressed the tort of aiding and abetting under § 876(b), a tort he has not pled, rather than concert of action under § 876(a). It also reiterated that causes of action under § 876(b) include a "scienter standard" that "is not easily satisfied." *Id.* at 91. This general pronouncement, coupled with the longstanding recognition that concerted action must be "founded upon some blameworthy conduct," *see Burnside*, 505 A.2d at 981, underscores that there is a malice requirement.

an agreement can be inferred where "parallel acts were against the apparent individual economic self-interest of the alleged conspirators" and there is a "high level of interfirm communications." Opp. 47 (citing *B & R Supermarket, Inc. v. Visa, Inc.*, 2024 WL 4334075, at *11 (E.D.N.Y. Sept. 27, 2024)). But Plaintiff has pled the opposite—*i.e.*, that the parallel conduct was done to "*advance* [these Defendants'] financial interests." Compl. ¶ 642 (emphasis added). Nor does Plaintiff plead a "high level of interfirm communications"; he alleges, at most, a single meeting attended by certain Defendants in April 1999 (before Plaintiff was born) that did not involve discussion of "UPF," a term not even coined at that time. Opp. 46–47. And according to Plaintiff, after that meeting, these Defendants did nothing—they allegedly "continued producing and marketing their products to children as before" the meeting. *Id.* at 47; *see, e.g.*, *Twombly*, 550 U.S. at 566–67 (alleging "parallel decisions" to do what companies would "natural[ly]" do anyway insufficient).

Although Plaintiff tries to recast his theory as a purported "conspir[acy] to *not* change course" under *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412 (4th Cir. 2015) (Opp. 48), that case is inapposite. There, the plaintiffs alleged a "group boycott," an antitrust violation involving a "concerted refusal" to do business with another company, *id.* at 426, a theory not applicable to this case. Moreover, the *SD3* plaintiffs alleged specific actions that made an agreement plausible; notably, some defendants "abrupt[ly] and unexplained[ly] shift[ed] [their] behavior" by ceasing negotiations. *Id.* at 428, 430. Plaintiffs there also "describe[d] phone calls, meetings, and discussions among the various conspirators." *Id.* at 432. Here, by contrast, the Complaint is devoid of any comparable allegations, reinforcing that Plaintiff's claims for conspiracy and concerted action fail at the pleading stage.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Defendants' omnibus motion to dismiss, the Complaint should be dismissed in its entirety, with prejudice.

25

Dated: July 14, 2025                          Respectfully submitted,

                                              /s/ *Will W. Sachse*
                                              Will W. Sachse
                                              Hope S. Freiwald
                                              DECHERT LLP
                                              Cira Centre
                                              2929 Arch Street
                                              Philadelphia, PA 19104
                                              215-994-2496
                                              215-994-2514
                                              will.sachse@dechert.com
                                              hope.freiwald@dechert.com

                                              Andrew S. Tulumello (*pro hac vice*)
                                              Arianna M. Scavetti (*pro hac vice*)
                                              Weil, Gotshal & Manges LLP
                                              2001 M Street, NW, Suite 600
                                              Washington, DC 20036
                                              202-682-7000
                                              drew.tulumello@weil.com
                                              arianna.scavetti@weil.com

                                              Brian G. Liegel (*pro hac vice*)
                                              Weil, Gotshal & Manges LLP
                                              1395 Brickell Avenue, Suite 1200
                                              Miami, FL 33131
                                              305-577-3180
                                              brian.liegel@weil.com

                                              *Counsel for Defendant PepsiCo, Inc.*

                                              /s/ *Chanda A. Miller*
                                              Chanda A. Miller (Pa. Id. No. 206491)
                                              Cathryn N. Ryan (Pa. Id. No. 327466)
                                              BARNES & THORNBURG LLP
                                              Three Logan Square
                                              1717 Arch Street, Suite 4900
                                              Philadelphia, PA 19103
                                              Tel: (445) 201-8900
                                              Fax: (445) 201-8901
                                              Email:  chanda.miller@btlaw.com
                                                      cathryn.ryan@btlaw.com

                                              Michelle A. Ramirez (*admitted pro hac
                                              vice*)

Carla Morgan Branch (*admitted pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Tel: (312) 853-7000
Fax: (312) 853-7036
Email:  michelle.ramirez@sidley.com

Heidi Levine (*admitted pro hac vice*)
Alan E. Rothman (*admitted pro hac vice*)
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 839-5300
Fax: (212) 839-5599
Email:  hlevine@sidley.com
            arothman@sidley.com

Christopher A. Eiswerth (*admitted pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
Tel: (202) 736-8000
Fax: (202) 736-8711
Email: ceiswerth@sidley.com

*Counsel for Defendant The Kraft Heinz Company, incorrectly named as Kraft Heinz Company, Inc.*

*/s/ Jordan M. Schwartz*
Jordan Michael Schwartz (*pro hac vice*)
Jordan.schwartz@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave N.W.
Washington, DC 20004
Telephone: (202) 389-3358
Facsimile: (212) 446-4900

Allison M. Brown
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000

alli.brown@kirkland.com

*Counsel for Defendant Mondelēz International, Inc.*

*/s/ Sarah L. Brew*
David F. Abernethy (PA Attorney ID 36666)
Benjamin R. Grossman (PA Attorney ID 329219)
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
Telephone: (215) 988-2700
Fax: (215) 988-2757
Email: david.abernethy@faegredrinker.com
Email: ben.grossman@faegredrinker.com

Sarah L. Brew (*pro hac vice*)
Tyler A. Young (*pro hac vice*)
Rory F. Collins (*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Tel: (612) 766-7000
Fax: (612) 766-1600
Email: sarah.brew@faegredrinker.com
Email: tyler.young@faegredrinker.com
Email: rory.collins@faegredrinker.com

*Counsel for Defendant Post Holdings, Inc.*

*/s/ Angela M. Spivey*
Angela M. Spivey (*pro hac vice*)
Andrew G. Phillips (*pro hac vice*)
Jamie Smith George (*pro hac vice*)
Alston & Bird LLP
1201 West Peachtree St.
Atlanta, GA 30309
(404) 881-7857
angela.spivey@alston.com
andrew.phillips@alston.com

Jamie.george@alston.com

Mark A. Aronchick
Hangley Aronchick Segal & Pudlin
One Logan Sq.
27th Fl.
Philadelphia, PA 19103
(215) 568-6200
maronchick@hangley.com

*Counsel for Defendant The Coca-Cola
Company*

*/s/ Tiffany M. Alexander*
Tiffany M. Alexander (PA Atty ID 88681)
Nelson Mullins Riley & Scarborough LLP
1000 Westlakes Drive, Suite 275
Berwyn, PA 19312
Telephone: (610) 943-5351
Tiffany.alexander@nelsonmullins.com

*/s/ S. Jamal Faleel*
Jamal Faleel (admitted pursuant to CivLR
83.5.2(b))
Norton Rose Fulbright US LLP
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402
(612) 321-2271
jamal.faleel@nortonrosefulbright.com

*Counsel for Defendant General Mills, Inc.*

*/s/ Jasmeet K. Ahuja*
Jasmeet K. Ahuja (Pa Id 322093)
Hogan Lovells US LLP
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
T: (267) 675-4667
F: (267) 675-4601
jasmeet.ahuja@hoganlovells.com

Lauren S. Colton (*pro hac vice*)
Hogan Lovells US LLP
100 International Drive Suite 2000
Baltimore, MD 21202
T: (410) 659-2733

Lauren.colton@hoganlovells.com

*Counsel for Defendant Nestlé USA, Inc.*

*/s/ Perlette M. Jura*
Perlette M. Jura (*pro hac vice*)
Michael Holecek (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
pjura@gibsondunn.com

Elizabeth P. Papez (*pro hac vice*)
Jason R. Meltzer (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036-4504
Telephone: (202) 955-8500
epapez@gibsondunn.com

Frederick P. Santarelli
Renaud J. Vann
Timothy T. Myers
ELLIOTT GREENLEAF
Union Meeting Corporate Center V
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
Telephone: 215-977-1024
FPSantarelli@elliottgreenleaf.com
rjv@elliottgreenleaf.com
ttm@elliottgreenleaf.com

*Counsel for Defendant Kellanova*

*/s/ John S. Stapleton*
John S. Stapleton
STAPLETON SEGAL COCHRAN LLC
1760 Market Street, Suite 403
Philadelphia, PA 19103
(215) 561.1500
jstapleton@stapletonsegal.com

Dean N. Panos
John F. Ward, Jr.
JENNER & BLOCK LLP

353 N. Clark St.
Chicago, IL 60654-4704
(312) 222-9359
dpanos@jenner.com
jward@jenner.com

*Counsel for Defendant WK Kellogg Co.*

/s/ *Stephen J. Finley*
Stephen J. Finley (PA ID No. 200890)
GIBBONS P.C.
One Logan Square, Suite 1210
Philadelphia, PA 19103-2757
Telephone: (215) 446-6265
Email: sfinley@gibbonslaw.com

Dane H. Butswinkas (*pro hac vice*)
Paul E. Boehm (*pro hac vice*)
Williams & Connolly LLP
680 Maine Ave, S.W.
Washington, DC 20005
202-434-5000
dbutswinkas@wc.com
pboehm@wc.com

*Counsel for Defendant Mars, Incorporated*

/s/ *Stephen J. McConnell*
Stephen J. McConnell
Heather A. Ritch Rocks
Michael J. Salimbene
REED SMITH LLP
Three Logan Square, 1717 Arch Street,
Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Email: smcconnell@reedsmith.com
Email: hritchrocks@reedsmith.com
Email: msalimbene@reedsmith.com

Melissa A. Geist
REED SMITH LLP
506 Carnegie Center, Suite 300
Princeton, NJ 08540
Tel: (609) 987-0050
Email: mgeist@reedsmith.com

31

*Counsel for Defendant Conagra Brands, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 14, 2025, the foregoing was served via the Court's ECF system on all counsel of record.

<u>*/s/ Will W. Sachse*</u>
Will W. Sachse