IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRYCE MARTINEZ,** : | |
| : | **CIVIL ACTION** |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| **KRAFT HEINZ COMPANY, INC., et al.,** : | **NO. 25-377** |
| : | |
| Defendants. : | |

**Perez, J.**                                                                                                                    **August 25, 2025**

## MEMORANDUM

Plaintiff brings this action against Kraft Heinz Company, Inc., Mondelez International, Inc., Post Holdings, Inc., The Coca-Cola Company, PepsiCo, Inc., General Mills, Inc., Nestle USA, Inc., Kellanova, WK Kellogg Co., Mars Incorporated, Inc., and Conagra Brands, Inc. (collectively, "Defendants"), alleging that they create ultra-processed foods ("UPFs") that are addictive in nature and heavily marketed to children. Adopting the tobacco industry's techniques, Defendants are alleged to have implemented addiction science techniques and predatory marketing campaigns to ensure that UPFs dominate the marketplace and concealed the health risks from consumers. Compl. ¶¶ 103–148.

The complaint spans 668 paragraphs and largely focuses on the science underpinning the addictive nature of UPFs, Defendants efforts to manufacture and market addictive UPFs, and the rise in childhood obesity, diabetes, and other health issues since the prevalence of UPFs. The complaint includes 9 Plaintiff-specific allegations, the most substantive of which being that Plaintiff regularly ingested UPFs and was diagnosed with type 2 diabetes and non-alcoholic fatty liver disease at the age of 16. *Id.* ¶¶ 503–511. For each Defendant, the complaint lists dozens of

brands from which Plaintiff regularly consumed UPFs prior to his diagnoses. *Id.* ¶ 508. As a result of this consumption, he "will live the rest of his life sick, suffering, and getting sicker." *Id.* ¶ 510.

Plaintiff brings claims for negligence, failure to warn, breach of implied warranty, breach of express warranty, negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment, violation of unfair trade practices and consumer protection law, and unjust enrichment against all Defendants. He also brings a conspiracy claim against Defendants Kraft Heinz, Mondelez, Post Holdings, General Mills, Coca-Cola, and Mars.

Presently before the Court is Defendants' omnibus motion to dismiss, for which the Court heard oral argument on August 1, 2025. While the Court is deeply concerned about the practices used to create and market UPFs, and the deleterious effect UPFs have on children and the American diet, it cannot allow this action to proceed because Plaintiff has failed to state a claim upon which relief may be granted. For the reasons that follow, Defendants' motion to dismiss is granted.

## I. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In considering a motion to dismiss, the Court is required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

## II. DISCUSSION

The parties do not dispute that causation is an element for each claim Plaintiff sets forth. *See City of Philadelphia v. Lead Indus. Ass'n Inc.*, 994 F.2d 112, 123 (3d Cir. 1993) ("A plaintiff must establish that a particular product of a defendant manufacturer caused her injuries."). To satisfy the causation requirement, a plaintiff must plausibly allege that the products are "capable of causing the observed harm (general causation), and that the substance actually caused the harm suffered by the plaintiff (specific causation)." *Leake v. U.S.*, 843 F. Supp. 2d 554, 558 (E.D. Pa. 2011). The rub for Plaintiff is that "aside from idly listing various common [brands] [he] has eaten, Plaintiff offers limited facts that might lead this Court to believe that [he] could ultimately show that it was [his] consumption of these [brands] . . . that led to [his] disease." *S.F. v. Archer-Daniels-Midland Co.*, No. 13-CV-6345, 2014 WL 1600414, at *4 (W.D.N.Y. Apr. 21, 2014).

Plaintiff dedicates the breadth of his complaint overviewing the troubling science behind the production and marketing of UPFs. However, when it comes to allegations regarding Plaintiff himself, the complaint if woefully deficient. Plaintiff does not allege how often he consumed Defendants' products, in what amounts, or when. Neither does he allege when he ate Defendants' products in relation to when he received his diagnoses or even began experiencing symptoms. Indeed, the 668-paragraph complaint contains only one substantive fact about Plaintiff: he was 16 when diagnosed with Type 2 diabetes and non-alcoholic fatty liver disease. Compl. ¶ 504. At oral argument, the Court pressed Plaintiff's counsel to provide more information regarding his client. In response, the Court learned only that Plaintiff is now 19 years old, living in Philadelphia, and "just a normal kid who, unfortunately, has gotten sick and now will remain sick for the rest of his life unless there are cures for these diseases that are found." Or. Arg. Tr. 33:4-11. Even putting

aside the reality that these diseases have a multitude of causes,[1] there are simply not enough facts to suggest that Defendants' products caused Plaintiff's harm. Basic pleading rules require Plaintiff to plead more than the mere possibility of causation. *Twombly*, 550 U.S. at 557 ("[W]ithout some further factual enhancement it stops short of the line between possibility and plausibility of 'entitlement to relief'").

Compounding this problem, Plaintiff has failed to identify what foods or products he consumed. "[A] plaintiff must at least designate the product alleged to be defective in order to recover from the one who sells it." *Klein v. Council of Chemical Ass'ns*, 587 F. Supp. 213, 222 (E.D. Pa. 1984); *see also City of Philadelphia*, 994 F.2d at 123 ("A plaintiff must establish that a particular product of a defendant manufacturer caused her injuries."). *Klein* is particularly instructive. There, the plaintiffs were a married couple who alleged that exposure to "products generally used in the printing industry" caused the husband's bladder cancer. *Klein*, 587 F. Supp. at 221. The plaintiffs were unable to plead the specific products to which the husband was exposed but contended that discovery would uncover this information. *Id.* at 219. Holding that this defect was grounds for dismissal, the court explained "there is no good faith assertion that the harm was caused by any of [the defendants] because plaintiffs have not and cannot identify a product sold or distributed by any of the defendants joined in this action." *Id.* The court continued: "Plaintiffs in

---

[1] *See S.F.*, 2014 WL 1600414, at *4 ("Type 2 diabetes is a multifactorial disease. It can be caused by, for example, a lack of exercise, genetics, or poor diet—or some combination of several factors. No expert opinion is required to arrive at this conclusion."); Compl. ¶¶ 310, 312 (citing Centers for Disease Control and Prevention, *New Research Uncovers Concerning Increases in Youth Living with Diabetes in the U.S.*, (Aug. 24, 2021), available at https://archive.cdc.gov/www_cdc_gov/media/releases/2021/p0824-youth-diabetes.html#:~:text=Diagnosed (acknowledging several causes for the rising rates of type 2 diabetes in youth).

effect seek to put an industry on trial from the conviction that if Klein had been injured, it must be their fault." *Id.*

Plaintiff's complaint is equally flawed. Plaintiff lists over 100 brands manufactured or sold by the Defendants but never identifies specific *products* he consumed within these brands. *See* Compl. ¶ 508. For instance, Plaintiff alleges that he consumed products from the Old El Paso brand, *id.* ¶ 508(h), but the brand includes at least 111 different products, ranging from refried beans to corn and flour tortillas.[2] Each product has different ingredients and manufacturing processes, and it is unclear which product(s) Plaintiff consumed. By way of further example, Plaintiff alleges that he consumed products from the Gerber brand. *Id.* ¶ 508(d). There are at least 246 products under the Gerber brand—from various baby foods to fruit and yogurt purees.[3] Yet, Plaintiff never provides the individual products he consumed, much less the temporal connection between his consumption of these Gerber products and his diagnoses. By naming over 100 brands, Plaintiff has put thousands of products at issue without any additional information to identify which caused his harm. That is unacceptable. Just as in *Klein*, "[b]ecause plaintiffs have failed to identify a specific product, plaintiffs cannot allege a causal connection between conduct of the defendants and [p]laintiff's injuries." *Klein*, 587 F. Supp. at 223.

Plaintiff's failure to name specific products supports another independent basis for dismissal: Defendants have insufficient notice of the claims against them. Federal Rule of Civil Procedure 8 "requires that a complaint contain enough factual allegations to permit the court to conclude that a defendant 'is liable for the misconduct alleged.'" *Corbin v. Bucks Cnty.*, 703 F.

---

[2] Old El Paso, All Products, https://www.oldelpaso.com/products#first=60 (last visited Aug. 25, 2025). This Court takes judicial notice of all documents and information integral to Plaintiff's claims. *See Pinkney v. Meadville, Pennsylvania*, No. 21-1051, 2022 WL 1616972, at *2 (3d Cir. May 23, 2022).

[3] Gerber, Shop, https://www.gerber.com/shop-by-product (last visited Aug. 25, 2025).

Supp. 3d 527, 532 (E.D. Pa. 2023) (quoting *Ashcroft*, 556 U.S. at 678). Complaints that "assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against" have been "disparagingly referred to as shotgun pleadings." *Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017). Shotgun pleadings "fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015)).

Plaintiff's complaint implicates thousands of unidentified products and discusses the eleven Defendants as a group without specifying each Defendant's wrongful behavior. Defendant Conagra, for example, is mentioned in only 4 out of 668 paragraphs to (1) provide its state of citizenship; (2) state it uses brain science to expand its offerings; (3) contend that it runs advertisements targeting children; and (4) list brands (but not products) the company manufactures or sells. Compl. ¶¶ 47, 138, 281, 508(g). Defendants Kellanova and WK Kellogg are mentioned the same number of times for similar purposes. *Id.* ¶¶ 44–45, 140, 283, 508(i). The overwhelming majority of the 668 paragraphs discuss Defendants generally, despite acknowledging not all allegations pertain to each Defendant. *See id.* ¶ 382 ("UPF industry groups and some (*but not all*) Defendants have claimed to take voluntary action to 'self-regulate' the ways in which they target children with marketing for UPF." (emphasis added)); *id.* ¶¶ 355–56 ("Defendants have actively refused to conduct the kind of safety testing needed" and "*Alternatively*, Defendants' internal testing has revealed safety concerns . . . ." (emphasis added)). As Defendants aptly note, "Plaintiff's shotgun approach makes it impossible for each Defendant to determine what conduct, design, promotion, sale, or product Plaintiff is referring to, . . . ." Motion to Dismiss at 10. Allowing

this case to proceed to discovery would run contrary to Rule 8's basic pleading requirements and work an undue burden on Defendants. *See Klein*, 587 F. Supp. at 222 ("Injured plaintiffs may recover if a defective product causes them injury but prospective plaintiffs may not search for defective products in order to find something to which to attribute liability for their injuries."); *Salyers v. A.J. Blosenski, Inc.*, 731 F. Supp. 3d 670, 683–84 (E.D. Pa. 2024) ("[A] complaint is insufficient where there is 'genuine uncertainty regarding who is responsible for what,' such as when multiple defendants are 'accused of acting jointly.'" (quoting *Corbin*, 703 F. Supp. 3d at 533)). Plaintiff has ignored these rudimentary principles, mandating dismissal of his complaint.

Defendants raise several additional arguments in support of dismissal. Because the foregoing analysis requires dismissal of the complaint in its entirety, the Court will not proceed any further. The motion to dismiss is granted.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted. An appropriate order follows.