IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRYCE MARTINEZ,<br><br>    Plaintiff,<br><br>  v.<br><br>KRAFT HEINZ COMPANY, INC.; MONDELEZ INTERNATIONAL, INC.; POST HOLDINGS, INC.; THE COCA-COLA COMPANY; PEPSICO, INC.; GENERAL MILLS, INC.; NESTLE USA, INC.; KELLANOVA; WK KELLOGG CO.; MARS INCORPORATED, INC.; CONAGRA BRANDS, INC.<br><br>    Defendants. | Case No. 2:25-cv-00377<br><br>Hon. Mia Roberts Perez |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR LEAVE TO AMEND THE COMPLAINT AND FOR RECONSIDERATION OF THE ORDER GRANTING DEFENDANTS' OMNIBUS MOTION TO DISMISS**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ ii
INTRODUCTION .......................................................................................................................... 1
LEGAL STANDARD .................................................................................................................... 1
ARGUMENT .................................................................................................................................. 2
    I.  Plaintiff's FAC cures the pleading deficiency by identifying the specific UPF causing Plaintiff's harm; therefore, the proposed amendments are not futile. ................................... 2
    II. Allowing Plaintiff's FAC is not inequitable. ........................................................................ 7
CONCLUSION ............................................................................................................................... 7

## INTRODUCTION

Plaintiff initiated this action by filing a Civil Action Complaint in Pennsylvania state court seeking to hold Defendants liable for injuries he suffered as a result of consuming Defendants' Ultra-processed food ("UPF") products. On January 22, 2025, Defendant Kraft Heinz removed the case to this Court and thereafter Defendants filed their Omnibus Motion to Dismiss which was granted by the Court on August 25, 2025. *See* Doc. 146 (Memorandum) and Doc. 147 (Order).

In the Court's Memorandum (Doc. 146), it identified a factual deficiency in Plaintiff's original complaint regarding the allegations relating to Plaintiffs' consumption of Defendants' injury-causing UPF. Accordingly, Plaintiff now seeks leave to file his proposed First Amended Complaint ("FAC")[1] to specifically identify each Defendant's UPF that he consumed. *See* FAC § IX ¶¶ 551-2487. These proposed amendments cure the pleading deficiencies raised by the Court in its Memorandum and, as discussed below, meet the *Twombly/Iqbal* pleading standard by adequately alleging causation and giving notice of the claims. Leave to amend and reconsideration are warranted so that this case may proceed on the merits.

## LEGAL STANDARD

Fed. R. Civ. P. 15(a)(2) provides that leave to amend a pleading should be "freely give[n] … when justice so requires." When construing this rule, the Third Circuit has "acknowledged that the liberal pleading philosophy of the federal rules does limit a district court's discretion to deny leave to amend." *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008). "If a complaint is vulnerable to dismissal , a district court generally must first permit the plaintiff to file a curative amendment." *Kent v. Ed Carber Inc.*, 467 Fed. Appx. 112, 113 (3d Cir. 2012); *Lutz v.*

---

[1] A copy of the proposed FAC is being filed with this motion. Additionally, in opposing the Motion to Dismiss, Plaintiff requested "[i]n the alternative … leave to amend." Doc. 126 at 50. Accordingly, the request for leave to amend is not being made here for the first time.

1

*Portfolio Recovery Associates*, 49 F.4th 323, 328 (3d Cir. 2022) ("district court should generally 'permit a curative amendment, unless an amendment would be inequitable or futile'") (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008)).

Accordingly, "[l]eave to amend must generally be granted unless equitable considerations render it otherwise unjust. … Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006). The same holds true when, as here, a motion to amend is filed under Rule 59(e). *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 230–31 (3d Cir. 2011) ("we consider Rule 15(a) and Rule 59(e) motions together and apply the analysis typical to Rule 15(a)"); *In re Adams Golf, Inc. Securities Litig.*, 381 F.3d 267, 280 (3d Cir. 2004) ("the Rule 15 and 59 inquiries turn on the same factors"); *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 253 (3d Cir. 2007) ("leave to amend within this [Rule 59(e)] window should, as Federal Rule of Civil Procedure 15(a) puts it, 'be freely given when justice so requires'").

**ARGUMENT**

As discussed below, Plaintiff's proposed amendments in his FAC would not be futile because he has cured the deficiencies in his original complaint by identifying the specific UPF products that caused his harm. In addition, at this early stage of the case, equitable considerations weigh heavily in favor of granting Plaintiff's motion for leave to amend.

**I. Plaintiff's FAC cures the pleading deficiency by identifying the specific UPF causing Plaintiff's harm; therefore, the proposed amendments are not futile.**

In the Court's Memorandum, it found that the element of causation was not sufficiently alleged in Plaintiff's original complaint for purposes of Rule 12(b)(6) because "Plaintiff has failed to identify what foods or products he consumed." Doc. 146 at 4. Following *Klein*, the Court concluded that "a plaintiff must at least designate the product alleged to be defective in order to

2

recover from the one who sells it." Doc. 146 at 4 (quoting *Klein v. Council of Chemical Ass'ns*, 587 F. Supp. 213, 222 (E.D. Pa. 1984)). Based on that same pleading deficiency, the Court found that Rule 8 was also not satisfied. *See* Doc. 146 at 5 ("Plaintiff's failure to name specific products supports another independent basis for dismissal [under Fed. R. Civ. P. 8].").

In *Klein*, which the Court found to be "particularly instructive," Doc. 146 at 4, the plaintiff alleged that he "developed bladder cancer from exposure to products generally used in the printing industry." 587 F. Supp. at 221. However, as the court noted, "[t]he products are not named nor are the manufacturers." *Id*. at 218. Thus, "[n]ot knowing which products caused his injury, he also does not know which, if any, of the defendants manufactured it or them." *Id*. at 221. Accordingly, the plaintiff's failure to designate a specific product was "not a defect which could be corrected by granting plaintiffs leave to amend their complaint; plaintiffs concede that they cannot name any specific product to which Klein was exposed." *Klein*, 587 F. at 221.

Here, in contrast to *Klein*, Plaintiff's FAC identifies the specific UPF he consumed, how often he consumed each UPF, when he consumed each UPF, which Defendant manufactured each UPF, and how he was harmed by each Defendant's UPF. *See* FAC ¶¶ 563-885 (Kraft Heinz UPF products consumed by Plaintiff); FAC ¶¶ 886-1067 (Mondelez UPF products consumed by Plaintiff); FAC ¶¶ 1068-1139 (Post Holdings UPF products consumed by Plaintiff); FAC ¶¶ 1140-1244 (Coca-Cola UPF products consumed by Plaintiff); FAC ¶¶ 1245-1478 (PepsiCo UPF products consumed by Plaintiff); FAC ¶¶ 1479-1728 (General Mills UPF products consumed by Plaintiff); FAC ¶¶ 1729-1949 (Nestle UPF products consumed by Plaintiff); FAC ¶¶ 1950-2178 (Kellogg's UPF products consumed by Plaintiff); FAC ¶¶ 2179-2380 (Conagra UPF products consumed by Plaintiff); and FAC ¶¶ 2381-2487 (Mars UPF products consumed by Plaintiff)

3

As shown in *Klein*, after identifying each Defendant's UPF which caused Plaintiff's harm, "the burden shifts to each defendant to prove that it did not cause the harm." *Klein*, 587 F. Supp. at 221 (citing Restatement (Second) of Torts § 433B(3)); *see also Skipworth by Williams v. Lead Industries Ass'n, Inc.*, 690 A.2d 169, 174 (Pa. 1997) ("The theory of alternative liability dictates that tortfeasors who act in concert will be held jointly and severally liable for the plaintiff's injury unless the tortfeasors are able to prove that they have not caused the harm."). Thus, at best for Defendants, this case might involve "uncertainty as to which of multiple defendants caused the harm," which is not a bar to recovery, whereas in *Klein* the claims failed because "plaintiffs have not and cannot identify a product sold or distributed by any of the defendants joined in this action." *Id*. at 221.

In addition to being distinguishable from *Klein*, the Plaintiff's FAC is also distinguishable from the deficient allegations in the other cases cited by the Court in its Memorandum. In *Bartol v. Barrowclough*, 251 F. Supp. 3d 855 (E.D. Pa. 2017), the court found that "[i]t is impossible to tell exactly how many Defendants there are in this case" and that "[m]ost of these defendants were not present during the events at issue in this case, and it is likely that many have never had any interaction with Plaintiff at all." *Id*. at 860.

In *Salyers v. A.J. Blosenski*, 731 F. Supp. 3d 670 (E.D. Pa. 2024), the court explained that "there is no 'categorical prohibition' against 'group pleading,'" but dismissed one of several defendants because "the only allegations directed at [defendant] WCUS specifically relate to its corporate citizenship and relationship to [defendant] AJB. Therefore, [plaintiff] Salyers has not plausibly alleged any liability under any of his causes of action against WCUS, and it must be dismissed." *Id*. at 684.

4

Finally, in *S.F. v. Archer-Daniels-Midland Co.*, No. 13-CV-634S, 2014 WL 1600414 (W.D.N.Y. Apr. 21, 2014), the plaintiff sued five manufacturers of high fructose corn syrup (HFCS) and alleged that she had developed diabetes from consuming food products containing HFCS. However, the plaintiff's complaint only listed "various common food products she has eaten" instead of showing that it was "the HFCS found within these foods (manufactured by these defendants) that led to her disease." *Id*. at *4. And, the plaintiff could not "identify which company manufactured the HFCS that she consumed." *Id*. at *6.[2]

The common thread through the above line of cases is that the plaintiffs could not allege a direct link between their harm and the defendants' conduct. Here, in contrast, Plaintiff has alleged direct claims against each Defendant resulting from his consumption of each Defendant's specifically identified UPF products. Nothing more is required at this phase of the case to meet the *Twombly/Iqbal* standard because "*Twombly* and *Iqbal* … direct courts to 'accept[] as true' the factual assertions of a complaint … 'even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely.'" *Doe v. Princeton U.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell A. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). This is especially true with regard to causation, because "[o]rdinarily, proximate cause cannot be determined on the basis of pleadings but instead requires a factual development at trial." *G.S. v. Penn-Trafford Sch. Dist.*, 2023 WL 4486667, at *4

---

[2] Regardless of the court's causation discussion, it ultimately decided the case on other grounds. *See id*. at *5 ("assuming Plaintiff could surpass this [causation] hurdle, her claims fail for other reasons"). On appeal, the Second Circuit affirmed for the other reasons without addressing whether the causation allegations were adequate. *See S.F. v. Archer Daniels Midland Co*., 594 Fed. Appx. 11, 12–13 (2d Cir. 2014) (holding that plaintiff's claims fail because "she did not allege a safer alternative design for high fructose corn syrup" and "all of S.F.'s claims rely on 'market-share liability theory,' and we reject its application to this case").

5

(3d Cir. July 12, 2023) (quoting *Est. of Bailey by Oare v. York Cnty.*, 768 F.2d 503, 511 (3d Cir. 1985)).

In contrast to the above cases cited in the Court's Memorandum (*Klein*, *Bartol*, *Salyers*, and *S.F.*), Plaintiff's FAC is more akin to the plaintiff's allegations in *Gray v. Abbott Laboratories*, 2011 WL 3022274 (N.D. Ill. July 22, 2011). In that case, the plaintiff satisfied *Twombly/Iqbal* where she alleged that she "she purchased several containers" of infant formula, that "her son became ill with gastrointestinal discomfort immediately after ingesting the formula" and that "some containers of formula Franklin ingested contained insect pieces." *Id*. at *2. Noting that "it is true, as Defendants suggest, that the symptoms Gray's son experienced are common ailments for any child his age" the court nonetheless held that "it is also plausible that infant formula contaminated by insects caused Franklin's illness, and therefore, the court is satisfied Gray has met the notice pleading standard and shown more than a 'sheer possibility' that Abbott's product or products caused the injury." *Id*.

Here, as in *Gray*, Plaintiff has identified specific food products that he consumed and alleged that he suffered harm as a result. At this stage of the case, it is not appropriate to weigh possible alternative causes against the Plaintiff's allegations. *See Doe*, 30 F.4th at 344 (finding that the defendant's alleged wrongdoing "need not be the only plausible explanation or even the most plausible explanation" for the claim to proceed) (quoting *Schwake v. Ariz. Bd. of Regents*, 967 F.3d 940, 948 (9th Cir. 2020)).

In sum, because Plaintiff's FAC cures the Rule 12(b)(6) and Rule 8 pleading deficiencies identified by the Court—namely, by identifying the specific UPF he consumed—his proposed amendments are not futile. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010) ("To determine whether the substitution of Proposed Amended Complaint 3

6

would have been futile, we consider the merits of Great Western's motion for reconsideration and the additional allegation contained in that version of the complaint.").

## II. Allowing Plaintiff's FAC is not inequitable.

"Leave to amend must generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006). Aside from futility addressed above, "the factors that may justify denial of leave to amend are undue delay [and] bad faith[.]" *Id*. Under this standard, "[d]elay alone is not sufficient to justify denial of leave to amend." *Id*. It is only when the delay becomes "'undue,' placing an unwarranted burden on the court" or it becomes "'prejudicial,' placing an unfair burden on the opposing party" that a court may deny leave to amend based on delay. *Cureton v. Natl. Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (quoting *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984)). Here, leave to amend is warranted because there has been no undue delay or bad faith; in fact, Plaintiff made the request in his Opposition to the Motion to Dismiss, *see* Doc. 126 at 50 ("In the alternative, Plaintiff requests leave to amend."), which makes this motion timely. *Kent*, 467 Fed. Appx. at 113 ("If a complaint is vulnerable to dismissal, a district court generally must first permit the plaintiff to file a curative amendment.").

## CONCLUSION

Under the liberal pleading standard in Rule 15(a), Plaintiff's motion for leave to amend should be granted and, in light of the allegations in the FAC, the Court should reconsider its Order granting Defendants' Omnibus Motion to Dismiss so that this case may proceed on the merits.

|  |  | Respectfully submitted, |
|---|---|---|
| Dated: September 22, 2025 | By: | */s/ Rene F. Rocha, Esq.* |

RENE F. ROCHA, ESQ.*
LA Bar No. 34411
**MORGAN & MORGAN, COMPLEX LITIGATION GROUP**
400 Poydras Street, Suite 1515
New Orleans, LA 70130
rrocha@ForThePeople.com
T: (954) 318-0268
F: (954) 327-3018

*/s/ Josh Autry, Esq.*
JOSH AUTRY, ESQ.
PA Bar No. 208459
KY Bar No. 98419
TN Bar No. 41623
NY Bar No. 6161962
**MORGAN & MORGAN, P.A.**
199 Water Street, Suite 1500
New York, NY 10005
jautry@ForThePeople.com
T: (859) 899-8785

K. CLANCY BOYLAN, ESQ.
PA Bar No. 314117
**MORGAN & MORGAN, P.A.**
2005 Market Street, Suite 350
Philadelphia, PA 19103
cboylan@ForThePeople.com
T: (215) 446-9795
F: (215) 446-9799

T. MICHAEL MORGAN, ESQ.*
FL Bar No. 62229
**MORGAN & MORGAN, P.A.**
20 N. Orange Ave., Suite 1600
Orlando, FL 32801
mmorgan@ForThePeople.com
T: (407) 418-2031
F: (407) 245-2284

CHRISTOPHER A. SEEGER, ESQ.\*
NJ Bar No. 042631990
PARVIN K. AMINOLROAYA, ESQ.\*
NJ Bar No. 028492008
**SEEGER WEISS LLP**
55 Challenger Road
Ridgefield Park, NJ 07660
cseeger@seegerweiss.com
paminolroaya@seegerweiss.com
T: (212) 584-0700
F: (212) 584-0799

FRAZAR THOMAS, ESQ.
PA Bar No. 325478
DAVE BUCHANAN, ESQ.
PA Bar No. 320392
**SEEGER WEISS LLP**
325 Chestnut Street
Suite 917
Philadelphia, PA 19106
fthomas@seegerweiss.com
dbuchanan@seegerweiss.com
T: (973) 639-9100
F: (973) 679-8656

FRANK PETOSA, ESQ.\*
FL Bar No. 972754
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
8151 Peters Road
Suite 4000
Plantation, FL 33324
fpetosa@ForThePeople.com
T: (954) 318-0268
F: (954) 327-3018

*Attorneys for Plaintiff*

*\*Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2025, the foregoing was served via the Court's ECF system on all counsel of record.

/s/ Rene F. Rocha
Rene F. Rocha, Esq.